**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
KEVIN J. MEEHAN,

       Plaintiff,

   - against -

VIPKID, VIPKID INTERNATIONAL, INC. aka
VIPKIDS INTERNATIONAL, INC. aka VIPKID aka
VIPKID INTERNATIONAL, BEIJING DAMI
TECHNOLOGY CO., LTD. aka BEIJING DA MI
TECHNOLOGY CO., LTD. aka VIPKID, BEIJING
DAMI FUTURE TECHNOLOGY CO., LTD. aka
BEIJING DA MI FUTURE TECHNOLOGY CO.,
LTD., TENCENT HOLDINGS LTD., CLOUD &
SMART INDUSTRIES, TENCENT HOLDINGS LTD.
aka CLOUD & SMART INDUSTRIES AT TENCENT
HOLDING LTD., TENCENT AMERICA LLC,
TENCENT CLOUD LLC, CHINA RENAISSANCE
HOLDINGS LTD. aka CHINA RENAISSANCE
SECURITIES aka CHINA RENAISSANCE,
SEQUOIA CAPITAL OPERATIONS LLC, VIPKID
HK LIMITED, VIPKID CLASS HK LIMITED, and
VIP TEACH INC.,

       Defendants.
----------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

CV 20-6370 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I. PRELIMINARY STATEMENT**

  Defendant VIPKid International, Inc. ("VIPKid Int'l.") removed this putative class and

collective action to the Eastern District of New York pursuant to the Class Action Fairness Act

of 2005 ("CAFA"), 28 U.S.C. § 1332(d). *See* Notice of Removal of Civil Action from State

Court [DE 1]. Defendant Sequoia Capital Operations, LLC ("Sequoia Capital") filed a Notice of

Consent to VIPKid Int'l.'s removal and noted the existence of additional grounds for federal

jurisdiction under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq. See* Notice

of Joinder In and Consent to Removal and Statement of Additional Ground by Defendant Sequoia Capital [DE 7].

Plaintiff Kevin Meehan ("Plaintiff") now moves to remand this action to the Supreme Court of the State of New York, County of Nassau, where it was originally filed. *See* Legal Memorandum In Support ("Pl.'s Mem.") [DE 46]; Plaintiff's Response to Defendants' Joint Opposition to Remand ("Pl.'s Reply") [DE 49]. Plaintiff argues his FLSA claim is an insufficient standalone basis to confer federal jurisdiction and that the Court should exercise its discretion to remand pursuant to CAFA. *See generally* Pl.'s Mem.; Pl.'s Reply. Defendants VIPKid Int'l., VIPKID HK Ltd., VIPKID Class HK Ltd., Beijing Dami Technology Co., Ltd., VIPTeach Inc., Tencent Holdings Ltd., Tencent America LLC, Tencent Cloud LLC, China Renaissance Holdings Ltd., and Sequoia Capital Operations,LLC (collectively, "Defendants"[1]), jointly oppose Plaintiff's motion and argue that the Court has original jurisdiction based upon Plaintiff's FLSA claim and that the Court cannot exercise its discretion to remand pursuant to CAFA based upon the circumstances of this case. *See* Defendants' Joint Opposition to Plaintiff's Motion to Remand ("Defs.' Opp'n") [DE 48] at 4-9.

The Honorable Joanna Seybert referred Plaintiff's motion to this Court for a Report and Recommendation as to whether the motion should be granted. *See* May 5, 2021 Electronic Order. For the reasons which follow, the Court respectfully recommends to Judge Seybert that Plaintiff's motion to remand be DENIED.

---

[1]    There are 13 entities named as defendants in this case and Defendants' opposition to Plaintiff's motion to remand was submitted on behalf of all but three of these entities, namely, Beijing Dami Future Technology Co., Ltd., VIPKid and Cloud & Smart Industries. *See* Defs.' Opp'n at 1 n.1. Defendants then appear to explain that these three entities did not join in the opposition because, according to Defendants, Beijing Dami Future Technology Co., Ltd was not properly served and VIPKid and Cloud & Smart Industries "are not juridical entities." *Id.*

2

II.   **BACKGROUND**

   A.   **The Complaint**

   On November 13, 2020, Plaintiff commenced this action in the Supreme Court of the

State of New York, County of Nassau, against Defendant VIPKid HK Limited ("VIPKid HK")

and a dozen entities that are related to or in some fashion affiliated with VIPKid HK.  *See*

*generally* Complaint ("Compl.") [DE 1-1].[2]  According to the Complaint, Defendants are

affiliated with or responsible for operating VIPKid, an online education platform which

facilitates the instruction of English language skills by teachers from the United States and

Canada to students in China.  *Id.*  VIPKid's operation connects approximately 700,000 students

with more than 100,000 teachers.  *Id.* ¶¶ 20-21.  The Complaint alleges the VIPKid enterprise is

New York-based and whose services are provided by entities domiciled in New York.  *Id.* ¶ 11.

However, the Complaint then alleges that even if these entities, *i.e.*, the Defendants, are

considered to be domiciled outside of New York, their activities and interactions within the State

satisfy jurisdictional requirements pursuant to C.P.L.R. § 302.  *Id.* ¶ 12.

