**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KEVIN J. MEEHAN,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>VIPKid; VIPKID aka BEIJING DAMI TECHNOLOGY CO., LTD., VIPKID HK LTD. aka VIPKID, BEIJING DAMI FUTURE TECHNOLOGY CO. LTD. aka VIPKID, TENCENT HOLDINGS LTD. aka TENCENT, TENCENT AMERICA L.L.C. aka TENCENT, TENCENT CLOUD L.L.C., SEQUOIA CAPITAL OPERATIONS L.L.C. aka SEQUOIA CAPITAL, CHINA RENAISSANCE HOLDINGS LTD. aka CHINA RENAISSANCE, and VIPKID INTERNATIONAL, INC. aka VIPKIDS INTERNATIONAL, INC. aka VIPKID,<br><br>　　　　　　　Defendants. | Case No. 2:20-cv-06370-JS-ARL<br><br>**ORAL ARGUMENT**<br>**REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF THE TENCENT DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

FENWICK & WEST LLP
902 Broadway, Suite 14
New York NY  10010-6035
Phone:  (212) 430-2600

*Counsel for Defendants Tencent America LLC,*
*Tencent Holdings Ltd., and Tencent Cloud LLC*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

FACTS ALLEGED IN THE AMENDED COMPLAINT ...........................................................3

    A.    The Tencent Defendants ...............................................................................3

    B.    VIPKids and Tencent Mobility's Investment .........................................................4

    C.    Plaintiff's Allegations Against the Tencent Defendants.........................................5

    D.    Procedural History ......................................................................................5

ARGUMENT ......................................................................................................................6

I.      PLAINTIFF HAS NOT PROPERLY SERVED TENCENT HOLDINGS OR
      TENCENT CLOUD WITH THE SUMMONS AND COMPLAINT ...............................6

    A.    Plaintiff's Attempt to Serve Tencent Holdings Was Not Proper............................6

    B.    Plaintiff's Attempt to Serve Tencent Cloud Was Not Proper.................................8

II.     PLAINTIFF HAS NOT AND CANNOT ESTABLISH THAT THIS COURT
      HAS PERSONAL JURISDICTION OVER THE TENCENT DEFENDANTS................9

    A.    Plaintiff Bears the Burden of Establishing Personal Jurisdiction ...........................9

    B.    Plaintiff's Failure to Plead a Single Allegation Regarding This Court's
        Jurisdiction Over Tencent Holdings Is Deficient As a Matter of Law .................10

    C.    Plaintiff Cannot Allege General Jurisdiction Over the Tencent Defendants.........11

    D.    Plaintiff Cannot Allege Specific Jurisdiction Over the Tencent Defendants ........11

III.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE TENCENT
      DEFENDANTS .........................................................................................13

    A.    Plaintiff's Assertion of Allegations as to "All Defendants" Renders All of
        His Claims Deficient as a Matter of Law..............................................................14

    B.    Plaintiff's Fraud Claims Fail as a Matter of Law ...................................................16

        1.    Plaintiff Fails to Plead His Fraud Claims with Particularity.....................16

**TABLE OF CONTENTS**
**(CONTINUED)**

**Page**

   2. Plaintiff Fails to Allege the Essential Elements of His Fraud Claims ...........................................................................................18

 C. Plaintiff's Conversion Claim Fails as a Matter of Law .........................................20

 D. Plaintiff's New York General Business Law Claims Fail as a Matter of Law ...............................................................................................................23

CONCLUSION.........................................................................................................................25

# TABLE OF AUTHORITIES

<u>**PAGE**</u>

**CASES**

*Alnwick v. European Micro Holdings, Inc.*,
  281 F. Supp. 2d 629 (E.D.N.Y. 2003) ...................................................................18

*Aronov v. Mersini*,
  2015 WL 1780164 (S.D.N.Y. Apr. 20, 2015).........................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................14, 20

*Atuahene v. City of Hartford*,
  10 F. App'x 33 (2d Cir. 2001) ...........................................................................14, 15

*Best Van Lines, Inc. v. Walker*,
  490 F.3d 239 (2d Cir. 2007)..............................................................................10, 12

*Bill's Birds Inc. v. Trademarketing Resources Inc.*,
  920 F. Supp. 2d 357 (E.D.N.Y. 2013) ...................................................................24

*Bristol-Myers Squibb Co. v. Superior Court of California*,
  137 S. Ct. 1773 (2017).....................................................................................10, 13

*Brown v. Lockheed Martin Corp.*,
  814 F.3d 619 (2d Cir. 2016).........................................................................9, 10, 11

*Capax Discovery, Inc. v. AEP RSD Investors, LLC*,
  285 F. Supp. 3d 579 (W.D.N.Y. 2018)...................................................................19

*Caraveo v. Nielsen Media Research, Inc.*,
  2002 WL 530993 (S.D.N.Y. Apr. 8, 2002).............................................................14

*Carlson v. Cuevas*,
  932 F. Supp. 76 (S.D.N.Y. 1996) ...........................................................................13

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014).......................................................................................10, 11

*DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*,
  770 F. Supp. 2d 497 (E.D.N.Y. 2011) ...................................................................15

*Dickerson v. Napolitano*,
  604 F.3d 732 (2d Cir. 2010)....................................................................................6

*Employees' Ret. Sys. of Gov't of Virgin Islands v. Morgan Stanley & Co.*,
  814 F. Supp. 2d 344 (S.D.N.Y. 2011)...............................................................19, 20

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
  375 F.3d 168 (2d Cir. 2004)...................................................................................16

**TABLE OF AUTHORITIES**
**(CONTINUED)**

PAGE

CASES

*Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*,
   328 F. Supp. 2d 443 (S.D.N.Y. 2004)........................................................................24

*F.D.I.C. v. U.S. Mortg. Corp.*,
   132 F. Supp. 3d (E.D.N.Y. 2015) .............................................................................19

*First Hill Partners, LLC v. BlueCrest Capital Mgmt. Ltd.*,
   52 F. Supp. 3d 625 (S.D.N.Y. 2014).........................................................................18

*Galerie Furstenberg v. Coffaro*,
   697 F. Supp. 1282 (S.D.N.Y. 1988)..........................................................................25

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
   425 F.3d 158 (2d Cir. 2005)..........................................................................9, 12, 13

*Gucci Am., Inc. v. Li*,
   768 F.3d 122 (2d Cir. 2014)......................................................................................11

*Hatteras Enters. Inc. v. Forsythe Cosmetic Grp., Ltd.*,
   2018 WL 1935984 (E.D.N.Y. Apr. 23, 2018) ..................................................17, 18

*Holmes v. City of N.Y.*,
   2020 WL 918611 (S.D.N.Y. Feb. 26, 2020)..............................................................21

*In re Terrorist Attacks on Sept. 11, 2001*,
   714 F.3d 659 (2d Cir. 2013)........................................................................................9

*JCorps Int'l, Inc. v. Charles & Lynn Schusterman Family Found.*,
   828 F. App'x 740 (2d Cir. 2020) ..............................................................................10

*Johnson v. JPMorgan Chase Bank, N.A.*,
   488 F. Supp. 3d 144 (S.D.N.Y. 2020).......................................................................24

*Lebowitz v. Dow Jones and Co.*,
   847 F. Supp. 2d 599 (S.D.N.Y. 2012), *aff'd*, 508 F. App'x 83 (2d Cir. 2013).......................24