   Plaintiff, a New York resident, contracted with VIPKid Hk and VIPKid Int'l. to provide

services teaching English to children in China.  *Id.* ¶¶ 15-16, 34, 85.  Plaintiff claims that over

the course of his four-year employment with VIPKid, he was "living in an Orweillian nightmare

[and] realize[d] that he had been the victim of a sophisticated fraud deliberately crafted to exploit

people like him—Americans in search of affordable paths to dignified careers."  *Id.* ¶ 6. He

asserts 10 causes of action arising under state and federal law on behalf of himself and all current

and former VIPKid teachers.  Plaintiff's first two causes of action are for common law fraud and

_____

   [2]   Plaintiff's Complaint is 92-pages long and contains more than 600 paragraphs of allegations.  *See generally* Compl.  The "Background" information set forth here is limited to the facts necessary to resolve the instant motion.

fraudulent inducement.  *Id.* ¶¶ 393-444.  These claims are based upon statements on VIPKid's website concerning the terms and conditions of employment for online teachers.  The  Complaint lists more than 20 such statements which, for example, pertain to VIPKid's mission to provide Chinese children an elementary school experience from the comfort of their own homes, the ability for teachers to set their own schedules and flexible hours, job perks, base pay rates, earnings calculations, contract lengths, and the low level of commitment required to be a VIPKid teacher, among other things.  *Id.* ¶ 395.  Plaintiff alleges that he and the Class were induced to work as VIPKid teachers based upon these statements which proved to be false.  Plaintiff's third cause of action, a violation of N.Y. General Business Law § 349 based on unlawful and deceptive business practices, also stems from allegedly false and misleading advertising campaigns run by the Defendants.  *Id.* ¶¶ 445-57.  Plaintiff then asserts an independent cause of action for conspiracy, alleging the Defendants committed various overt acts related to Plaintiff's fraud claims.  *Id.* ¶¶ 469-78.

Next, Plaintiff claims Defendants violated N.Y. Civil Rights Law §§ 50-51 because Defendants exploited Class members' "names, portraits, pictures, images, and/or voices to develop, enhance, or inform its artificial intelligence technology . . . without the knowledge or consent of any VIPKid Teachers."  *See id.* ¶¶ 460, 462.  Defendants then utilized this artificial intelligence to replace live instruction.  *Id.* ¶ 464.  As a result of Defendants utilizing Class members' images and likenesses without their consent, Plaintiff also claims that the Defendants were unjustly enriched.  *See id.* ¶¶ 479-83.

Plaintiff also asserts a variety of claims concerning the conditions of his employment, namely, FLSA and NYLL violations, on behalf of a collective which is defined as "all current and former VIPKid Teachers."  *Id.* ¶¶ 485-86.  Regarding the FLSA violations, Plaintiff alleges,

among other things, that the Defendants failed to (1) pay minimum wages, (2) overtime compensation, (3) compensation for on-call time, (4) undercounted hours worked, (5) did not provide rest or meal breaks or permit Collective members to accept tips, and (6) failed to maintain records and post required notices on the VIPKid website concerning wage and hour laws. *Id.* ¶¶ 515-37. The Plaintiff's NYLL claims are, for the most part, analogous to the claims asserted under the FLSA. *See id.* ¶¶ 538-65. However, Plaintiff also sets forth causes of action pursuant to NYLL § 215 and § 740 for retaliation. *See id.* ¶¶ 566-606. These retaliation claims are brought on behalf of a sub-class of the Collective which Plaintiff refers to as the "VIPKid Whistleblower Class." *Id.* ¶¶ 566, 602. Plaintiff alleges that he was denied meaningful opportunities for advancement within VIPKid and ultimately was fired after complaining about the company's employment practices. *See id.* ¶¶ 566-606.

### B.  Procedural Background

On December 30, 2020, VIPKids Int'l. removed the action to this Court pursuant to CAFA. *See* DE 1. Sequoia Capital filed a Notice of Joinder and consented to the removal by VIPKids Int. *See* DE 7. In its notice, Sequoia Capital also stated that, in addition to CAFA, federal jurisdiction exists based upon Plaintiff's cause of action under the FLSA. *Id.* at 2. The Tencent Defendants (*i.e.*, Tencent America LLC, Tencent Holdings Ltd., Cloud & Smart Industries, Tencent Holdings Ltd. a/k/a Cloud & Smart Industries at Tencent Holdings Ltd., and Tencent Cloud LLC) filed a "notice of joinder in and consent to removal" for the reasons proffered by VIPKids Int. and Sequoia Capital. *See* DE 15. Within their notice, the Tencent Defendants also contend that they were not properly served with the Summons and Complaint. *See id.* & n.1. The VIPKid Defendants, *i.e.*, VIPKids Int'l., VIPKid HK, VIPKID Class HK

Limited, Beijing Dami Technology Co., Ltd. and VIPTeach, Inc., also joined Sequoia Capital's notice related to the FLSA grounds for removal.  *See* DE 20.

Between January 22, 2021 and February 5, 2021, the VIPKid Defendants, the Tencent Defendants, Sequoia Capital, and China Renaissance Holdings Ltd. each filed separate pre-motion conference requests to Judge Seybert for purposes of making a motion to dismiss. *See* DE 29; DE 39; DE 40; DE 41.  On January 29, 2021, Plaintiff filed opposition to the VIPKid Defendants' pre-motion conference request.  *See* DE 36.  In this opposition, Plaintiff noted he would be seeking remand to state court and attached as an exhibit to this letter his legal memorandum in support of a motion to remand.  *Id.*; DE 36-1.  The VIPKid Defendants and Sequoia Capital asked Judge Seybert to set a briefing schedule for Plaintiff's motion to remand. *See* DE 37; DE 38.