*Luce v. Edelstein*,
   802 F.2d 49 (2d Cir. 1986).........................................................................................16

*Mapping Your Future, Inc. v. Mapping Your Future Servs., Ltd.*,
   266 F.R.D. 305 (D.S.D. 2009) ....................................................................................7

*Maurizio v. Goldsmith*,
   230 F.3d 518 (2d Cir. 2000)......................................................................................25

*Mills v. Polar Molecular Corp.*,
   12 F.3d 1170 (2d Cir. 1993)......................................................................................17

## TABLE OF AUTHORITIES
## (CONTINUED)

**PAGE**

**CASES**

*Mones v. Commercial Bank of Kuwait, S.A.K.,*
    502 F. Supp. 2d 363 (S.D.N.Y. 2007)...................................................................7

*Morrison v. Hoffmann-La Roche, Inc.,*
    2016 WL 5678546 (E.D.N.Y. Sept. 29, 2016) ...................................................14

*Moss v. Bd. of Educ. of the Brentwood Union Free Sch. Dist.,*
    2021 U.S. Dist. LEXIS 66104 (Mar. 31, 2021) ..................................................8

*Mutual Benefits Offshore Fund v. Zeltser,*
    37 N.Y.S.3d 1 (N.Y. App. Div. 2016) ...............................................................7

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.,*
    85 F. Supp. 2d 282 (S.D.N.Y. 2000).................................................................17

*Pramer S.C.A. v. Abaplus Int'l Corp.,*
    76 A.D.3d 89 (1st Dep't 2010) ..........................................................................13

*Premium Mortgage Corp. v. Equifax, Inc.,*
    583 F.3d 103 (2d Cir. 2009)..............................................................................18

*Price v. City of Troy New York,*
    2014 WL 2926479 (N.D.N.Y. June 26, 2014)...................................................14

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.,*
    68 F.3d 1478 (2d Cir. 1995)..............................................................................19

*Rivas v. Hershey Co.,*
    2020 WL 4287272 (E.D.N.Y. July 27, 2020)...................................................23

*Rivera v. Samilo,*
    2018 WL 1701935 (E.D.N.Y Mar. 30, 2018) ...................................................15

*Rubio v. BSDB Management Inc.,*
    2021 WL 102651 (S.D.N.Y. Jan. 12, 2021) .....................................................21

*Securitron Magnalock Corp. v. Schnabolk,*
    65 F.3d 256 (2d Cir. 1995).................................................................................24

*Shetel Indus. LLC v. Adin Dental Implant Sys., Inc.,*
    493 F. Supp. 3d 64 (E.D.N.Y. 2020) ................................................................20

*Silverman v. Household Fin. Realty Corp. of N.Y.,*
    979 F. Supp. 2d 313 (E.D.N.Y. 2013) ..............................................................19

*Spiegel v. Schulmann,*
    604 F.3d 72 (2d Cir. 2010)..................................................................................9

**TABLE OF AUTHORITIES**
**(CONTINUED)**

PAGE

CASES

*Sulzer Mixpac AG v. Medenstar Indus. Co.*,
  312 F.R.D. 329 (S.D.N.Y. 2015) ........................................................................7

*Thyroff v. Nationwide Mut. Ins. Co.*,
  460 F.3d 400 (2d Cir. 2006) ............................................................................21

*Trisvan v. Heyman*,
  305 F. Supp. 3d 381 (E.D.N.Y. 2018) ...............................................................9

*United States v. Bonanno Organized Crime Family of La Cosa Nostra*,
  683 F. Supp. 1411 (E.D.N.Y. 1988), *aff'd*, 879 F.2d 20 (2d Cir. 1989) .................15

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
  486 U.S. 694 (1988) ........................................................................................7

*Walden v. Fiore*,
  571 U.S. 277 (2014) ........................................................................................10

*Woods v. Maytag Co.*,
  2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010) ....................................................24

*Zeballos v. Tan*,
  2006 WL 1975995 (S.D.N.Y. July 10, 2006) ....................................................6

*Zhang v. Baidu.com Inc.*,
  932 F. Supp. 2d 561 (S.D.N.Y. 2013) ...............................................................6

RULES AND STATUTES

28 U.S.C. § 1332(d) ...........................................................................................6

Federal Rule of Civil Procedure
  9(b) ...........................................................................................16, 17, 18
  12(b)(2) ...............................................................................1, 9, 10, 25
  12(b)(5) ...........................................................................................1, 25
  12(b)(6) ...............................................................................1, 14, 25
  81(c) ...........................................................................................6

New York Business Corporation Law
  § 307 ...........................................................................................7

New York Civil Practice Law
  § 302(a)(1) ...............................................................................10, 12
  § 302(a)(2)-(3) ...........................................................................10
  § 311-a ...........................................................................................8

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**PAGE**

**RULES AND STATUTES**

New York General Business Law
  § 349...............................................................................................................23
  § 350...............................................................................................................23

New York Limited Liability Company Law
  § 304.................................................................................................................8

Defendants Tencent America LLC ("Tencent America"), Tencent Holdings Ltd. ("Tencent Holdings"), and Tencent Cloud LLC ("Tencent Cloud", and together with Tencent America and Tencent Holdings, the "Tencent Defendants"), by and through their undersigned counsel, respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff Kevin Meehan's First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6).

## PRELIMINARY STATEMENT

This is a case of mistaken identity.  Plaintiff appears to have intended to sue certain investors in VIPKid, an online teaching platform.  Instead, Plaintiff mistakenly sued different entities with similar names – the Tencent Defendants – *none of which ever made any investment in VIPKid or have any relationship of any kind with VIPKid, and none of which are subject to the jurisdiction of this Court*.  Except for the conclusory allegations that Tencent America is registered to do business in New York and Tencent Cloud technology is "accessed" in New York, Plaintiff does not make a single allegation that this Court has personal jurisdiction over any of the Tencent Defendants, entirely failing to meet his burden to plead personal jurisdiction.  Nor could he.  None of the Tencent Defendants are domiciled in New York.  Only two of the three Tencent Defendants have any operations within the state of New York, and those minimal operations have no connection to any of the allegations in this case. Compounding Plaintiff's missteps, he did not properly serve two of the Tencent Defendants.

Plaintiff's claims against the Tencent Defendants are flawed for several additional reasons.  Plaintiff brought this action against his former employer, VIPKid, alleging that VIPKid violated federal and state employment laws and then retaliated against him after he raised concerns about his treatment.  Unlike a typical employment action, however, Plaintiff also sued several entities that purportedly invested in his former employer.  Plaintiff claims that those

investors engaged in a sweeping global conspiracy with VIPKid to surreptitiously record videos of Plaintiff and others without their consent for the purpose of developing and enhancing artificial intelligence technology and creating "realistic, functioning virtual humans."  Yet Plaintiff fails to plead *any* plausible factual allegations supporting these fanciful claims.

Accordingly, there are three independent bases on which this Court should dismiss Plaintiff's claims against the Tencent Defendants.

*First*, Plaintiff has failed to serve Tencent Holdings or Tencent Cloud properly, violating the Hague Convention and ignoring the straightforward statutory requirements for service of process on foreign corporations and LLCs in New York.