On February 18, 2021, Judge Seybert issued the following Order regarding the Defendants' pre-motion conference requests and the Plaintiff's opposition:

> In conjunction with his objection (see ECF No. 36 (hereafter, the "Objection Letter")) to the Letter Motion of [the VIPKid Defendants] . . . seeking a pre-motion conference regarding a proposed dismissal motion (see ECF No. 29 ), Plaintiff filed a timely Motion to Remand. (See ECF No. [36-1] (hereafter, the "Remand Motion"); see also ECF No. 36-2 (Mem. of Supp. Facts).) The VIPKid Defendants oppose remand and request the Court set a briefing schedule on the Remand Motion. (See ECF No. 37.) Defendant Sequoia Capital Operations LLC. similarly requests the Court set a briefing schedule on said Motion. (See ECF No. 38.)
>
> Pursuant to the Court's inherent authority to manage its docket with a "view toward the efficient and expedient resolution of cases," Dietz v. Bouldin, U.S., 136 S. Ct. 1885, 1892 (2016):
>
> (1) Plaintiff's Remand Motion (ECF No. [36-1]) filed as an attachment to his Objection Letter is deemed to have been filed as a separate, stand-alone motion;

(2) For clarity on the Case Docket, the Clerk of Court is directed to file (a) the Remand Motion (ECF No. [36-1]) as a separate docket entry, with a filing date of January 29, 2021, and (b) Plaintiff's Memorandum of Supporting Facts (ECF No. [36-2]) as an attachment thereto;

(3) Any Defendant seeking to file a response to the Remand Motion shall do so by no later than March 26, 2021;

(4) Plaintiff shall have until April 16, 2021 to file replies, if any; and

(5) The Defendants' various pre-conference Letter Motions regarding proposed dismissal motions (see ECF Nos. 29, 39, 40, and 41) are denied as premature and without prejudice to renew pending the final determination of the Remand Motion.

*See* February 18, 2021 Electronic Order.  In accordance with Judge Seybert's Order, Plaintiff's motion to remand and legal memorandum in support were re-docketed at DE 46, dated January 29, 2021.  *See* Pl.'s Mem.  Defendants filed a joint opposition to Plaintiff's motion on March 26, 2021.  *See* Defs.' Opp'n.  Plaintiff submitted a reply brief on April 16, 2021.  *See* Pl.'s Reply.  Plaintiff's motion was then referred to this Court for this Report and Recommendation on May 5, 2021.

C.    **The Parties' Positions**

1.    ***Plaintiff's Motion***

Plaintiff first argues that this Court does not have federal question jurisdiction because his FLSA claims "do not present a necessary federal question."  *See* Pl.'s Mem. at 4.  Plaintiff contends that the FLSA is the only federal law invoked by the Complaint and that it "is invoked merely as an alternative theory of recovery for injuries caused to Plaintiff" as a result of VIPKid's alleged fraudulent scheme which is pled "in the context of a state law theory of recovery founded entirely in New York common law fraud."  *Id.* at 5.  Shifting then to a

discussion of CAFA, Plaintiff seems to insist that "CAFA requires agreement on the existence of a class action." *Id.* at 6. Plaintiff goes on to state that his "mere allegation of a class action could not have sufficed for removal . . . on the basis of original jurisdiction." However, Plaintiff asserts that because Defendants have raised CAFA as such a basis for removal, "they agree this Action is a class action . . . [and] implicitly and irreversibly accept the existence of a class action." *Id.* Plaintiff then appears to concede that the Court has jurisdiction as a result of CAFA and Defendants "must litigate this Action as a class-action in open court." *Id.* at 7.

Having posited that argument, Plaintiff submits that he is entitled to discovery to verify that CAFA jurisdiction exists. However, he then immediately goes into a discussion regarding the application of exceptions to CAFA jurisdiction which would warrant remand. *See id.* 8-15. To demonstrate one exception to the applicability of CAFA here, Plaintiff casts doubt upon the veracity of his own allegations in the Complaint which state that VIPKid employs over 100,000 teachers in light of VIPKid's LinkedIn page which apparently indicates that figure is closer to 13,000. *Id.* at 10. Plaintiff also notes that "[t]he highest concentration of VIPKid workers who name VIPKid on their LinkedIn profile identify as being located in the New York City area" and that "[t]he number of . . . teachers in New York State is likely far higher." *Id.* Based on this information, Plaintiff contends that "it is more likely than not that one or more CAFA exception applies." *Id.* Consequently, Plaintiff asks for discovery to determine the total number of VIPKid teachers "by domicile per state in the United States," but adds that if the Defendants cannot provide such information, then the Court should remand the case. *Id.*

Plaintiff then argues that "[a]ssuming [CAFA's] numerical requirements are satisfied," the Court should exercise its discretion to remand under CAFA's "interests of justice" exception. *Id.* at 11. In making this argument, Plaintiff asserts that: (1) his claims involve matters of

national and interstate interest that can only be addressed at the state-level; (2) his claims are governed only by the laws of the State of New York; (3) the Complaint was not pled to avoid federal law; (4) the action was originally filed in a forum with a distinct nexus to the class members, the alleged harm, and the Defendants; (5) the proposed classes are comprised of more citizens from New York than any other state; and (6) no other class actions asserting the same or similar claims were filed against the Defendants. *Id.* at 11-15. In addition to the "interest of justice" exception to CAFA, Plaintiff also contends that there are grounds to remand this case based on the *Pullman* and *Burford* abstention doctrines. *Id.* at 15-17. Lastly, Plaintiff argues that because "[t]his case presents a mixture of national and state interests," if the Court retains jurisdiction "over Plaintiff's singular duplicative federal labor law cause of action," it "should not hesitate to remand all of Plaintiffs [sic] state claims." *Id.* at 17-18.