*Second*, even if those entities had been properly served (and they were not), Plaintiff has not – and cannot – meet his burden to establish personal jurisdiction over any of the Tencent Defendants.  Tencent Holdings is a Cayman Islands corporation with its principal place of business in the People's Republic of China and no operations of any kind in New York.  Tencent Cloud and Tencent America are both Delaware limited liability companies with their principal places of business in Delaware and California, respectively.  Tencent Cloud has only minimal sales in New York, and none of Tencent America's minimal activities in New York relate to any of Plaintiff's claims.  As a result, none of the Tencent Defendants are subject to the general or specific personal jurisdiction of the New York federal or state courts.

*Third*, Plaintiff's allegations against the Tencent Defendants fall far short of satisfying Plaintiff's burden to state a plausible claim for relief.  Plaintiff does not plead that the Tencent Defendants made any statement to him (as required for his fraud claims), that they converted his property (as required for his conversion claim), or that they engaged in any deceptive act or practice (as required for his unfair business practices claim).  Instead, Plaintiff alleges that

certain "agents" of Tencent Holdings invested in VIPKid, while other unnamed "subsidiaries, affiliates, and divisions" of Tencent Holdings engaged in partnerships with VIPKid in which the companies use each other's technology.  None of these allegations relate to any element of any claim Plaintiff asserts against Tencent Holdings.  Even more egregiously, Plaintiff does not allege a single fact connecting Tencent America and Tencent Cloud to VIPKid or any of his claims, instead alleging only that he will show *in discovery* that these companies support and use VIPKid's platform – which is wholly insufficient to state a claim for relief.

For these reasons, as set forth more fully below, the Tencent Defendants respectfully request that this Court dismiss all of Plaintiff's claims against them with prejudice.

## FACTS ALLEGED IN THE AMENDED COMPLAINT

### A.    The Tencent Defendants

Tencent Holdings is a prominent Chinese holding company that is incorporated in the Cayman Islands and has its principal place of business in the People's Republic of China.  *See* Declaration of Jung Won Byun ("Byun Decl.") ¶ 2.  Tencent Holdings does not conduct any business in New York, does not have any business operations in New York, and does not have any offices or employees in New York.  *Id.* ¶¶ 3-5.

Tencent Cloud is a Delaware limited liability company ("LLC") with its principal place of business in Delaware.  Declaration of Iris Leong ("Leong Decl.") ¶ 2.  Tencent Cloud sells cloud services, which are general computing, storage, and content delivery services provided by a centralized cloud provider.  *Id.* ¶ 4.  Tencent Cloud has no offices in New York and no employees in New York.  *Id.* ¶¶ 5-6.  Tencent Cloud has only very limited business activities in New York, including some customers in New York.  *Id.* ¶ 7.

Tencent America is a Delaware LLC with its principal place of business in Palo Alto, California and an indirect, wholly-owned subsidiary of Tencent Holdings.  Declaration of Jamin

Xu ("Xu Decl.") ¶¶ 2-3.  Among other things, Tencent America performs business development, advertising, and research and development functions for Tencent Holdings.  *Id.* ¶ 4.  As of December 23, 2021, Tencent America has 417 employees, only 11 of whom are located in New York.  *Id.* ¶ 5.  Tencent America does not sell products or services within New York.  *Id.* ¶¶ 7-8.  Tencent America's limited activities in New York consist solely of (1) reporting and editing articles regarding the financial industry within the United States; (2) developing business for Tencent Holdings within the United States; and (3) working with Tencent Holdings' customers and clients who are based in the United States.  *Id.* ¶ 9.

### B.     VIPKids and Tencent Mobility's Investment

VIPKid is an online teaching platform that provides virtual classes from native English-speaking teachers to children in China.  *See* FAC ¶¶ 6-7, 95, 98.

Plaintiff alleges that "[t]hrough its agents, Tencent Holdings has infused hundreds of millions of dollars into VIPKid and its platform."  *Id.* ¶ 36.  The Tencent Defendants' business records indicate that Tencent Mobility Limited ("Tencent Mobility"), a subsidiary of Tencent Holdings, invested in a company named VIPKID Limited.  *See* Byun Decl. ¶ 7; Leong Decl. ¶ 9; Xu Decl. ¶ 11.  Tencent Holdings, Tencent Cloud, and Tencent America are each separate legal entities from Tencent Mobility.  *See* Byun Decl. ¶ 7; Leong Decl. ¶ 9; Xu Decl. ¶ 11.  None of the Tencent Defendants have invested in VIPKid, VIPKid aka Beijing Dami Technology Co., Ltd., VIPKid HK Ltd. aka VIPKid, Beijing Dami Future Technology Co. Ltd. aka VIPKid, VIPKid International, Inc. aka VIPKids International aka VIPKid, or VIPKid Ltd. (together, the "VIPKid Entities").  *See* Byun Decl. ¶ 6; Leong Decl. ¶ 8; Xu Decl. ¶ 10.

Further, none of the Tencent Defendants have any corporate relationship with any of the VIPKid Entities or VIPKid Limited.  *See* Byun Decl. ¶ 8; Leong Decl. ¶ 10; Xu Decl. ¶ 12.  None of the Tencent Defendants has any control over the VIPKid Entities or VIPKid Limited,

nor have any of the Tencent Defendants authorized the VIPKid Entities or VIPKid Limited to act as its agent. *See* Byun Decl. ¶ 8; Leong Decl. ¶ 10; Xu Decl. ¶ 12. Finally, none of the Tencent Defendants have had any involvement in the design, development, or maintenance of the VIPKid Platform. *See* Byun Decl. ¶ 9; Leong Decl. ¶ 11; Xu Decl. ¶ 13.

### C.     Plaintiff's Allegations Against the Tencent Defendants

The bulk of Plaintiff's allegations relate to VIPKid. With respect to Tencent Holdings, Plaintiff alleges that (1) certain "subsidiaries, affiliates, and divisions" of Tencent Holdings are involved in multi-year partnerships with brands "like VIPKid"; (2) VIPKid stores data on the Tencent Cloud using Tencent software, hardware, and infrastructure; (3) Tencent "uses" the VIPKid Platform and recordings of VIPKid teachers to train, test, and improve its technology; (4) various departments within the "Tencent Network" are involved in various artificial intelligence projects; and (5) "agents" of Tencent Holdings have "infused hundreds of millions of dollars into VIPKid and its Platform" which was "conditioned" on exercising control over VIPKid and its operations. FAC ¶¶ 26-36.

As to the other Tencent Defendants, Plaintiff alleges that he "will show through discovery that Tencent America supports, contributes to, and/or is part of the VIPKid Platform," and that "discovery will show that VIPKid uses Tencent Cloud services and/or Tencent Cloud uses VIPKid to develop and enhance its own services." *Id.* ¶¶ 40, 42.

With respect to jurisdiction, Plaintiff alleges that Tencent America is registered to do business in New York as a foreign LLC and that its Chief Executive Officer and Director of International Partnerships are based in New York. *Id.* ¶ 68. He alleges that Tencent Cloud technology is "integrated into the VIPKid Platform, accessed including in New York." *Id.* ¶ 69.

### D.     Procedural History

Plaintiff initially filed this lawsuit in New York Supreme Court for Nassau County on

November 18, 2020.  On December 30, 2020, defendant VIPKids International, Inc. removed the

action to this Court pursuant to 28 U.S.C. § 1332(d) with the consent of all defendants.  Plaintiff

filed a motion to remand the action to state court on January 29, 2021, which the Court denied on

September 21, 2021.  After the Court granted leave to file an amended complaint, Plaintiff filed

the FAC on December 3, 2021.  The FAC asserts four claims against the Tencent Defendants:

(1) fraud in the inducement, (2) fraud, (3) conversion, and (4) a violation of New York General

Business Law Sections 349 and 350.  FAC ¶¶ 118-72.