In his conclusion section, Plaintiff states that "this [C]ourt has jurisdiction for class-based adjudication only" pursuant to CAFA and essentially argues that "this Court risks upsetting the delicate balance between federal and state power if it chooses to maintain jurisdiction under any other conditions." *Id.* at 18-19. Plaintiff then recommends a "course of action" for the Court to take, which sets forth three scenarios: (1) "if this Court finds that Defendants must admit this . . . is a class action, then the Court must litigate this . . . as a class action"; (2) if the Court has doubts as to CAFA jurisdiction, an order for expedited discovery on the proposed class and citizenship of the Defendants should be issued; or (3) the Court should remand this case "[i]n all other circumstances." *Id.* at 19.

### 2.   *Defendants' Opposition*

At the outset, Defendants argue that they have met their burden to establish CAFA jurisdiction and that the Complaint provides the reasonable probability needed to do so. *See*

Defs.' Opp'n at 4.  Defendants draw the Court's attention to the allegations which assert:  (1) a class of 100,000 members; (2) damages of nearly $13,000,000 for Plaintiff alone; and (3) diversity of citizenship between Plaintiff, a New York resident, and the primary Defendant VIPKids Int'l.  *See id.* (citing Compl. ¶¶ 9, 14, 181).  Regarding the citizenship of VIPKids Int'l., Defendants cite the Declaration of Huan Xiong, counsel for VIPKid Int'l., which asserts that this entity is a Delaware corporation with its principal place of business in California.  *See* Declaration of Huan Xiong ("Xiong Decl.") [DE 48-2].  Defendants then argue that because CAFA jurisdiction exists, there is federal jurisdiction over the entire action.  *See* Defs.' Opp'n at 4-5.  Although Plaintiff seems to have suggested that removal was improper to the extent it was based on Plaintiff's allegations regarding the number of VIPKid teachers, Defendants submit that it is routine for defendants to remove actions based on allegations in complaints.  *Id.* at 5 (citing *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56-57 (2d Cir. 2006)).  Moreover, to the extent Plaintiff argues that the mere fact that the Court has CAFA jurisdiction constitutes automatic consent to class certification, Defendants argue that Plaintiff has provided no legal support for this "unique take on the consequences of invoking CAFA jurisdiction because there is none."  *Id.* at 6.  On this issue, Defendants note that whether a case may proceed as a class action which binds individuals who are not participants is a question of law, not a matter of consent, and "failure to obtain class certification does not divest the Court of CAFA jurisdiction."  *Id.* at 6 n.2.

Defendants then address Plaintiff's arguments regarding the applicability of an exception to CAFA.  *See id.* at 6.  After pointing out that a plaintiff must prove by a preponderance of the evidence that such an exception applies, Defendants content that Plaintiff has offered no evidence whatsoever aside from a brief, insufficient statement in his opening memorandum which provides: "[i]f the number of New York VIPKID Teachers is in the several

thousands . . . and there are only some 13,000 VIPKID Teachers, then it seems more likely than not that one or more CAFA exception applies to this Action." *Id.* (quoting Pl.'s Mem. at 10). Although Defendants concede that there is no way to determine definitively the actual citizenship of each putative class member without interviewing them, they submit that CAFA requires courts to make reasonable assumptions regarding citizenship based on available evidence. *Id.* at 8.  To this point, Defendants again cite the Xiong Declaration which provides that VIPKid HK "has contracted with over 200,000 teachers" and "[t]he business mailing address of more than 96% of those teachers is outside of the State of New York." *See* Xiong Decl. ¶ 4; Defs.' Opp'n at 8-9.  Based upon this information, Defendants assert that it is reasonable to conclude that fewer than one third of the putative class members are citizens of New York. *Id.* at 9.

Moreover, Defendants note that each CAFA exemption requires a plaintiff to prove that one or more defendants is a citizen of the forum state. *Id.* at 7.  However, according to counsel, the Defendants are all foreign entities -- and not New York citizens -- which means that none of those exceptions applies and the Court has no discretion to remand. *Id.*  With respect to their citizenship, Defendants provided the Court with a demonstrative chart which the Court has reproduced here:

| Defendant | Place of Incorporation or Organization | Principal Place of Business |
|---|---|---|
| VIPKid International, Inc. | Delaware | California |
| VIPKid HK Limited | Hong Kong | China |
| VIPKid Class HK Ltd. | Hong Kong | China |
| VIPTeach Inc. | Delaware | California |
| Beijing Dami Technology Co., Ltd. | China | China |
| Beijing Dami Future Technology Co., Ltd. | China | China |
| Cloud & Smart Industries | Cayman Islands | China |
| Tencent America LLC | Delaware | California |
| Tencent Cloud LLC | Delaware | Delaware |
| China Renaissance Holdings Ltd. | Cayman Islands | China |
| Sequoia Capital Operations LLC | Delaware | California |

*Id.* at 7-8.[3]

Next, Defendants oppose Plaintiff's argument claiming that his FLSA cause of action does not confer federal question jurisdiction. *See id.* at 9. According to Defendants, Plaintiff's FLSA claim "is not a subtle point" and is proclaimed in all capital letters. *Id.* at 10. In addition to its typeface, Defendants also point out that this violation of the FLSA is not "one of several theories of liability under state law" because Plaintiff "expressly alleges a violation of a federal statute and seeks a remedy created by that statute." *Id.* (citing *Abdale v. North Shore-Long Island Jewish Health Sys., Inc.*, 2014 WL 2945741, at *4 (E.D.N.Y. June 30, 2014)). As such, Plaintiff's attempt to distance himself from his FLSA claim is immaterial because he "chose to allege a claim under federal law, devoting nearly forty paragraphs of the Complaint to detailing his alleged injuries arising under federal law in a claim that he described as an FLSA claim." *Id.* at 11 (citing Compl. ¶¶ 500-37). In light of the fact that federal jurisdiction is measured at the time of removal, Defendants argue that Plaintiff cannot now attempt to change or gloss over his allegations to argue that federal question jurisdiction is lacking. *Id.*

Regarding Plaintiff's argument on supplemental jurisdiction, Defendants contend that Plaintiff's FLSA claims and state law claims derive from a common nucleus of operative facts and will involve similar witnesses and evidence. *Id.* at 11-14. In light of this commonality, Defendants ask the Court to exercise supplemental jurisdiction over Plaintiff's state law claims.