## ARGUMENT

## I.     PLAINTIFF HAS NOT PROPERLY SERVED TENCENT HOLDINGS OR TENCENT CLOUD WITH THE SUMMONS AND COMPLAINT

Plaintiff bears the burden of proving proper service of process.  *Dickerson v. Napolitano*,

604 F.3d 732, 752 (2d Cir. 2010).  As Plaintiff made all of his attempts to serve the Tencent

Defendants prior to the removal of this action to federal court (*see* Declaration of Jay L.

Pomerantz ("Pomerantz Decl.") ¶¶ 2, 3), New York state law controls the adequacy of service.

*See Zeballos v. Tan*, 2006 WL 1975995, at *6 (S.D.N.Y. July 10, 2006) (where service is

attempted only prior to removal, the propriety of service is "determined by reference to state

law"); Fed. R. Civ. P. 81(c) (providing that the federal rules govern procedure after removal).

### A.     Plaintiff's Attempt to Serve Tencent Holdings Was Not Proper

Tencent Holdings is a Cayman Islands corporation with its principal place of business in

the People's Republic of China.  *See* Byun Decl. ¶ 2.  Both the Cayman Islands and the People's

Republic of China are signatories to the Hague Convention on the Service Abroad of Judicial

and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention").  *See*

*Zhang v. Baidu.com Inc.*, 932 F. Supp. 2d 561, 565 (S.D.N.Y. 2013) ("As both the United States

and China are signatories to the Hague Convention . . .");  *Mapping Your Future, Inc. v. Mapping*

6

*Your Future Servs., Ltd.*, 266 F.R.D. 305, 307 (D.S.D. 2009) (explaining that the Cayman Islands is "considered to be a signatory to the Hague Convention.").

The Hague Convention requires that service be made through one of the following methods: (1) service through the Central Authority of member states; (2) service through consular channels; (3) service by mail if the receiving state does not object; or (4) service pursuant to the internal laws of the state. *See Mones v. Commercial Bank of Kuwait, S.A.K.*, 502 F. Supp. 2d 363, 368 (S.D.N.Y. 2007) (citing *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 300 (2d Cir. 2005)).  Where a defendant is located in a country that is a signatory to the Hague Convention, the defendant must be served through the requirements of the Hague Convention, and not New York law.  *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988) (holding that "compliance with the [Hague] Convention is mandatory in all case to which it applies"); *Mutual Benefits Offshore Fund v. Zeltser*, 37 N.Y.S.3d 1, 2 (N.Y. App. Div. 2016) (mail service on a Swiss defendant under New York state law insufficient because Switzerland, a signatory to the Hague Convention, objected to mail service).  As the People's Republic of China has objected to service by mail, service must be one of the other three methods.  *See Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 331 (S.D.N.Y. 2015) (refusing to authorize service by postal mail to defendant in China).

Here, Plaintiff did not follow any of these procedures.  Instead, Plaintiff purportedly served Tencent Holdings pursuant to Section 307 of the New York Corporation Law, which permits service on foreign corporations by serving the Secretary of State and mailing a copy of the service to the defendant.  *See* Pomerantz Decl. Ex. A, Ex. B.  This does not satisfy Plaintiff's obligations under the Hague Convention, warranting dismissal of Plaintiff's claims as a matter of law pursuant to Rule 12(b)(5).  *Mutual Benefits Offshore Fund*, 37 N.Y.S.3d at 2.

B.      **Plaintiff's Attempt to Serve Tencent Cloud Was Not Proper**

Tencent Cloud LLC is a Delaware limited liability company licensed to do business in New York.  *See* Leong Decl. ¶ 2.  The procedure for serving an unauthorized foreign LLC under New York law is clear.  A plaintiff may either (1) personally serve a member, manager, agent, or person designated by the LLC pursuant to Section 311-a of the New York Civil Practice Law & Rules ("CPLR"); or (2) serve the Secretary of State pursuant to Section 304 of New York Limited Liability Company ("LLC") Law.  *See* N.Y. C.P.L.R. § 311-a; N.Y. LLC Law § 304.

Although Plaintiff purported to serve Tencent Cloud pursuant to Section 304 of the New York LLC Law (*see* Pomerantz Decl. Ex. A), Plaintiff failed to follow the requirements of that section.  In particular, Section 304 requires that where service of a copy of process was effected by mail (as Plaintiff claims to have done), an affidavit of compliance must be filed within thirty days after "receipt of the return receipt signed by the foreign limited liability company or other official proof of delivery or of the original envelope mailed."  N.Y. LLC Law § 304(e).  The affidavit of compliance must include "either the return receipt signed by such foreign limited liability company or other official proof of delivery or, if acceptance was refused by it, the original envelope with a notation by the postal authorities that acceptance was refused."  *Id.*

Here, Plaintiff's purported affidavit of compliance did not contain either a signed return receipt or the original envelope with a notation that acceptance was refused.  *See* Pomerantz Decl. Ex. A.  Instead, Plaintiff's counsel filed an affidavit noting only that the mail was "in transit as of the date of this submission" (*see* Pomerantz Decl. Ex. B), which does not meet the requirements of Section 304.  *See* N.Y. LLC Law § 304(e) (stating that the affidavit of compliance must be filed after proof of delivery and include "either the return receipt [or] the original envelope").  As a result, Plaintiff's claims against Tencent Cloud should be dismissed for insufficient service of process.  *See Moss v. Bd. of Educ. of the Brentwood Union Free Sch.*

8

*Dist.*, 2021 U.S. Dist. LEXIS 66104, at *7-11 (Mar. 31, 2021) (granting dismissal for insufficient service of process where plaintiff failed to show good cause to extend time for service).

## II.   PLAINTIFF HAS NOT AND CANNOT ESTABLISH THAT THIS COURT HAS PERSONAL JURISDICTION OVER THE TENCENT DEFENDANTS

### A.   Plaintiff Bears the Burden of Establishing Personal Jurisdiction

Regardless of whether Plaintiff eventually properly serves Tencent Holdings and Tencent Cloud, this Court should dismiss all of Plaintiff's claims against the Tencent Defendants with prejudice pursuant to Rule 12(b)(2) because Plaintiff cannot establish that this Court has either general or specific personal jurisdiction over any of them.  *See* Fed. R. Civ. P. 12(b)(2).

Plaintiff bears the burden of demonstrating personal jurisdiction.  *See Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005).  To satisfy this obligation, Plaintiff must plead ***facts*** sufficient for a ***prima facie*** showing of jurisdiction.  *See id.*  The court "will not draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation."  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).  "In resolving a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), a district court may consider materials outside the pleadings."  *Trisvan v. Heyman*, 305 F. Supp. 3d 381, 391 (E.D.N.Y. 2018).  Federal courts sitting in diversity analyze personal jurisdiction based upon the laws of their forum state.  *See Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010).

Personal jurisdiction may be either general or specific.  *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016).  General personal jurisdiction permits a court to adjudicate any cause of action against the defendant, regardless of where it arose.  *See id.*  In the case of corporate entities, including LLCs, general personal jurisdiction exists only if the entity's "affiliations with the [s]tate are so 'continuous and systematic' as to render [it] essentially at

home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  Other than "a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business—the 'paradigm' cases." *Brown*, 814 F.3d at 627 (quoting *Daimler*, 571 U.S. at 136-39).