---

[3]     The information in this chart is based on a combination of declarations submitted in support of Defendants' opposition as well as allegations in the Complaint and other documentation. Specifically, the citizenship of the VIPKid Defendants stems from the statements contained in the Xiong Declaration. *See* Xiong Decl. ¶ 2. Similarly, the citizenship of China Renaissance Holdings is based upon the Declaration of Lixing Wang, its Head of Investment Banking. *See* Declaration of Lixing Wang ("Wang Decl.") [DE 48-1]. The citizenship of the Tencent Defendants and Sequoia Capital was based upon the Complaint. *See* Defs.' Opp'n at 8 nn. 5, 7 (citing Compl. ¶¶ 71, 77).

*Id.* at 14.  Lastly, Defendants submit that Plaintiff has misconstrued the purpose of *Burford* and *Pullman* abstention, arguing that neither doctrine applies to the instant case.  *Id.* at 14-16.

### 3.      *Plaintiff's Reply*

In his reply, Plaintiff argues that "Defendants have not alleged any estimate of class size relevant to this action" and "falsely attribute to Plaintiff the so-called allegation that the putative class consists of more than 100,000 individuals."  *See* Pl.'s Reply at 1-2.  Plaintiff then "mount[s] a factual attack against VIPKid's claim of the number of VIPKid Teachers."  *Id.* at 2.  Citing Defendants' statement that it has compensated more than 200,000 teachers, Plaintiff claims that number is "not reasonably indicative of the number of proposed plaintiffs" because VIPKid HK "hires teachers for any number of reasons, for any number of educational platforms" that have no bearing on this case.  *Id.* at 2-3.  Plaintiff also reiterates the "factual attack" set forth in his opening brief regarding the claim on VIPKid's website which states there are more than 100,000 teachers, but the VIPKid's LinkedIn profile "listed around ten percent of [that] figure for the total number of VIPKid affiliated individuals on the platform."  *Id.* at 4.

Plaintiff then claims that "VIPKid," the first named Defendant in the Complaint, "is the primary [D]efendant in this action" and is a New York citizen.  Plaintiff asserts that Defendants do not "utter[] a single word that contradicts Plaintiff's allegations about VIPKid or its New York Headquarters."  *Id.* at 5.  Plaintiff then argues that despite Defendants' claim that 96% of the 200,000 teachers who contracted with VIPKid HK have mailing addresses outside of New York, this statement "shine[s] no light on the question of the citizenship of the class for this action" because, once again, Plaintiff claims that this figure is not indicative of VIPKid teachers in America and Canada because it "likely include[s], in the majority, Chinese teachers in China performing any number of functions unrelated to VIPKid."  *Id.* at 5-6.

With regard to Defendants' arguments concerning federal question jurisdiction provided by the FLSA, Plaintiff seems to argue that the existence of such a claim arising under federal law does not mean that a federal court must assert jurisdiction over it. *Id.* at 6-7. In a similar vein, Plaintiff also argues that cases containing FLSA claims can be remanded when such claims are brought alongside state law claims. *Id.* at 8. Ultimately, Plaintiff argues that the Court must remand this action "regardless of the relevance of the [a]bstention [d]octrine," but further asserts that the Court need not reach this issue in order to remand the case. *Id.* at 10. Plaintiff concludes that if the Court does not remand this case, such action would send " a signal to companies worldwide[] that CAFA is a quick and lazy path to federal court, regardless of the quality of facts and arguments the removing party alleges." *Id.*

### III.   APPLICABLE LAW

An action initially filed in state court may be removed to federal court if the federal court would have had original jurisdiction. *See* 28 U.S.C. § 1441(a). District courts have original jurisdiction over cases involving federal questions, *see* 28 U.S.C. § 1331, and over certain cases involving diversity of citizenship. *See* 28 U.S.C. § 1332. The Class Action Fairness Act "allows for the exercise of federal diversity jurisdiction over class actions involving 100 or more class members, in which the amount in controversy exceeds the sum or value of $5,000,000 (exclusive of interest and costs), and there is minimal diversity, *i.e.*, where, *inter alia*, at least one member of the putative class and one defendant are citizens of different states." *Richins v. Hofstra Univ.*, 908 F. Supp. 2d 358, 360 (E.D.N.Y. 2012) (quoting *Anirudh v. CitiMortgage, Inc.*, 598 F. Supp. 2d 448, 450 (S.D.N.Y. 2009)). As such, CAFA expands federal jurisdiction to permit a defendant to remove a class action "notwithstanding the absence of the complete diversity or federal question otherwise required for removal." *BlackRock Fin. Mgmt. Inc. v. Segregated*

*Acct. of Ambac Assur. Corp.*, 673 F.3d 169, 175 (2d Cir. 2012).  The removing party bears the burden of establishing federal jurisdiction under CAFA by a reasonable probability.  *Musiello v. CBS Corp.*, No. 20 Civ. 2569, 2020 WL 3034793, at *1 (S.D.N.Y. June 5, 2020) (citing *Blockbuster v. Galeno*, 472 F.3d 53, 59 (2d Cir. 2006));  *Singer v. 3M Co.*, No. CV 17-6962, 2018 WL 3635074, at *3 (E.D.N.Y. June 27, 2018) (citing *Sorrentino v. ASN Roosevelt Ctr., LLC*, 588 F. Supp. 2d 350, 353 (E.D.N.Y. 2008)).