Specific personal jurisdiction is governed by New York's long-arm statute, which confers jurisdiction only if: (1) the defendant transacted business within the state and the cause of action arises from that business activity (*see* N.Y. C.P.L.R. § 302(a)(1)); or (2) the defendant committed tortious conduct within the state (*see* N.Y. C.P.L.R. § 302(a)(2)-(3)).  Even where jurisdiction is proper under New York's long-arm statute, Plaintiff must also establish that the exercise of personal jurisdiction comports with due process.  *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 248 (2d Cir. 2007).  In the case of specific jurisdiction, this means there "must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1781 (2017) (quoting *Goodyear*, 564 U.S. at 919).

**B.**     **Plaintiff's Failure to Plead a Single Allegation Regarding This Court's Jurisdiction Over Tencent Holdings Is Deficient As a Matter of Law**

Plaintiff's Amended Complaint does not contain a single allegation as to this Court's general or specific personal jurisdiction over Tencent Holdings.  As Plaintiff has failed to plead facts sufficient for a prima facie showing of jurisdiction, Plaintiff's claims against Tencent Holdings should be dismissed pursuant to Rule 12(b)(2).  *See Walden v. Fiore*, 571 U.S. 277, 285 (2014); *JCorps Int'l, Inc. v. Charles & Lynn Schusterman Family Found.*, 828 F. App'x 740, 744-45 (2d Cir. 2020) (granting motion to dismiss because plaintiff pleaded no facts alleging defendant's connection to New York other than plaintiff's own domicile there).

### C.    Plaintiff Cannot Allege General Jurisdiction Over the Tencent Defendants

As Tencent Holdings is a Cayman Islands corporation with its principal place of business in the People's Republic of China, and Tencent America and Tencent Cloud are Delaware LLCs with their principal places of business in California and Delaware, respectively, federal and state courts in New York lack general personal jurisdiction over the Tencent Defendants except in a "truly 'exceptional' case." *Brown*, 814 F.3d at 627 (quoting *Daimler*, 571 U.S. at 136-39).

Plaintiff does not plead any facts establishing this standard, nor could he.  Only Tencent America and Tencent Cloud have any operations in New York, and merely doing business in a state, even "a substantial, continuous, and systematic course of business," cannot create general jurisdiction over a corporate entity.  *Daimler*, 571 U.S. at 138-39; *see also Brown*, 814 F.3d at 628 (affirming dismissal of defendant corporation for lack of general jurisdiction in Connecticut where corporation had four offices in the state that employed 30-70 workers and derived $160 million in revenue for Connecticut-based work over a five-year period).  Tencent Cloud and Tencent America's minimal activities in New York do not come close to meeting this standard.

Likewise, after the Supreme Court's ruling in *Daimler*, a foreign LLC's maintenance of an office in New York is not sufficient to create general jurisdiction over the LLC in New York. *See, e.g.*, *Brown*, 814 F.3d at 628 (defendant corporation's physical office presence in the state for over 30 years did not create general jurisdiction); *Gucci Am., Inc. v. Li*, 768 F.3d 122, 135 (2d Cir. 2014) (district court lacked general jurisdiction over a foreign bank because the bank's four branch offices within the forum and associated business activity "'plainly do not approach' the required level of contact" (quoting *Daimler*, 571 U.S. at 139 n.19)).

### D.    Plaintiff Cannot Allege Specific Jurisdiction Over the Tencent Defendants

New York courts exercise specific personal jurisdiction over a non-domiciliary who "transacts any business" within New York ***if and only if*** the cause of action "arise[s] from" the

business transacted within the state.  N.Y. C.P.L.R. § 302(a)(1); *Best Van Lines*, 490 F.3d at 246.

A claim arises from a non-domiciliary's business activity ***only*** if there is a "substantial nexus"

between the cause of action and the activities in New York.  *Grand River*, 425 F.3d at 166.

Only Tencent America and Tencent Cloud transact any business in New York, and not

one of the Tencent Defendants has any connection to Plaintiff's causes of action, all of which

relate to the purported activities of VIPKid, Plaintiff's former employer.  Plaintiff vaguely

alleges that agents and related companies of Tencent Holdings invested in and/or used VIPKid,

and that "discovery" will show a connection between Tencent America or Tencent Cloud and

VIPKid.  *See* FAC ¶¶ 26-36.  Contrary these conclusory allegations, not one of the Tencent

Defendants has any connection whatsoever to VIPKid.  *See* Byun Decl. ¶¶ 6-9; Leong Decl.

¶¶ 8-11; Xu Decl. ¶¶ 10-13.  The Tencent Defendants do not control VIPKid, or have any

involvement in the design, development, and/or maintenance of the VIPKid Platform.  *See* Byun

Decl. ¶¶ 8-9; Leong Decl. ¶¶ 10-11; Xu Decl. ¶¶ 12-13.  They do not have any corporate

relationship of any kind with VIPKid, and not one of them invested in VIPKid.  *See* Byun Decl.

¶¶ 6-8; Leong Decl. ¶¶ 8-10; Xu Decl. ¶¶ 10-12.  Instead, an entirely different Tencent entity –

Tencent Mobility – invested in VIPKID Limited.  *See* Byun Decl. ¶ 7; Leong Decl. ¶ 9; Xu Decl.

¶ 11.  Each of the Tencent Defendants is an entirely separate entity from Tencent Mobility.  *See*

Byun Decl. ¶ 7; Leong Decl. ¶ 9; Xu Decl. ¶ 11.

Thus, far from establishing a "substantial nexus" between Plaintiff's causes of action and

Tencent America and Tencent Cloud's limited activities in New York, the Amended Complaint

does not establish any connection at all.  Instead, it appears that Plaintiff has sued the Tencent

Defendants because they share a similar name with an entity that invested in his former

employer, which is wholly insufficient to establish jurisdiction under Section 302(a)(1).  *See*

*Grand River*, 425 F.3d at 166.

Nor could Plaintiff establish specific personal jurisdiction based on his allegations of tortious conduct.  Plaintiff does not allege (nor could he) that any of the Tencent Defendants committed any tortious act "within the state" of New York, as required by Section 302(a)(2). Although Plaintiff makes the conclusory – and false – allegation that "agents" of Tencent Holdings invested in VIPKid, mere investment in an entity based in New York cannot constitute tortious conduct "within the state" for purposes of Section 302(a)(2).  *See Carlson v. Cuevas*, 932 F. Supp. 76, 79 (S.D.N.Y. 1996) ("The Second Circuit has consistently interpreted § 302(a)(2) jurisdiction narrowly, finding that correspondence by a defendant into New York without more generally does not confer New York jurisdiction over the correspondent."). Moreover, Plaintiff does not allege that any Tencent Holdings employee ever entered New York, and New York courts "have traditionally required the defendant's presence here at the time of the tort" to establish jurisdiction pursuant to Section 302(a)(2).  *Pramer S.C.A. v. Abaplus Int'l Corp.*, 76 A.D.3d 89, 97 (1st Dep't 2010).

Finally, because Plaintiff fails to allege any connection between his claims and the Tencent Defendants, let alone any activity of the Tencent Defendants in New York that is connected to his claims, the exercise of jurisdiction does not comport with due process.  *See Bristol-Myers Squibb*, 137 S. Ct. at 1781.