CAFA also "includes certain enumerated exceptions, some of which recognize the propriety of declining to exercise federal jurisdiction over matters of local concern." *Id.* (citing *Kanowitz v. Broadridge Fin. Solutions, Inc.*, No. CV 13-649, 2014 WL 1338370, at *7 (E.D.N.Y. Mar. 31, 2014)).  It is a plaintiff's burden to demonstrate by a preponderance of the evidence that remand is warranted on the basis of one of these exceptions.[4] *Anderjaska v. Bank of Am., N.A.*, No. 1:19-CV-03057, 2020 WL 1503418, at *2 (S.D.N.Y. Mar. 30, 2020) (citing *Greenwich Fin. Servs. Distressed Mortgage Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 26 (2d Cir. 2010)); *Singer*, 2018 WL 3635074, at *3 ("While the level of proof required to satisfy a motion for remand has not been clearly stated by the Second Circuit, other circuits, as well as courts within the Second Circuit, agree that remand must be demonstrated by a preponderance of the evidence standard.").

CAFA's exceptions delineate circumstances where remand is mandatory or where the decision to remand is within the district court's discretion.  There are two scenarios in which remand to state court is mandatory.  *See Richins*, 908 F. Supp. 2d at 360-61.  First, remand is

---

[4]    In his motion, Plaintiff misstates who bears the burden of proving that an exception to CAFA jurisdiction exists by arguing that "Defendants have complete knowledge of the putative class and yet have not made any factual claims that adequately rule out remand to New York on the basis of CAFA exceptions."  *See* Pl.'s Mem. at 9.

required where:  (1) more than two thirds of the class are citizens of the state the action was commenced in; (2) at least one defendant is a citizen of the state from whom "significant relief is sought, [and] whose conduct forms a 'significant basis' for the asserted claims;" (3) the principal injuries suffered by the class were incurred in the state where the action was filed; and (4) no other class action asserting the same or similar factual allegations was filed against any of the defendants in the past three years.  *Id.* (citing 28 U.S.C. § 1332(d)(4)(A)).  Second, remand is mandatory where "two-thirds or more of the members of all proposed plaintiff classes, in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."  28 U.S.C. § 1332(d)(4)(B).  The first of these mandatory remand exceptions is commonly referred to as the "local controversy" exception; the second is referred to as the "home state" exception.  *See Camilo v. Lyft, Inc.*, No. 17-CV-9116, 2018 WL 8582073, at *1-2 (S.D.N.Y. Mar. 19, 2018).

A district court may also decline to exercise jurisdiction as a matter of discretion pursuant to CAFA's "interest of justice" exception.  *See Ramirez v. Oscar De La Renta LLC*, No. 16-CV-7855, 2017 WL 2062960, at *8 (S.D.N.Y. May 12, 2017).  This exception provides:

> A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction . . . over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on considerations of—
>
> (A) whether the claims asserted involve matters of national or interstate interest;
> (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
> (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;

(D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;

(E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and

(F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C. § 1332(d)(3).

IV.   **DISCUSSION**

A.   **CAFA Jurisdiction Exists**

On the one hand, Plaintiff does not appear to dispute that the Complaint was properly removed within the Court's CAFA diversity jurisdiction. *See* Pl.'s Mem. at 7 ("[T]his Court has CAFA jurisdiction and, as a result, Defendants may not remove this Action to arbitration and must litigate this Action as a class-action in open court."). On the other hand, Plaintiff also seems to challenge the number of potential class members, arguing discovery is necessary to verify the existence of CAFA jurisdiction. *See id.* at 8-11. The Court disagrees. Because Defendants have established, by a reasonable probability, that the putative class is greater than 100 plaintiffs, discovery on that element of CAFA jurisdiction is not needed. Despite Plaintiff's contention that he "did not allege any class size," *see* Pl.'s Reply at 2 n.2, the Complaint repeatedly alleges that there are more than 100,000 VIPKid teachers in the United States and Canada. *See* Compl. ¶¶ 20, 21, 259, 275, 287, 382. After Defendants utilized this figure as grounds for removal under CAFA -- as it was pled by Plaintiff in the Complaint -- Plaintiff made a series of convoluted attempts in his opening and reply briefs to walk back this number by

pointing to statements on VIPKid's LinkedIn profile which, according to Plaintiff, puts the class size closer to the 13,000 mark.

Notwithstanding these contentions, Defendants submitted a declaration which states that since 2016, VIPKid HK contracted with more than 200,000 teachers to provide English language services to children in China. *See* Xiong Decl. ¶ 4. Of course, Plaintiff challenges this number, too, and attempts to argue that this declaration "is not reasonably indicative of the number of proposed plaintiffs in this action." *See* Pl.'s Reply at 2-3. According to Plaintiff, the 200,000 teachers referred to by Defendants is indicative of the general number of teachers VIPKid HK has compensated and is "likely . . . in the majority, Chinese teachers based in China performing any number of functions unrelated to VIPKid" and composed of individuals who teach on other educational platforms that are not VIPKid. *Id.* a 2-3, 6. Plaintiff proffers no evidentiary support contradicting Defendants' factual statement concerning this number.[5] Significantly, this argument also contradicts the Complaint which alleges that VIPKid "only allows individuals who are legally permitted to work in the United States and Canada to become . . . teachers." *See* Compl. ¶ 25. Moreover, although not mentioned by Defendants, the Complaint, as pled, is brought on behalf of "[a]ll current and former VIPKid Teachers" -- without limitation. *See id.* ¶ 379. Whether the number of putative class members is 13,000, 100,000, 200,000, or some number in between, there is reasonable probability that the class size is greater than 100, which is