## III.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE TENCENT DEFENDANTS

Wholly apart from Plaintiff's failure to effect service and his inability to demonstrate personal jurisdiction, the Amended Complaint's allegations do not come close to stating a claim for relief against any of the Tencent Defendants.  In determining whether a plaintiff has stated a claim under Rule 12(b)(6), the Court examines well-pleaded factual allegations in their entirety,

together with materials referenced in the pleading or subject to judicial notice, and "determine[s] whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action," or "a legal conclusion couched as a factual allegation," need not be accepted as true. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

None of Plaintiff's four claims against the Tencent Defendants are pleaded with sufficient particularity. *First*, the Amended Complaint's allegations are not only conclusory, but they fail to meet the bare minimum requirement of identifying the specific defendants against whom each cause of action is asserted. *Second*, Plaintiff fails to allege facts necessary to plead any of the causes of action he asserts against the Tencent Defendants.[1]

A.   **Plaintiff's Assertion of Allegations as to "All Defendants" Renders All of His Claims Deficient as a Matter of Law**

While a complaint need not be "a model of clarity or exhaustively present the facts alleged, it [must], at a minimum, … give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001); *Morrison v. Hoffmann-La Roche, Inc.*, 2016 WL 5678546, at *4 (E.D.N.Y. Sept. 29, 2016). This requires a plaintiff to identify the specific defendant(s) against whom she is asserting each of her causes of action. *Price v. City of Troy New York*, 2014 WL 2926479, at *5 (N.D.N.Y. June 26, 2014); *Caraveo v. Nielsen Media Research, Inc.*, 2002 WL 530993, at *2 (S.D.N.Y. Apr. 8, 2002) (A defendant "cannot effectively respond to [plaintiff's] complaint until he knows which claims [plaintiff] is asserting against him in his individual capacity.") (internal

---

[1] Although the Amended Complaint is unclear, it appears that Plaintiff is not asserting his federal or state employment law claims against the Tencent Defendants. To the extent those claims are asserted against the Tencent Defendants, the Tencent Defendants adopt the arguments made in the motion to dismiss to be filed by Defendant Beijing Dami Technology Co., Ltd.

quotation marks omitted).  And in actions brought against multiple defendants, this means that a

plaintiff "must clearly specify the claims with which each particular defendant is charged."

*United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 683 F. Supp. 1411, 1429

(E.D.N.Y. 1988), *aff'd*, 879 F.2d 20 (2d Cir. 1989).

      Here, Plaintiff fails to do that.  None of the causes of action that apply to the Tencent

Defendants identify a specific Tencent entity as committing any specific act.  In fact, none of the

causes of action distinguish between any of the nine Defendants, instead referring only to "all

Defendants."  *See* FAC ¶¶ 118-77.  This lack of specificity appears not to be an oversight but

rather an inability to distinguish between the Defendants; after all, the Amended Complaint

makes clear that Plaintiff does not have any knowledge or information establishing two of the

Tencent Defendants' connection to this case.  *See id.* ¶¶ 40, 42 (alleging that plaintiff will show

through "discovery" that Tencent America and Tencent Cloud are connected to VIPKid).

      "By lumping all the defendants together in each claim and providing no factual basis to

distinguish their conduct," Plaintiff's Amended Complaint fails to meet the pleading standard

and specify the claims with which each particular defendant is charged.  *See Atuahene*, 10 F.

App'x at 34.  In similar cases, this Court has granted motions to dismiss.  *See, e.g.*, *Rivera v.

Samilo*, 2018 WL 1701935, at *7 (E.D.N.Y Mar. 30, 2018) ("Plaintiff's conclusory, non-specific

allegations, that do not allege that specific Defendants … violated Plaintiff's … rights, are

plainly insufficient."); *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d

497, 526 (E.D.N.Y. 2011) ("[P]laintiff's allegations … are wholly conclusory.  For example,

plaintiffs have failed to identify which defendants caused each allegedly fraudulent statement to

be spoken, written, or mailed; what the content of the allegedly fraudulent misrepresentation

was; or when the communication was made.").

**B.**     <u>**Plaintiff's Fraud Claims Fail as a Matter of Law**</u>

      **1.**     **Plaintiff Fails to Plead His Fraud Claims with Particularity**

Plaintiff's Amended Complaint alleges fraud in the inducement and common law fraud, FAC ¶¶ 118-60, but wholly fails to satisfy the requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) instructs that in alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). As the Second Circuit has explained, Rule 9(b) requires that the plaintiff "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d. Cir. 1996)). Allegations "which fail to specify the time, place, speaker, and sometimes even the content of the alleged misrepresentations, lack the 'particulars' required by Rule 9(b)." *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986).

Plaintiff fails to meet most of Rule 9(b)'s requirements, most obviously by not identifying the speaker and not stating where and when the statements or omissions were made. ***First***, none of Plaintiff's allegations related to his fraud claims specifically identify a Tencent entity as misrepresenting or omitting any specific fact. Plaintiff instead ascribes all alleged misrepresentations and omissions to "defendants" or "all defendants."[2] *See, e.g.*, FAC ¶ 119 ("All Defendants … to wrongfully induce …."), ¶ 120 ("Material misrepresentations and omissions of fact … were known to be false by all Defendants …."), ¶ 126 ("Defendants

---

[2] The only relevant allegation mentioning the Tencent Defendants by name—and still not distinguishing between the three of them—is that the "Tencent Defendants appeared before this court claiming to be arm's length investors of VIPKid." FAC ¶ 133. Plaintiff does not expand on this allegation to explain how it is fraudulent and injured Plaintiff.

knowingly and variously repeated these and other false misrepresentations in public."), ¶ 127 ("All Defendants helped conceal the VIPKid Scheme and omitted to clarify falsehoods."), ¶ 130 ("[T]he VIPKid Platform has also been falsely described, by Defendants …."), ¶ 131 ("All Defendants have omitted …."), ¶ 132 ("Defendants hid that …."), ¶ 134 ("All Defendants entered into an agreement to exploit …."), ¶ 139 ("Defendants have aggressively curated a false image for VIPKid advancing misrepresentations and omissions of material fact."), ¶ 142 ("All Defendants … to defraud …."), ¶ 143 ("Defendants through the VIPKid Scheme [] variously advanced further material misrepresentations and omissions …."), ¶ 145 ("Defendants leveraged paid news and other marketing gimmicks to create misinformation ….").

Plaintiff cannot satisfy the Rule 9(b) pleading requirement by attributing the alleged misrepresentations and omissions to all defendants in general; as such, his claims are deficient as a matter of law.  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *see also Hatteras Enters. Inc. v. Forsythe Cosmetic Grp., Ltd.*, 2018 WL 1935984, at *10 (E.D.N.Y. Apr. 23, 2018) ("When multiple defendants are alleged to have engaged in the fraud, and made material misrepresentations, the complaint must clearly state which defendants made which statements") (quoting *Mills*, 12 F.3d at 1175 (collecting cases)); *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000) (same).