---

[5]     Plaintiff does refer the Court to an exhibit attached to his opposition to Sequoia Capital's pre-motion conference request. In doing so, Plaintiff attempts to establish that by virtue of the fact that VIPKid HK runs "Dami Wangxiao," another English teaching platform, the total number of 200,000 teachers proffered by Defendants includes teachers from the Dami Wangxiao platform as well. *See* Pl.'s Reply at 3 (citing DE 42-1). The most relevant information the Court can glean from this exhibit, which is a combination of various documents, is a news article which merely states that Dami Wangxiao was launched in early January 2020. *See* DE 42-1 at 6-7. There is no indication of the number of teachers this platform employs in comparison to the number of teachers who work on the VIPKid platform.

all that CAFA requires.  Accordingly, the Court concludes that Defendants have carried their burden to establish CAFA's numerosity requirement.  Thus, the Court has CAFA jurisdiction over Plaintiff's claims.  *See Musiello*, 2020 WL 3034793, at \*1-2; *see also Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 368 (S.D.N.Y. 2006) ("[T]he propriety of removal is to be determined by the pleadings at the time of removal.").[6]

### B.    Exceptions to CAFA Jurisdiction

Although there are three exceptions to CAFA jurisdiction, each of which could potentially form a basis to remand this case, Plaintiff's motion only addresses one -- the "interests of justice" exception.  *See* Pl.'s Mem. at 11-17.[7]  There are two threshold requirements which must be met for the interests of justice exception to apply here:  (1) at least one-third (but no more than two-thirds) of the putative class members must be citizens of New York; and (2) the primary Defendants must also be citizens of New York.  The Court's determination of whether these requirements are met "should be made largely on the basis of readily available information."  However, the Court is also permitted to make reasonable assumptions about the makeup of the putative class.  *See Commisso v. PricewaterhouseCoopers LLP*, No. 11 CIV. 5713, 2012 WL 3070217, at \*4-5 (S.D.N.Y. July 27, 2012).  "Such information and assumptions may create a rebuttable presumption that the citizenship requirement is met."  *Id.* at \*4.

---

[6]    Plaintiff does not advance arguments which address the other elements of CAFA jurisdiction, namely, whether the amount-in-controversy exceeds $5,000,000 and whether minimal diversity exists.  As such, those elements are not considered by the Court here.  However, even if Plaintiff's motion could be construed to make such an argument, the Court finds that both requirements are satisfied.  Plaintiff seeks damages of approximately $13 million and minimal diversity exists.

[7]    Plaintiff makes one statement in his opening brief that "it is more likely than not that one or more CAFA exception applies."  *See* Pl.'s Mem. at 10.  However, Plaintiff does not identify either the "local controversy" or "home state" exception which, if proven, would mandate a remand.  *See generally* Pl.'s Mem.; Pl.'s Reply.  As such, the Court's discussion is limited to the applicability of the "interests of justice" exception.

It is not until his reply brief that Plaintiff argues, for the first time, that the Court may reasonably assume more than one-third of the proposed class members are citizens of New York. *See* Pl.'s Reply at 5.  As grounds for this assumption, Plaintiff posits that the class is limited to "one narrow category of proposed Plaintiff[s]" and that "[t]he only clear facts on record about the number of VIPKid teachers . . . are about New York . . . teachers." *Id.*  The Court disagrees. First, Plaintiff's proposed class is anything but narrow.  The proposed class not only includes all current and former VIPKid teachers but is comprised of individuals across the United States and Canada.  Second, the record indicates that New York citizens comprise less than one-third of the putative class.  Defendants queried the records of VIPKid HK which indicate that VIPKid HK has contracted with over 200,000 teachers since 2016 and "more than 96% of those teachers" have business mailing addresses located outside of New York.  *See* Xiong Decl. ¶ 4.  Plaintiff attempts to rebut this statistic by stating that the Complaint and record only discuss New York VIPKid teachers and, consequently, the Court should assume more than one-third of the class are New York citizens.  *See* Pl.'s Reply at 5.  Plaintiff's contention, however, is unavailing. Although the Complaint makes numerous allegations to demonstrate that Defendants transact business in New York, it is sparse regarding the New York-composition of the class members themselves.  At most, the Complaint alleges that there are "close to 600" VIPKid teachers in New York, *see* Compl. ¶ 11(vii), which, when balanced against even the smallest iteration of the class presented to the Court for purposes of this motion (*i.e.*, 13,000) does not come close to constituting one-third of the class.  In their totality, the allegations in the Complaint and the evidence submitted by the Defendants lead the Court to reasonably infer that fewer than one-third of the putative class members are citizens of New York.  As such, Plaintiff has failed to sustain his burden to show that remand pursuant to CAFA must be granted.  *See Singer*, 2018

WL 3635074, at *5 (denying motion to remand after finding plaintiff failed to demonstrate that between one- and two-thirds of the proposed class are citizens of New York).