**Second**, none of the Amended Complaint's allegations sufficiently specify when the alleged misrepresentations and omissions were made.  Plaintiff includes one allegation referencing a misrepresentation or omission happening "[a]fter VIPKid Teachers were hired," *see* FAC ¶ 143, and otherwise does not allege any dates or relevant time periods.  *Id.* ¶¶ 118-60. These allegations are plainly insufficient, and this Court routinely dismisses fraud claims where plaintiffs allege that the fraudulent conduct took place during a vague timeframe.  *E.g.*, *Hatteras*

*Enters.*, 2018 WL 1935984, at *11 ("Furthermore, it is insufficient to state that the misrepresentations occurred over a six to seven month period."); *Alnwick v. European Micro Holdings, Inc.*, 281 F. Supp. 2d 629, 641 (E.D.N.Y. 2003) (dismissing a fraud claim where the amended complaint alleged that fraudulent statements were made between May 1997 and August 1997, in part because a "vague four-month period of time is insufficient to satisfy the pleadings standards of Rule 9(b)"); *see also Aronov v. Mersini*, 2015 WL 1780164, at *4 (S.D.N.Y. Apr. 20, 2015) ("The Complaint, which specifies an approximate eight-month period during which the statements were made, lacks particularity with regard to the timeframe of the alleged misrepresentations.").

In sum, Plaintiff fails to meet Rule 9(b)'s requirements because his fraud claims are not plead with particularity: the Amended Complaint's allegations do not identify which defendant made which misrepresentation or omission, or when they were made.  Failing to meet Rule 9(b)'s requirements is fatal to Plaintiff's common law fraud and fraud in the inducement claims.

### 2.      Plaintiff Fails to Allege the Essential Elements of His Fraud Claims

Even if Plaintiff pleaded the fraud claims with particularity – which he did not – he would still fail to state a claim because he does not allege the essential elements of those claims. To state a claim for common law fraud under New York law, a plaintiff must allege: "(1) a misrepresentation or a material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or material omission, and (4) injury." *Premium Mortgage Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009); *First Hill Partners, LLC v. BlueCrest Capital Mgmt. Ltd.*, 52 F. Supp. 3d 625, 637 (S.D.N.Y. 2014).  Similarly, to state a claim for fraud in the inducement, a plaintiff must allege "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive, (iii) reasonable reliance on the

18

misrepresentation by [the other party]; and (iv) resulting damages." *Silverman v. Household Fin. Realty Corp. of N.Y.*, 979 F. Supp. 2d 313, 319-20 (E.D.N.Y. 2013); *Capax Discovery, Inc. v. AEP RSD Investors, LLC*, 285 F. Supp. 3d 579, 586 (W.D.N.Y. 2018).

Here, as a threshold matter, nowhere in the Amended Complaint does Plaintiff allege that any of the Tencent Defendants made any statement to him, let alone a false statement. *See, e.g.*, *Employees' Ret. Sys. of Gov't of Virgin Islands v. Morgan Stanley & Co.*, 814 F. Supp. 2d 344, 353 (S.D.N.Y. 2011) (collecting cases). Nor does Plaintiff allege that any of the Tencent Defendants omitted a fact, let alone a material fact, with the intention to deceive.

But even if Plaintiff had alleged that the Tencent Defendants omitted a fact with the intention to deceive, that would be insufficient because he did not plead that the Tencent Defendants had a duty to disclose. "A duty of disclosure generally arises in three circumstances: (i) the parties are in a fiduciary or confidential relationship; (ii) one party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party; and (iii) one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *F.D.I.C. v. U.S. Mortg. Corp.*, 132 F. Supp. 3d, 369, 383 (E.D.N.Y. 2015); *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1483-84 (2d Cir. 1995) (dismissing a fraud claim where there was no fiduciary duty or other relationship of trust between the parties, even though the parties were lender and borrower and thus bargained with one another). Plaintiff does not allege that (1) the parties were in a relationship signifying a heightened level of trust; (2) the Tencent Defendants made any statement at all, let alone one that then required additional disclosure; or (3) the Tencent Defendants knew that Plaintiff was acting on the basis of mistaken knowledge. Accordingly, Plaintiff cannot base his fraud claims on an omission by the Tencent Defendants.

Without pleading this first element, Plaintiff cannot plead the other elements and thus fails to state a claim for fraud or fraud in the inducement.  *See Employees' Ret. Sys.*, 814 F. Supp. 2d at 354 ("Because a misrepresentation or a material omission of fact is an essential element for a common law fraud claim under New York law, … Plaintiff fails to state a claim for common law fraud.").  These claims fail for the additional reasons that Plaintiff does not include ***any*** allegations regarding scienter, and his conclusory allegations as to reliance and damages (*see* FAC ¶¶ 139-40, 149) fail to provide any factual support and thus cannot support his claims.

**C.     Plaintiff's Conversion Claim Fails as a Matter of Law**

Plaintiff fails to state a claim for conversion because he does not allege any facts supporting the essential elements of that claim.  "Under New York law, [i]n order to establish a cause of action to recover damages for conversion, the plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question to the exclusion of the plaintiff's rights."  *Shetel Indus. LLC v. Adin Dental Implant Sys., Inc.*, 493 F. Supp. 3d 64, 121 (E.D.N.Y. 2020).

Here, Plaintiff fails to allege facts supporting any of the three elements of conversion: (1) he does not specifically identify the thing the Tencent Defendants allegedly converted; (2) he does not allege that he had legal ownership or an immediate superior right of possession to that thing (whatever it might be); and (3) he does not allege that the Tencent Defendants exercised an unauthorized dominion over that unnamed thing to the exclusion of Plaintiff's rights.

*First*, Plaintiff does not identify what property of his was allegedly converted beyond a vague reference to "personal data" and "biometric data."  *See* FAC ¶ 162.  To "state a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678, Plaintiff needed to at least provide further detail and identify the data that was allegedly converted.  *See Rubio v. BSDB*

*Management Inc.*, 2021 WL 102651, at *6 (S.D.N.Y. Jan. 12, 2021) ("Defendants' threadbare allegation that Plaintiff misappropriated 'an air compression and a mechanical floor drain machine' fails to establish a 'specific identifiable thing' in which Defendant had 'legal ownership or an immediate superior right of possession'").

     *Second*, Plaintiff does not plead that he had legal ownership or an immediate superior right of possession to this "personal" and "biometric" data.  To make up for a lack of plausible factual allegations addressing this threshold requirement, Plaintiff adds a legal conclusion that he and others similarly situated have "possessory rights and/or interests in their personal data, especially biometric data."  *See* FAC ¶ 162.  Even if this conclusory statement were a factual allegation, it would not speak to the requirement of *legal ownership* or *immediate superior right of possession*.

     *Finally*, Plaintiff never alleges that the Tencent Defendants exercised an unauthorized dominion over Plaintiff's "data" to the exclusion of Plaintiff's rights.  This is fatal to Plaintiff's conversion claim, as the Second Circuit has instructed that conversion "*requires* that the defendant exclude the owner from exercising her rights over the goods."  *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006) (emphasis added).  The Amended Complaint does not contain a single allegation that Plaintiff was excluded from using his "biometric" and "personal" data.  *See Holmes v. City of N.Y.*, 2020 WL 918611, at *11 n.15 (S.D.N.Y. Feb. 26, 2020) ("No claim can exist where defendants possessed only a copy of the information and did not, in any way, limit or otherwise deprive plaintiffs of possession or use of that information.").  More than that, the Amended Complaint does not even allege that the Tencent Defendants exercised an unauthorized dominion over Plaintiff's "data."  Other than an allegation that "Defendants" harvested this data from Plaintiff, *see* FAC ¶¶ 162-63, the most that Plaintiff

alleges for the three Tencent Defendants is the following against Tencent Holdings:

> 31.     VIPKid stores data on the Tencent Cloud and recordings of VIPKid courses are streamed, stored, exploited, or shared, in whole, part, or duplicate, using Tencent software/hardware/infrastructure.

> 32.     Overwhelming evidence indicates that Tencent uses the VIPKid Platform for technological development, for example, to train, test, and improve its facial recognition and other technology.

> 33.     Overwhelming evidence indicates that Tencent uses recordings of VIPKid Teachers for such ends.

> 34.     Evidence indicates that Tencent is disseminating, throughout the Tencent Network, fruits of the VIPKid Platform, including information related to biometric/personal data of VIPKid Teachers.

*Id.* ¶¶ 31-34.

That VIPKid allegedly used Tencent Cloud to store data (as do a multitude of other companies) is, as a legal matter, a completely meaningless allegation.  Also meaningless is an allegation of "overwhelming evidence" but zero details on what this "overwhelming" evidence is.

   In addition to showcasing Plaintiff's lack of specific facts about Tencent's connection to the VIPKid Platform, these statements do not specify whether the "data" stored on the Tencent Cloud or the "information related to biometric/personal data" that "evidence indicates Tencent is disseminating" is the same "personal" and "biometric" data that Plaintiff alleges was converted.[3] Nor do these statements clarify whether the fact that "data" was stored on the Tencent Cloud means that Tencent Holdings exercised an unauthorized dominion over it, or whether Tencent

---

[3] Indeed, the Amended Complaint's other allegations undercut this possibility, as Plaintiff admits that he does not know if his personal data is even shared with the Tencent Defendants.  *See* FAC ¶ 103 ("It's ***reasonable to assume*** that personal data, collected on the VIPKid Platform is shared through the networks of some or all defendants.  There is no indication that there are any safeguards in place to ensure that this data, which ***might be*** the largest private collection of personal/biometric data in the world, is stored safe from misuse.") (emphasis added).  This admission speaks volumes about the utter lack of merit of Plaintiff's efforts to drag the Tencent Defendants into this lawsuit.

Holdings had any access—let alone exercised an unauthorized dominion—to the course recordings. And for the other two Tencent entities, Plaintiff does not even allege as much; instead, he admits that he will need to rely on discovery for the possibility to prove that they have any connection to the VIPKid Platform. *See id.* ¶ 40 ("Plaintiff will show through discovery that Tencent America supports, contributes to, and/or is part of the VIPKid Platform."); *id.* ¶ 42 ("[D]iscovery will show that VIPKid uses Tencent Cloud services and/or Tencent Cloud uses VIPKid to develop and enhance its own services.").

In sum, the Amended Complaint lacks the facts necessary to plead the elements of a conversion claim against the Tencent Defendants. This claim cannot be supported only by Plaintiff's legal conclusions, *see id.* ¶¶ 161-65, and so it fails as a matter of law.

### D. Plaintiff's New York General Business Law Claims Fail as a Matter of Law

Finally, Plaintiff fails to allege the essential elements of his claims for violations of New York General Business Law ("GBL") Sections 349-50. "A plaintiff is entitled to relief for a violation of GBL § 349, which prohibits deceptive business practices, if: (1) the act, practice, or advertisement was consumer-oriented; (2) the act, practice or advertisement was misleading in a material respect, and (3) the plaintiff was thereby injured." *Rivas v. Hershey Co.*, 2020 WL 4287272, at *3 (E.D.N.Y. July 27, 2020) (internal citation omitted) (dismissing complaint with prejudice where plaintiff could not plausibly allege defendant's marketing was misleading to a reasonable consumer). "Similarly, to establish a claim under GBL § 350, which prohibits false advertising, a plaintiff must demonstrate that the advertisement (1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury." *Id.* A Section 349 claim based on an omission survives only "where the business alone possesses material information that is relevant to the consumer and fails to provide this information." *Lebowitz v. Dow Jones and Co.*, 847 F. Supp. 2d 599, 605 (S.D.N.Y. 2012), *aff'd*, 508 F. App'x

83 (2d Cir. 2013) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995)).

"[S]ection 349 is directed at wrongs against the consuming public," and therefore "a threshold matter in § 349 cases is whether or not the act in question was consumer-oriented." *Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 447 (S.D.N.Y. 2004) (quoting *Oswego*, 85 N.Y.2d at 24-25); *see also Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) ("It is clear that 'the gravamen of the complaint must be consumer injury or harm to the public interest.'"); *Bill's Birds Inc. v. Trademarketing Resources Inc.*, 920 F. Supp. 2d 357, 367-68 (E.D.N.Y. 2013) (dismissing claim where plaintiffs failed to allege that challenged act or misrepresentation was consumer-oriented).

Here, Plaintiff provides no factual allegations to plead that any wrongful act by any of the Tencent Defendants was consumer-oriented. He does not allege that being a teacher and VIPKid employee made him a consumer, and he does not allege that any wrongful acts by the Tencent Defendants have a broad impact on consumers at large. *See Johnson v. JPMorgan Chase Bank, N.A.*, 488 F. Supp. 3d 144, 162 (S.D.N.Y. 2020) ("[T]he test is whether the acts or practices have a broader impact on consumers at large, where a consumer is one who purchases goods and services for personal, family or household use."). Plaintiff includes just one bare legal conclusion to this point: "VIPKid has engaged in unlawful and deceptive consumer-oriented acts or practices in the conduct of its business …." *See* FAC ¶ 169. This kind of conclusory allegation is plainly insufficient to state a claim under the GBL. *Woods v. Maytag Co.*, 2010 WL 4314313, at *15 (E.D.N.Y. Nov. 2, 2010) ("[C]onclusory allegations have been held to be insufficient to state a claim under Section 349.").

This same analysis applies to Section 350, and so Plaintiff fails to meet the requirements

of that claim as well.  *See Maurizio v. Goldsmith*, 230 F.3d 518, 522 (2d Cir. 2000); *Galerie*

*Furstenberg v. Coffaro*, 697 F. Supp. 1282, 1291-92 (S.D.N.Y. 1988) (granting motion to

dismiss Section 350 claim where plaintiff was not an injured consumer and did not allege injury

to public at large).  With Plaintiff's inability to plead this threshold element, Plaintiff's GBL

Section 349 and Section 350 claims fail as a matter of law.

## CONCLUSION

For the foregoing reasons, the Tencent Defendants respectfully request that the Court

grant their motion to dismiss Plaintiff's Amended Complaint for lack of personal jurisdiction

pursuant to Rule 12(b)(2), for insufficient service of process pursuant to Rule 12(b)(5), and for

failure to state a claim pursuant to Rule 12(b)(6).  Moreover, because Plaintiff cannot establish

good cause to extend the time to serve the Tencent Defendants, cannot demonstrate that personal

jurisdiction over the Tencent Defendants is proper, cannot allege facts to overcome the legal

deficiencies in his claims, and has already amended his complaint once, the Tencent Defendants

respectfully request that their motion to dismiss be granted with prejudice.

Dated: New York, New York
     January 20, 2022

Respectfully submitted,

**FENWICK & WEST LLP**

By:       */s/ Jay L. Pomerantz*

Jay Pomerantz
902 Broadway, Suite 14
New York, NY  10010-6035
Telephone:    (212) 430-2600

Katherine A. Marshall
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:    (415) 875-2300

*Attorneys for Defendants Tencent America LLC,*
*Tencent Holdings Ltd., and Tencent Cloud LLC*