The Court need not consider the second threshold requirement of CAFA's interest of justice exception. However, even if Plaintiff satisfied the pre-requisite concerning citizenship of the class members, Plaintiff has not met his burden with respect to citizenship of the "primary defendants." Plaintiff argues that "VIPKid is a New York citizen and *the* primary defendant in this action." *See* Pl.'s Reply at 5 (emphasis in original). According to Plaintiff, he "has consistently and continuously alleged a single Defendant: VIPKid." *Id.* As an initial matter, the Court is concerned that "VIPKid" may not even be a suable entity based upon Defendants' representation in its Opposition to the instant motion. Nonetheless, this is not an issue which requires resolution at this juncture. *See* Defs.' Opp'n at 1 n.1 (stating "VIPKid" is not a "juridical" entity). Even if "VIPKid" is a proper defendant and a New York citizen, it is not the only ***primary*** defendant. Despite Plaintiff's contention that "VIPKid" is the only Defendant, primary or otherwise, the Complaint is drafted in that manner. The Complaint explicitly says that this action was brought against VIPKID "and (or as) all entities that 'provide' VIPKid, ***jointly and severally***." *See* Compl. ¶ 27. Consequently, Plaintiff "maintain[s] that [D]efendants are each equally culpable and liable for the injuries purportedly suffered by the putative class members, [and] there is no rational basis upon which to differentiate the defendants' status as being primary or secondary." *Brook v. UnitedHealth Grp. Inc.*, No. 06 CV 12954, 2007 WL 2827808, at *6 (S.D.N.Y. Sept. 27, 2007). The Complaint and the evidence submitted by Defendants demonstrates that some, if not all, of the Defendants have principal places of business or headquarters outside New York. For example, there are Defendants who maintain their principal places of business and/or headquarters in Delaware, California, and even China --

and as a result are considered citizens of those locales.  Accordingly, the primary defendants in this action are not all citizens of New York.

In light of the fact that Defendants have met their burden to prove that federal jurisdiction pursuant to CAFA exists, and since Plaintiff has failed to sustain his burden to demonstrate an exception to the exercise of that jurisdiction, it is respectfully recommended to Judge Seybert that Plaintiff's motion to remand be denied.[8]

### C.   Abstention

In a last-ditch effort, Plaintiff attempts to invoke the abstention doctrines set forth in the seminal Supreme Court cases of *Burford v. Sun Oil* and *Railroad Commission of Texas v. Pullman*.  *See* Pl.'s Mem. at 15-17 (citing *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *Railroad Comm'n of Tex. v. Pullman*, 312 U.S. 496 (1941)).   Pursuant to *Burford*, "a federal court may abstain from hearing a case or claim over which it has jurisdiction to avoid needless disruption of state efforts to establish coherent policy in an area of comprehensive state regulation."  *Friedman v. Revenue Mgmt. of N.Y., Inc.*, 38 F.3d 668, 670-71 (2d Cir.1994).  The Supreme Court has distilled the *Burford* doctrine as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

---

[8]   Based upon the Court's finding that it is not divested of CAFA jurisdiction, the Court does not need to determine whether Plaintiff's FLSA claims constitute a sufficient federal question to invoke jurisdiction pursuant to § 1331 nor whether the Court has supplemental jurisdiction over his state law claims.

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989)

(quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)).

The Second Circuit has identified three factors to consider in determining whether *Burford*

abstention is appropriate:  "(1) the degree of specificity of the state regulatory scheme; (2) the

need to give one or another debatable construction to a state statute; and (3) whether the subject

matter of the litigation is traditionally one of state concern." *Liberty Mut. Ins. Co. v. Hurlbut*, 585

F.3d 639, 650 (2d Cir.2009).  In light of that standard, *Burford* abstention is not appropriate here

because this case does not intrude on state policy or regulatory concerns, nor does Plaintiff even

identify a regulatory scheme at issue, let alone a complex one.  At best, Plaintiff appears to argue

that *Burford* abstention is appropriate because if this case is litigated in state court, the

Defendants' activities ***would then become*** subject to the attention of state regulators.  *See* Pl.'s

Mem. at 16-17.  This argument, however, is an incorrect application of *Burford* and as a result

this Court respectfully recommends to Judge Seybert that abstention on these grounds be

DENIED.

*Pullman* abstention is a "doctrine of constitutional avoidance" which permits a federal

court to "abstain from deciding a state law issue 'when it appears that abstention may eliminate

or materially alter the constitutional issue presented.'" *Moore v. County of Suffolk*, 851 F. Supp.

2d 447, 456-57 (E.D.N.Y. 2012) (quoting *Ohio Bureau of Emp't Servs. v. Hodory*, 431 U.S. 471,

481 (1977)).  *Pullman* abstention is only appropriate when three conditions are satisfied:  (1) a

state statue is not clear or the issue of state law is uncertain; (2) resolution of the federal issue

depends upon the interpretation given to the state law; and (3) the state law can be interpreted in

a way to avoid or modify the federal constitutional issue.  *Id.* (citing *McRedmond v. Wilson*, 533

F.2d 757, 761 (2d Cir. 1976)).  Plaintiff contends that he has "created an unseemly conflict

between" this Court and the State Court which could "lead to the premature determination of constitutional questions as Plaintiff alleges fraud committed to advance virtual cloning of American citizens." *See* Pl.'s Mem. at 16. This is another misapplication of a federal abstention doctrine. Plaintiff has not identified a state statute at issue since his claim concerning "virtual cloning" is based upon common law fraud. Nor has Plaintiff identified a federal constitutional question that is implicated by this case.

Accordingly, this Court respectfully recommends to Judge Seybert that the Court decline to abstain pursuant to *Burford* or *Pullman*, and deny Plaintiff's request to remand his claims to the extent his request is based upon principles of abstention.

## V.    CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Seybert that Plaintiff's motion to remand be DENIED in accordance with this Report and Recommendation.

## VI.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See* FED. R. CIV. P. 6(a), (e). Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF. **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joanna Seybert. Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections**. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated:  Central Islip, New York
        August 27, 2021

<u>/s/ A. Kathleen Tomlinson</u>
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge