**STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

KEVIN J. MEEHAN,

                 Plaintiff,

         -against-

VIPKID HK LTD., et al.

             Defendants.

20-cv-06730 (JS)(ARL)

**MEMORANDUM OF LAW IN SUPPORT OF VIPKID DEFENDANTS'**
**MOTION TO COMPEL ARBITRATION, OR TO DISMISS SOME OR ALL**
**DEFENDANTS FOR LACK OF PERSONAL JURISDCITON AND/OR TO DISMISS**
**THE COMPLAINT IN WHOLE OR IN PART FOR FAILURE TO STATE A CLAIM**

DORF & NELSON LLP
555 Theodore Fremd Avenue
Rye, New York 10580
Tel: 914.381.7600
*Attorneys for Defendants*

*Of Counsel:*
     *Andrew P. Marks*
     *David S. Warner*

<u>TABLE OF CONTENTS</u>

I.   PRELIMINARY STATEMENT ................................................................................. 1

      Exhibit A................................................................................................................. 1

      Exhibit B ................................................................................................................ 1

      Exhibit C ................................................................................................................ 1

II.  RELEVANT FACTS ............................................................................................... 2

    A.   DAMI Defendants Operations ........................................................................ 2

    B.   Meehan Agreed to Arbitrate His Disputes ...................................................... 3

        Exhibit A........................................................................................................ 3

    C.   Plaintiff's Allegations ..................................................................................... 4

III. LEGAL ARGUMENT ............................................................................................ 4

    A.   Meehan Agreed to Arbitrate Disputes on an Individual Basis......................... 5

    B.   Meehan's Claims Fall Within the Scope of the Arbitration Provision ............ 5

    C.   Plaintiff Must Arbitrate His Claims Against All Dami Defendants.................. 8

    THE COURT LACKS PERSONAL  JURISDICTION OVER THE DAMI DEFENDANTS .... 9

    THE COMPLAINT FAILS TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED
....................................................................................................................... 10

    A.   The FAC Is an Improper Shotgun Pleading ................................................... 10

    B.   The FAC Fails to State Fraud Claims ............................................................ 12

      1.   Plaintiff's Group-Pled Allegations Fail to Satisfy Rule 9's Specificity Requirement 12

    C.   Plaintiff Fails to Plead Claims for Fraud and Fraud in the Inducement......................... 14

    D.   The FAC Fails to State a Claim for Conversion ............................................. 17

    E.   The FAC Fails to State a Claim for Violation of NY General Business Law................ 19

    F.   The FAC Fails to State a Claim for Violation of NYLL................................................ 21

      1.   Off-the-clock work .................................................................................. 21

      2.   Unlawful Wage Deductions..................................................................... 22

      3.   Spread of hours pay ................................................................................. 23

      4.   Failure to Provide Paid Sick Leave ......................................................... 23

      5.   Retaliation in Violation of NYLL § 215 .................................................. 24

    G.   The FAC Fails to Allege an FLSA Violation.............................................................. 24

IV.  CONCLUSION...................................................................................................... 25

# **TABLE OF AUTHORITIES**

<u>CASES</u>

*Alexander v. Chesapeake Appalachia, LLC,*
  839 F. Supp. 2d 544 (N.D.N.Y. 2012) ...................................................................... 7

*Alnwick v. European Micro Holdings, Inc.,*
  281 F. Supp. 2d 629 (E.D.N.Y. 2003)................................................................. 13, 14

*Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.,*
  981 F. Supp. 2d 153, 163 (E.D.N.Y. 2013)............................................................. 18

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .............................................................................................. 10

*AT&T Mobility, LLC v. Concepcion,*
  131 S. Ct. 1740 (2011) ............................................................................................ 4

*Attanasio v. Comm. Health Sys., Inc.,*
  2011 WL 5008363 (M.D. Pa. Oct. 20, 2011)......................................................... 11

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
  171 F.3d 779 (2d Cir. 1999)..................................................................................... 9

*Bank of Am. v. Bear Stearns Asset Mgmt.,*
  969 F. Supp. 2d 339 (S.D.N.Y. 2013)..................................................................... 16

*Barmapov v. Amuial,*
  986 F.3d. 1321  (11th Cir. 2021)............................................................................ 11

*Bill's Birds Inc. v. Trademarketing Resources Inc.,*
  920 F. Supp. 2d 357 (E.D.N.Y. Jan. 31, 2013) ...................................................... 20

*Callahan v. Callahan,*
  127 A.D.2d 298, 514 N.Y.S.2d 819 (3d Dep't 1987). ............................................ 16

*Casci v. National Fin. Network, LLC,*
  2015 WL 94229 (E.D.N.Y. Jan. 7, 2015)................................................................ 25

*Cho v. JS Autoworld 1 Ltd.,*
  97 F. Supp. 3d 351 (E.D.N.Y. 2015)........................................................................ 7

*Contec Corp. v. Remote Sol. Co. Ltd.*,
  398 F.3d 205 (2d Cir. 2005) .................................................................................... 5

*Cortec Indus. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991) ..................................................................................... 1

*Denney v. BDO Seidman, L.L.P.*,
  412 F.3d 58 (2d Cir. 2005) ..................................................................................... 6

*Dowe v. Leeds Brown Law*,
  419 F. Supp. 3d 748 (SDNY 2019) ......................................................................... 6

*Eaves v. Designs for Finance, Inc.*,
  785 F. Supp. 2d 229 (S.D.N.Y. 2011) .................................................................... 14

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*,
  375 F.3d 168 (2d Cir. 2004) ........................................................................... 12, 16

*Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*,
  328 F. Supp. 2d 443 (S.D.N.Y. 2004) .................................................................... 20

*Feld v. Postmates, Inc.*,
  442 F. Supp. 3d 825 (S.D.N.Y. 2020) ..................................................................... 7

*Fernandez v. Zoni Language Centers, Inc.*,
  858 F.3d 45 (2d Cir. 2017) ................................................................................... 24

*Fischkoff v. Iovance Biotherapeutics, Inc.*,
  339 F. Supp. 3d 408 (S.D.N.Y. 2018) .................................................................... 18

*Galerie Furstenberg v. Coffaro*,
  697 F. Supp. 1282 (S.D.N.Y. 1988) ....................................................................... 20

*GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless, USA, LLC*,
  140 S. Ct. 1637, 1643-44 (2020) ............................................................................ 8

*Hartford Accident & Indem. Co. v. Swiss Reins. Am. Corp.*,
  246 F. 3d 219 (2d Cir. 2001) .................................................................................. 5

*Huang v. Shanghai City Corp.*,
2020 WL 2319166 (S.D.N.Y. May 11, 2020) ........................................................................ 11

*In re Platinum Beechwood-Litigation*,
427 F. Supp. 3d 395 (S.D.N.Y. 2019) .................................................................................. 17

*Jian Ping Lin v. Monda Window & Door Sys. Inc.*,
2018 WL 4403384 (E.D.N.Y. Aug. 7, 2018) ........................................................................ 21

*Johnson v. JPMorgan Chase Bank, N.A.*,
488 F. Supp. 3d 144 (S.D.N.Y. 2020) .................................................................................. 20

*Laboy v. Office Equipment & Supply Corp.*,
2016 WL 5462976 (E.D.N.Y. Sept. 29, 2016) ...................................................................... 24

*Lebowitz v. Dow Jones and Co.*,
847 F. Supp. 2d 599 (S.D.N.Y. 2021) .................................................................................. 19

*Lehigh Val. Indus., Inc. v. Birenbaum*,
527 F.2d 87 (2d Cir. 1975) ..................................................................................................... 9

*Levy v. Maggiore*,
48 F. Supp. 3d 428 (E.D.N.Y. 2014) .................................................................................... 15

*Litvinov v. United Health Group, Inc.*,
2014 U.S. Dist. LEXIS 36237 at (S.D.N.Y. Mar. 11, 2014) .................................................. 8

*Lundy v. Catholic Health Sys. of Long Island Inc.*,
711 F.3d 106 (2d Cir. 2013) ................................................................................................. 10

*Lynch v. City of New York*,
952 F.3d 67 (2d Cir. 2020) ................................................................................................... 10

*Mandarin Trading Ltd. v. Wildenstein*,
16 N.Y. 3d 173, 919 N.Y.S.2d 465 (2011) ........................................................................... 16

*Maurizio v. Goldsmith*,
230 F.3d 518 (2d Cir. 2000) ................................................................................................. 20

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ........................................................................................... 4

*O'Neill v. Mermaid Touring Inc.*,
    968 F. Supp. 572 (S.D.N.Y. 2013) ................................................................ 21

*Pachter v. Bernard Hodes Group, Inc.*,
    541 F.3d 461 (2d Cir. 2008) ......................................................................... 22

*Patane v. Clark*,
    508 F.3d 106 (2d Cir. 2007) ......................................................................... 10

*Perry v. Thomas*,
    482 U.S. 483 (1987) ......................................................................................... 4

*Polar Int'l Brokerage Corp. v. Reeve*,
    108 F. Supp 2d 225 (S.D.N.Y. 2000) ........................................................... 13

Preston v. Martin Bregman Prods. Inc.,
    765 F. Supp. 116 (S.D.N.Y. 1991) ............................................................... 18

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) ......................................................................................... 6

*Reis, Inc. v. Spring11 LLC*,
    2016 WL 5390896 (S.D.N.Y. Sept. 26, 2016) ............................................. 18

*Rivas v. Hershey Co.*,
    2020 WL 4287272 (E.D.N.Y. July 27, 2020) .............................................. 19

*Rodriguez v. Carrot Exp. Midtown LLC*,
    2019 WL 7293360 (S.D. Fla. Dec. 30, 2019) .............................................. 11

*Rodriguez v. KGA Inc.*,
    155 A.D.3d 452 (1st Dept. 2017) .................................................................. 21

*Rodriguez-DePena v. Parts Authority, Inc.*,
    877 F.3d 122 (2d Cir. 2017) ........................................................................... 8

*Schatz v. Cellco Partnership*,
842 F. Supp. 2d 594 (S.D.N.Y. 2012) ........................................................... 7

*Scherk v. Alberto-Culver Co.*, 4
17 U.S. 506 (1974) ......................................................................................... 4

*Securitron Magnalock Corp. v. Schnabolk*,
65 F.3d 256 (2d Cir. 1995) ........................................................................... 20

*Siegel v. Milstein*,
2021 WL 5052748 (E.D.N.Y. Nov. 1, 2021) ................................................. 5

*Sosnowy v. A. Perri Farms, Inc.*,
764 F. Supp. 2d 457 (E.D.N.Y. 2011) .......................................................... 23

*State St. Global Advisors Trust Co. v. Visbal*,
431 F. Supp. 3d 322 (S.D.N.Y. 2020) .......................................................... 15

*Tackie v. Keff Enterprises LLC*,
2014 WL 4626229 (S.D.N.Y. Sept. 16, 2014) .............................................. 25

*Thyroff v. Nationwide Mut. Ins. Co.*,
460 F.3d 400 (2d Cir.) .................................................................................. 18

*Torres v. United Healthcare Servs.*,
920 F. Supp. 2d 368 (E.D.N.Y. 2013) ............................................................ 8

*Vasile v. Dean Witter Reynolds*,
20 F. Supp. 2d 465 (E.D.N.Y. 1998) ............................................................ 12

*Vibe Micro Inc. v. Shabanets*,
2018 WL 268849 (11th Cir. Jan. 3, 2018) .................................................... 11

*Wall v. CSX Trans., Inc.*,
471 F.3d 410 (2d Cir. 2006) ......................................................................... 15

*Wego Chem. & Mineral Corp. v. Magnablend Inc.*,
945 F. Supp. 2d 377 (E.D.N.Y. 2013) ............................................................ 9

*Woods v. Maytag Co.*,
    2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010) ........................................................... 20

**STATUTES**

29 CFR § 541.303(a) ........................................................................................................... 24

CPLR § 302(a) ...................................................................................................................... 9

Federal Arbitration Act, 9 U.S.C. §§ 1-16 .......................................................................... 4

NYCRR § 142-2.14 ............................................................................................................ 23

NYCRR § 142-2.4 .............................................................................................................. 23

NYLL § 193 ........................................................................................................................ 22

## I.   PRELIMINARY STATEMENT

Plaintiff Kevin J. Meehan ("Meehan" or "Plaintiff") is a teacher who contracted with defendant VIPKid HK Ltd.[1] as an independent contractor to teach English to students in China. Meehan taught English remotely from various locations which, he alleges, included Nassau County in New York State.  (FAC ¶ 13)   Between 2016 and 2020, Meehan signed a series of Independent Contractor Agreements ("ICA") with VIPKid HK allowing him to provide his teaching services via the VIPKID platform.  The ICA requires that Meehan resolve disputes through final and binding arbitration on an individual basis.[2]

In July 2020, Meehan from his home in Thailand, filed a demand for arbitration with JAMS in New York, claiming wrongful termination of his services and other mistreatment. Meehan and VIPKid HK jointly selected Caroline Antonacci to serve as the arbitrator and she issued a Preliminary Order finding that "[t]here are no issues as to the arbitrability of this dispute" and directing Meehan to "provide a more definite Statement of Claims or an amended Demand for Arbitration specifying his claims, the alleged legal violations and governing law, and his damages."[3]  Meehan neither sought to vacate the Arbitrator's Order nor did he comply with its directives.  Instead, Meehan commenced this action in New York State Supreme Court purporting to assert ten claims against twelve defendants who he linked through a conspiracy

---

[1]  To avoid confusion, Defendants will adopt the definitions Plaintiff uses in his First Amended Complaint ("FAC"), *i.e.*, VIP HK Ltd. will be referred to as VIPKid HK;"  VIP KID International Inc. as VIPKid Int'l;" Beijing Dami Technology Co. as "BDT;" and Beijing Dami Future Technology Co., Ltd. as "BDFT."  Collectively, these defendants will be referred to as "Dami Defendants."  (See FAC ¶¶ 53-61).

[2]  Meehan's most recent ICA is attached as Exhibit A.  The ICA was annexed to Plaintiff's original complaint and is incorporated by reference in the FAC. (FAC ¶ 120)

[3] Meehan's demand for arbitration is annexed as Exhibit B and Arbitrator Antonacci's Order is annexed as Exhibit C.  On a motion to dismiss and/or compel arbitration, the Court may take notice of public filings and documents integral to the complaint.  *Cortec Indus. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991).

theory involving the theft of his persona to build a robot-army of teachers.  After removing the action to federal court, Defendant sought leave to move to dismiss and/or compel arbitration.  In response, Plaintiff sought to remand or amend the complaint, and this Court granted the later request.

Plaintiff's First Amended Complaint ("FAC"), while shorter than the original, does nothing to correct the deficiencies in his initial pleading.   Dismissal is still warranted because (i) Meehan must arbitrate his disputes with the Dami Defendants; (ii) the Court lacks personal jurisdiction over some or all of the Dami Defendants; (iii) the FAC fails to state claims on which relief can be granted against the Dami Defendants.

## II.    RELEVANT FACTS

### A.  DAMI Defendants Operations

VIPKid HK is a Hong Kong corporation with its principal place of business in Hong Kong; VIPKid Int'l is a Delaware corporation with its principal place of business in California; BDT and BDFT are Chinese corporations with principal places of business in China.  VIPKid HK provides an internet platform enabling American teachers to connect remotely with students in China to provide English language instruction.  Meehan and VIPKid HK were parties to an independent contractor agreement.  Although the FAC artfully omits mentioning the ICA, the initial complaint contained two of the ICA's as exhibits and extensive allegations (Cplt. ¶¶ 319-376) about why the arbitration provisions supposedly were unenforceable.   However, that complaint admitted that Meehan's services were provided under the ICA agreements.  (See Cplt. ¶ 231 ("In the course of almost four years, Plaintiff's work was allegedly attached to at least six documents purportedly executed between Plaintiff and VIPKID – each with a duration of six months."))

**B.  Meehan Agreed to Arbitrate His Disputes**

Meehan's ICA (Ex. A) contains an arbitration procedure for resolving most every type of dispute

that might arise out his with the Dami Defendants or his teaching services.  The ICA provided in

relevant part, as follows:

> ARBITRATION OF CLAIMS:  In the event of a dispute between the parties, the parties agree to resolve the dispute as described in this Section (the "Arbitration Provision") … This Arbitration Provision applies to any past, existing or future claim, regardless of the date of its accrual, brought by either TEACHER or VIPKID, arising out of or related to this Agreement, TEACHER's relationship with VIPKID, including without limitation, TEACHER's classification as an independent contractor or termination of the relationship with VIPKID, and TEACHER's provision of services to Students, whether arising under federal, state or local law. …**THIS ARBITRATION PROVISION REQUIRES ALL SUCH DISPUTES TO BE RESOLVED ONLY BY AN ARBITRATOR THROUGH FINAL AND BINDING ARBITRATION ON AN INDIVIDUAL BASIS, AND NOT BY WAY OF COURT OR JURY TRIAL, OR BY WAY OF CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION.**
>
> i. Claims Covered by Arbitration Provision. Unless carved out below, claims involving the following disputes shall be subject to arbitration under this Arbitration Provision regardless of whether brought by TEACHER, VIPKID or any agent acting on behalf of either: (1) disputes arising out of or related to this Agreement; (2) disputes arising out of or related to TEACHER's relationship with VIPKID, including without limitation, disputes concerning TEACHER's classification as an independent contractor, or termination of the relationship with VIPKID; [and] (3) TEACHER's provision of services to Students …   This Arbitration Provision also applies, without limitation, to disputes regarding any city, county, state or federal wage-hour law, trade secrets, unfair competition, compensation, meal or rest periods, expense reimbursement … claims arising under the … Fair Labor Standards Act … False Claims Act, and state or local statutes or regulations addressing the same or similar subject matters, and all other federal, state, and/or local statutory and legal or common law claims (including, without limitation, torts) arising out of or relating to this Agreement, TEACHER's relationship with VIPKID … and TEACHER's provision of services to Students.

(ICA ¶ 13(A)(emphasis in original))

### C. Plaintiff's Allegations

On December 3, 2021, Plaintiff filed the FAC alleging that he was falsely classified as an independent contractor (FAC ¶ 14), fraudulently induced to work as a Teacher (FAC ¶ 119, First Cause of Action); defrauded into continuing as a VIPKID Teacher through the creation of a cult-like atmosphere (FAC ¶ 146, Second Cause of Action); had his biometric data harvested while working as a VIPKID Teacher (FAC Third and Fourth Causes of Action); and was not paid in compliance with New York Labor Law ("NYLL")(FAC Fifth Cause of Action) or the Fair Labor Standards Act ("FLSA")(FAC, Sixth Cause of Action).   Each of these causes of action must be resolved by individual arbitration and not through Court litigation on a class or collective basis.

### III.     LEGAL ARGUMENT

### THE COURT LACKS SUBJECT MATTER JURISDICTION
### BECAUSE PLAINTIFF CONTRACTED TO ARBITRATE HIS CLAIMS

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), declares a liberal policy favoring the enforcement of arbitration agreements. *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011). It is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). To this end, the FAA not only placed arbitration agreements on equal footing with other contracts, but amounts to a "congressional declaration of a liberal federal policy favoring arbitration agreements." *Perry v. Thomas,* 482 U.S. 483, 489 (1987). The arbitration provision in the ICA is governed by the FAA. (ICA ¶ 13(A))

FAA § 4 "directs a federal court to order parties to proceed to arbitration if there has been a failure, neglect, or refusal of any party to honor an agreement to arbitrate." *Scherk v. Alberto-Culver Co*., 417 U.S. 506, 511 (1974) (internal citations omitted.)   Whether a dispute should be arbitrated depends on two questions: (1) whether there exists a valid agreement to arbitrate at

all under the contract in question ... and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement. *Hartford Accident & Indem. Co. v. Swiss Reins. Am. Corp.,* 246 F. 3d 219, 226 (2d Cir. 2001); *Siegel v. Milstein*, 2021 WL 5052748 at * 2 (E.D.N.Y. Nov. 1, 2021). Both elements of the test are satisfied here.

## A.  Meehan Agreed to Arbitrate Disputes on an Individual Basis

Plaintiffs' claims must be referred to individual arbitration because the parties clearly and unambiguously agreed that individual arbitration would be the exclusive mechanism for resolving their dispute.  The arbitration provision expressly provides in capitalized bold letters:

> **THIS ARBITRATION PROVISION REQUIRES ALL SUCH DISPUTES TO BE RESOLVED ONLY BY AN ARBITRATOR THROUGH FINAL AND BINDING ARBITRATION ON AN INDIVIDUAL BASIS, AND NOT BY WAY OF COURT OR JURY TRIAL, OR BY WAY OF CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION.**

## B.  Meehan's Claims Fall Within the Scope of the Arbitration Provision

With respect to the second element, the parties agreed that an arbitrator would decide whether the arbitration provision applied to a given dispute:

> Unless carved out below, claims involving the following disputes shall be subject to arbitration under this Arbitration Provision…: disputes arising out of or relating to the interpretation or application of this Arbitration Provision, including the validity, enforceability, revocability, conscionability, scope, or breach of the Arbitration Provision, or any portion of the Arbitration Provision.

Thus, the arbitrator, not the Court, should decide whether particular claims fall within the scope of the arbitration provision. *Contec Corp. v. Remote Sol. Co. Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005)(where "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.")   In fact, Arbitrator Antonacci had begun the process of examining Meehan's claims until he sabotaged the process by ignoring her Order.

Even if the Court were presented with the issue, Meehan's claims all fall squarely within the scope of the Arbitration Provision. The provision provides, in relevant part, that the following disputes shall be subject to arbitration:

> (1) disputes arising out of or related to this Agreement; (2) disputes arising out of or related to TEACHER's relationship with VIPKID, including without limitation, disputes concerning TEACHER's classification as an independent contractor, or termination of the relationship with VIPKID; [and] (3) TEACHER's provision of services to Students … This Arbitration Provision also applies, without limitation, to disputes regarding any city, county, state or federal wage-hour law, trade secrets, unfair competition, compensation, meal or rest periods, expense reimbursement … claims arising under the … Fair Labor Standards Act … False Claims Act, and state or local statutes or regulations addressing the same or similar subject matters, and all other federal, state, and/or local statutory and legal or common law claims (including, without limitation, torts) arising out of or relating to this Agreement, TEACHER's relationship with VIPKID, including without limitation, disputes concerning TEACHER's classification as an independent contractor, or termination of that relationship, and TEACHER's provision of services to Students.

Meehan's First Cause of Action alleges that he was "fraudulently induced" to work as a VIPKID Teacher.  This is a dispute "arising out of or related to TEACHER's relationship with VIPKID." Plaintiff's conclusory allegation that "misrepresentations and omissions of fact … were collateral to the purported agreements that VIPKid Teachers signed with VIPKid" (FAC ¶ 120), does not change the nature of the claim or take it outside the broad arbitration clause.  *See, e.g.*, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 406 (1967)(arbitration clause encompassing "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof" is 'easily broad enough to encompass Prima Paint's claim that both execution and acceleration of the consulting agreement itself were procured by fraud");  *Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 63 (2d Cir. 2005)(claim that plaintiffs were duped into participating in defendants financial scheme is arbitrable); *Dowe v. Leeds Brown Law*, 419 F. Supp. 3d 748 (SDNY 2019)("claims of  fraud  in the inducement of the contract generally are for

arbitrators to decide").   Likewise, Plaintiffs Second Cause of Action asserting that he was defrauded into remaining as a VIPKID Teacher through the creation of a cult-like atmosphere is a claim "arising out of or related to TEACHER's relationship with VIPKID."

Plaintiff's Third and Fourth Causes of Action assert that he had his biometric data harvested while working as a VIPKID Teacher in violation of the common law of conversion and/or New York General Business Law §§ 349-350.  These claims are within the arbitration provision which expressly covers "all federal, state, and/or local statutory and legal or common law claims (including, without limitation, torts) arising out of … TEACHER's relationship with VIPKID."  *See, e.g., Cho v. JS Autoworld 1 Ltd.*, 97 F. Supp. 3d 351, 357 (E.D.N.Y. 2015)(Automobile buyer's claims that seller misrepresented price of automobile, which constituted fraud, and violations of New York General Business Law were subject to arbitration where agreement stated it encompassed any claim, whether in contract, tort, statute or otherwise.); *Feld v. Postmates, Inc.,* 442 F. Supp. 3d 825, 833 (S.D.N.Y. 2020)(putative class action alleging violation of New York General Business Law § 349 subject to individual arbitration);   *Schatz v. Cellco Partnership*, 842 F. Supp. 2d 594, 608-09 (S.D.N.Y. 2012)(Consumer's claims for deceptive acts or practices under New York General Business Law § 349 and unjust enrichment fell within scope of arbitration agreement covering disputes arising out of or related to the terms of use of platform);  *Alexander v. Chesapeake Appalachia, LLC,* 839 F. Supp. 2d 544, 553 (N.D.N.Y. 2012)(Claims for violation of General Business Law § 349 and claim for conversion fall within broad arbitration clause).

Finally, Plaintiff's Fifth and Sixth claims, alleging violations of state and federal wage laws, are encompassed by the arbitration provisions coverage of "claims arising under the … Fair Labor Standards Act … and state or local statutes or regulations addressing the same or

similar subject matters" as well as to "disputes concerning TEACHER's classification as an independent contractor."

In short and in sum, Meehan's ICA contains an arbitration provision that encompasses each of the claims he asserts in his FAC. Courts in the Second Circuit consistently dismiss claims that are subject to an arbitration agreement. *See, e.g.*, *Torres v. United Healthcare Servs*., 920 F. Supp. 2d 368, 379 (E.D.N.Y. 2013) ("defendants' motion to compel arbitration is granted and the case is dismissed"); *Litvinov v. United Health Group, Inc.,* 2014 U.S. Dist. LEXIS 36237 at *12 (S.D.N.Y. Mar. 11, 2014) (compelling arbitration and dismissing the complaint).  Thus, Meehan's action against the VIPKid HK should be dismissed and he should be required to resume the arbitration he commenced at JAMS.

## C.  Plaintiff Must Arbitrate His Claims Against All Dami Defendants

Just as Plaintiffs' claims against VIPKid HK should be dismissed (and ordered to individual arbitration), the claims should also be dismissed against the other Dami Defendants. The Arbitration Provision specifically applies to disputes between Meehan "and VIPKid HK's affiliates, including but not limited to VIPKIDS International, Inc."  The FAC alleges that BDT and BDFT are entities affiliated with VIPKID.   (FAC ¶¶ 54-61).   Thus, all of the Dami Defendants are covered by the arbitration clause. *See GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless, USA, LLC*, 140 S. Ct. 1637, 1643-44 (2020) (*"*we have recognized that arbitration agreements may be enforced by non-signatories through … third party beneficiary theories"*); Rodriguez-DePena v. Parts Authority, Inc.*, 877 F.3d 122, 124 (2d Cir. 2017) (compelling arbitration of claims against non-signatory customer because "Appellant's dispute with the non-signatories was factually intertwined with his dispute with [signatory]").

## THE COURT LACKS PERSONAL
## JURISDICTION OVER THE DAMI DEFENDANTS

Dismissal is warranted under Rule 12(b)(2) of the Federal Rules of Civil Procedure because the Dami Defendants are not subject to the personal jurisdiction in New York.  On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, Plaintiff "bears the burden of establishing that the court has jurisdiction over the defendant."  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir 1999); *Wego Chem. & Mineral Corp. v. Magnablend Inc*., 945 F. Supp. 2d 377, 381 (E.D.N.Y. 2013).   Plaintiff acknowledges that Dami Defendants are non-domiciliaries of New York and purports to assert personal jurisdiction pursuant to New York's long-arm statute, CPLR § 302(a) (FAC ¶ 62)   However, the FAC does not identify which subsection of the long-arm statute Plaintiff applies to the Defendants in this case.  Instead, the Defendants, and the Court, are asked to speculate which "activities conducted in the name of 'VIPKid' in New York State … satisfy requirements for jurisdiction."  (FAC ¶ 62) It is not enough for Plaintiff simply to claim that all defendants "jointly and severally" "lobb[y] New York State to advance interests of all defendants" (FAC ¶ 66), or that Dami Defendant apps may be downloaded and accessed from New York (FAC ¶ 72).  *See Lehigh Val. Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93 (2d Cir. 1975) (affirming a motion to dismiss where the plaintiff failed to allege specific facts connecting the defendant with any New York activity).

Plaintiff alleges that BDT owns trademarks used by Dami Defendant, owns a website and owns apps on the Apple App Store, and that BDFT owns patents for technology used on the VIPKid Platform. (FAC ¶ 54, 58)    But the claims Plaintiff assert do not arise out the acts of owning patents or technology.   Therefore, these "facts" are not relevant to the issue of personal jurisdiction.  Plaintiff's fraud claims arise out web-site statements and other publicity he claims to have read, but there is no allegation that those statements were made in New York or even that

he read them while in New York.  At best, Plaintiff might establish jurisdiction over VIPKid HK, the entity with which he contracted and which compensated him for his services.  That would pressume, however, that Plaintiff was in New York when he entered into the ICA and/or performed services from a location in New York, questions subject to future discovery.  Nevertheless, personal jurisdiction over VIPKid HK would not extend personal jurisdiction to as VIPKid Int'l, BDT or BDFT.

## THE COMPLAINT FAILS TO STATE A
## CLAIM ON WHICH RELIEF MAY BE GRANTED

A motion to dismiss for failure to state a claim under FRCP 12(b)(6) is meant to test the legal sufficiency of the plaintiff's claims for relief.  *Patane v. Clark*, 508 F.3d 106, 116 (2d Cir. 2007).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Lundy v. Catholic Health Sys. of Long Island Inc.,* 711 F.3d 106, 113 (2d Cir. 2013).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Where the well-pleaded facts in a complaint do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not shown, that the pleader is entitled to relief, warranting grant of a motion to dismiss for failure to state a claim.  *Lynch v. City of New York¸* 952 F.3d 67, 74 (2d Cir. 2020).

### A.  The FAC Is an Improper Shotgun Pleading

"The failure to identify claims with sufficient clarity to enable a defendant to frame a responsive pleading constitutes a 'shotgun pleading' that violates Rule 8(a)(2)" and compels dismissal under Rule 12(b)(6).  *Rodriguez v. Carrot Exp. Midtown LLC,* 2019 WL 7293360

(S.D. Fla. Dec. 30, 2019); *accord Attanasio v. Comm. Health Sys., Inc.,* 2011 WL 5008363, at *6

(M.D. Pa. Oct. 20, 2011) ("In failing to articulate any details of the arrangement between the

Plaintiffs and Defendants, the Court cannot resolve any quantum of plausibility from the

Plaintiff's claims.  Moreover, the Court notes that this is not only necessary as a legal matter, but

as a practical concern as well where the Plaintiffs are seeking to represent a broad class with

notice to be distributed.").

The SAC alleges that "Plaintiff was employed by VIPKID" (FAC ¶ 13), but it does not

distinguish one VIPKID entity from another, much less from the unrelated "Mastermind

Defendants." In fact, the SAC is virtually silent as to how any entity, other than VIPHK Ltd., had

any interaction with Plaintiff at all.  Plaintiff also fail to differentiate the defendants in a host of

general allegations untethered to any particular defendant but labelled the VIPKid Scheme.

General allegations like these are not enough to state a plausible claim.  *See Vibe Micro Inc. v.

Shabanets*, 2018 WL 268849 (11th Cir. Jan. 3, 2018)(dismissing complaint asserting multiple

claims against multiple defendants alleging plaintiff was the victim of a scheme to force him off

the board of a bill-payment terminal company); *Huang v. Shanghai City Corp.*, 2020 WL

2319166, at *4-10 (S.D.N.Y. May 11, 2020) ("Plaintiffs fail to plead sufficient factual content

that the Chinatown Defendants meet this definition of employer as to Plaintiffs to cross 'the line

between possibility and plausibility of entitlement to relief.")  As the Court in *Barmapov v.

Amuial,* 986 F.3d. 1321, 1324-25  (11th Cir. 2021), recently put it:

> Shotgun pleadings are flatly forbidden by the spirit, if not the letter, of these rules
> because they are calculated to confuse the enemy, and the court, so that theories
> for relief not provided by law and which can prejudice an opponent's case,
> especially before the jury, can be masked.  Besides violating the rules, shotgun
> pleadings also waste scarce judicial resources, inexorably broaden the scope of
> discovery, wreak havoc on appellate court dockets, and undermine the public's
> respect for the courts.  We have little tolerance for them.

For these reasons alone, this Court should dismiss the FAC.  However, closer review of each of the causes of action demonstrates why they fail to state a claim.

**B.  The FAC Fails to State Fraud Claims**

Plaintiff asserts two causes of action sounding in fraud—fraud in the inducement and common law fraud—against all Defendants based upon their alleged collective involvement in "the VIPKid Fraudulent Scheme."  (*See,* FAC ¶¶ 75-107.)  Plaintiff's duplicative and group-pled fraud allegations should be dismissed because Plaintiff fails to meet the heightened pleading standards of Rule 9(b), and fails to allege the necessary elements to sustain his claims.

**1.  Plaintiff's Group-Pled Allegations Fail to Satisfy Rule 9's Specificity Requirement**

Federal Rule of Civil Procedure 9(b) "requires that the circumstances constituting fraud be stated with particularity." *Vasile v. Dean Witter Reynolds*, 20 F. Supp. 2d 465, 482 (E.D.N.Y. 1998).  The complaint must "'(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 186-87 (2d Cir. 2004) (citation omitted).  Neither fraud count meets this exacting standard.

First, Plaintiff fails to identify the exact statements or omissions he purports to be fraudulent.  Rather, Plaintiff merely offers broad and conclusory allegations of a "VIPKid Scheme" without detailing what this purported "scheme" is.  (*E.g.*, FAC ¶ 123 ("the VIPKid Scheme materially misrepresented the work and lifestyle of VIPKid Teachers"); ¶ 124 ("VIPKid Scheme was designed to falsely present VIPKid as a vibrant and active community of teachers building stable economic and professional lives"); ¶ 151 ("VIPKid Scheme deliberately and falsely presented becoming a VIPKid Teacher as a highly exclusive, rigorous, and selective

process, to make VIPKid Teachers feel uniquely chosen"))  Plaintiff never identifies a particular statement or omission that is connected to these generalized allegations of fraud.  While Plaintiff recites a number of purported statements included on "VIPKid's English-language Website" "[b]y means of illustration," (FAC ¶ 125), he does not say which, or how many, of these statements are supposedly fraudulent or which, if any, defendant is implicated by such statements. *Alnwick v. European Micro Holding*s, *Inc.*, 281 F. Supp. 2d 629, 640 (E.D.N.Y. 2003)(dismissing fraudulent inducement claim where plaintiff "lumps" several defendants together and "fails to specify what each defendant said").

Second, Plaintiff never identifies a particular speaker or Defendant who perpetrated the fraud.  In so doing, Plaintiff fails to advise each Defendant he has grouped together of the exact misconduct with which it is charged.  Rather, Plaintiff groups *all* Defendants into the "VIPKid Scheme" and collectively asserts that each Defendant has played a role in advancing said nefarious scheme, but beyond that does not state how each such Defendant may have contributed to the scheme.  (*See, e.g.*, FAC ¶ 80 ("*Each Defendant* has contributed to the design, development, and/or maintenance of the VIPKid Platform and each has centered into one or more agreements related to the Platform"); *see also, e.g.*, FAC ¶¶ 126-127, ¶¶ 144-145) Nowhere in Plaintiff's generalized description of this fraudulent "scheme," may one find a specific allegation as to how any Defendant allegedly carried out, communicated, or directed any of the representations that allegedly give rise to Plaintiff's fraud claims.  Nor does Plaintiff specify what role each Defendant played in establishing the essential elements of fraud.  This type of group pleading, devoid of any specificity, cannot survive in light of Rule 9(b).  *See, e.g.*, *Polar Int'l Brokerage Corp. v. Reeve*, 108 F. Supp 2d 225, 237 (S.D.N.Y. 2000) (the

requirements of Rule 9(b) are "not satisfied by a complaint in which defendants are clumped together in vague allegations." (citation omitted)); *Alnwick*, 281 F. Supp. 2d at 640.

Third, Plaintiff fails to allege the date or dates of any alleged fraudulent statement.  In fact, Plaintiff does not include a single date, time, or instance in either of his fraud allegations.  Thus, Plaintiff cannot tie any alleged misrepresentation or omission to any specific instance.  *See, e.g.*, *Eaves v. Designs for Finance, Inc.*, 785 F. Supp. 2d 229, 248 (S.D.N.Y. 2011) (dismissing fraud claim where the plaintiffs failed to state when and where the representations were made).

Finally, Plaintiff fails to allege *why* any particular statement is fraudulent.  For example, Plaintiff highlights a purported assertion by "VIPKid co-founder Cindy Mi" that "VIPKid Teachers are very supportive of VIPKid and feel happy and proud to work under strictly regulated conditions, driven by spiritual encouragement."  (FAC ¶ 149)  Plaintiff claims that these types of assertions by VIPKid "paint[] a false sense of community to get VIPKid Teachers attached to VIPKid."  (FAC ¶ 153)  But such puffery is not a false statement of fact that could give rise to a claim of fraud.

In sum, both of Plaintiff's fraud counts fail to meet the requirements of Rule 9(b) because Plaintiff's allegations fail to give notice of the fraudulent statement, the speaker, when the statement was made, or why any given statement (or omission) is fraudulent.  Accordingly, both claims should be dismissed.

## C.  Plaintiff Fails to Plead Claims for Fraud and Fraud in the Inducement

Even if Plaintiff has somehow satisfied Rule 9(b) (which he has not), the FAC fails to state claims for fraud and fraud in the inducement.  To sustain a cause of action for fraud, Plaintiff must plead with specificity "(1) a material misrepresentation or omission of fact (2)

made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff."  *Levy v. Maggiore*, 48 F. Supp. 3d 428, 462 (E.D.N.Y. 2014) (citing *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006)).

A fraud in the inducement claim "has the same elements as a fraud claim, but allows a plaintiff to bring an action 'when the misrepresentation is collateral to the contract it induced.'" *Id.* (quoting *Wall v. CSX Trans., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006)).  A party alleging a fraudulent inducement claim under New York law must also "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *State St. Global Advisors Trust Co. v. Visbal*, 431 F. Supp. 3d 322, 352 (S.D.N.Y. 2020) (quoting *Bridgestone/Firestone v. Recovery Credit Servs.*, 98 F.3d 13, 20 (2d Cir. 1996)).

Here, Plaintiff does not allege material misrepresentations of fact.  While Plaintiff lists *some* statements allegedly made by unnamed Defendants, Plaintiff does not explain how any of the Defendants' alleged claims are false or are otherwise material.  Plaintiff also lists eleven purported statements from "VIPKid's English-language Website" and claims that "Defendants knowingly and variously repeated these and other false misrepresentations [*sic*] in public." (FAC ¶¶ 125, 126)   But, the supposed "misrepresentations" proffered benignly state things like, "Become a Teacher", "Join the Largest Global Teaching Community", "Teachers feel supported before, during and after class", "'Teach Every Child' and 'Enable Every Teacher'" and "Work

When and Where You Want."[4]   (FAC ¶ 125)   Other than his conclusory statement that these purported claims are false, Plaintiff wholly fails to explain *why* they are false.  This goes for other supposed claims made by "the Defendants," such as Plaintiff's assertion that "VIPKid's Website makes several claims about the prospects of achieving financial stability through work as a VIPKid Teacher…."  (FAC ¶ 147)   Plaintiff never attempts to refute these purported claims, explain how they are false, or, for example, demonstrate how VIPKid Teachers have no prospects of achieving financial stability.

Plaintiff also claims Defendants wrongfully omitted "that VIPKid Teacher personal data was being harvested and used for technological development," but that assertion equally fails legal scrutiny.  (FAC ¶ 143)    Fraudulent omission is "tantamount to an affirmative misrepresentation where a party to a transaction is duty-bound to disclose certain pertinent information."  *Callahan v. Callahan*, 127 A.D.2d 298, 514 N.Y.S.2d 819, 821 (3d Dep't 1987). The theory requires the plaintiff to plead that "one party has superior knowledge of information that is not readily available to the other party and the party possessing the superior knowledge knows that the second party is acting on the basis of mistaken knowledge."  *See Bank of Am. v. Bear Stearns Asset Mgmt.*, 969 F. Supp. 2d 339, 351 (S.D.N.Y. 2013).

In terms of scienter, "'Plaintiffs must allege facts that give rise to a strong inference of fraudulent intent,' which may be established 'either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Eternity Global*, 375 F.3d at 187.  Plaintiff fails to allege that any of the supposed representations (or omissions) were known by any Defendant to be false, or that any statement was made by any Defendant with an intent to

---

[4] Even if these claims were made, they are non-actionable "puffery."  *See Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y. 3d 173, 179, 919 N.Y.S.2d 465, 469 (2011).

deceive.  In fact, Plaintiff makes no effort to discuss knowledge, scienter, or intent at all.  Neither

does he articulate how each Defendant possessed the necessary intent to deceive.  *See In re*

*Platinum Beechwood-Litigation*, 427 F. Supp. 3d 395, 438 (S.D.N.Y. 2019) ("Group pleading

allows plaintiffs only to connect defendants to statements—it does not also transitively convey

scienter.").

Finally,[5] Plaintiff does not plead the additional elements necessary to support his

fraudulent inducement claim.  Plaintiff makes no mention of a legal duty owed by any Defendant

that is separate from any contractual duty.  Indeed, Plaintiff does not describe any underlying

contract in the first instance, let alone the terms of the contract, the date of its execution, or the

exact contracting parties involved.   In addition, Plaintiff does not specify a fraudulent

misrepresentation that is collateral to any contract.  And, while he mentions "special damages"

(FAC ¶ 121), he does not specify what those special damages are, but only repeats the

supposedly out-of-pocket costs that VIPKid teachers paid as a result of their employment.

(*Compare* FAC ¶ 140, *with* ¶¶ 159, 160)

In sum, Plaintiff's duplicative, generalized, and group-pled fraud allegations fail to allege

the necessary elements to sustain his claims, and, therefore, must be dismissed.

**D.  The FAC Fails to State a Claim for Conversion**

Plaintiff alleges Defendants "unlawfully interfered with and/or assumed ownership" over

his biometric and other personal data.  FAC ¶¶ 162-163.  Based on this limited and conclusory

allegation, Plaintiff asserts all Defendants are liable for common law conversion.  The FAC fails

to satisfy the basic requirements necessary to sustain this claim.

---

[5] Plaintiff's conclusory allegations as to reliance and damages fail to provide any factual support
for the claims (*see* FAC ¶¶ 139, 140, 149), and cannot support the substantive fraud claims pled
here.

"Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another **to the exclusion of the owner's rights**." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir.)(emphasis added).  To state a conversion claim, the complaint must allege, among other things, that "defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights.'"  *Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 981 F. Supp. 2d 153, 163 (E.D.N.Y. 2013).  Copying alone does not exclude the owner's rights and, therefore, does not constitute conversion.  *Fischkoff v. Iovance Biotherapeutics, Inc.*, 339 F. Supp. 3d 408, 415 (S.D.N.Y. 2018)(unauthorized copying of electronic files does not constitute conversion); *Reis, Inc. v. Spring11 LLC*, 2016 WL 5390896, at *1 (S.D.N.Y. Sept. 26, 2016)(same).

Plaintiff alleges that Defendants copied or used his biometric information, presumably his speech and facial patterns.  Assuming that was true, a claim for conversion cannot be based on his personal characteristics because Plaintiff was not prevented from also using that data. *Preston v. Martin Bregman Prods. Inc.,* 765 F. Supp. 116, 120 (S.D.N.Y. 1991), rejected a complaint where the plaintiff alleged conversion of his image.  The court explained:

> In New York, the right of privacy "which generally provides remedies for any commercialization of the individual's personality without his consent," is limited to the rights prescribed in the Civil Rights Law. *Stephano,* 485 N.Y.S.2d at 224, 474 N.E.2d at 584. *See also Pirone v. MacMillan, Inc.,* 894 F.2d 579, 585 (2d Cir.1990); *Freihofer v. Hearst Corp.,* 65 N.Y.2d 135, 490 N.Y.S.2d 735, 739, 480 N.E.2d 349, 353 (1985) ("We have in the past recognized that, in this State, there is no common-law right of privacy and the only available remedy is that created by Civil Rights Law §§ 50 and 51").
>
> Although plaintiff's claim is called one for conversion, it is in law a privacy claim, since it is based on the commercial use of plaintiff's image without her consent. It does not exist, other than under the Civil Rights Law.

> Moreover, any intangible property right that plaintiff has in her image is incapable of being "converted" under New York law. *See Ippolito v. Lennon,* 150 A.D.2d 300, 542 N.Y.S.2d 3, 6 (1st Dep't 1989) (plaintiff has no property right in his concert performance that can be converted by showing film of that performance).

Like Preston's image used in the movie, Meehan's facial and speech patterns are incapable of being converted.  Therefore, the FAC fails to state a claim for conversion and the Third Cause of Action should be dismissed.

### E.  The FAC Fails to State a Claim for Violation of NY General Business Law

Plaintiff fails to allege the essential elements of his claims for violations of New York General Business Law ("GBL") Sections 349–350.   "A plaintiff is entitled to relief for a violation of GBL § 349, which prohibits deceptive business practices, if: (1) the act, practice, or advertisement was consumer-oriented; (2) the act, practice or advertisement was misleading in a material respect, and (3) the plaintiff was thereby injured."  *Rivas v. Hershey Co.*, 2020 WL 4287272 at *3 (E.D.N.Y. July 27, 2020) (internal citations omitted) (dismissing complaint with prejudice where plaintiff could not plausibly allege defendant's marketing was misleading to a reasonable consumer).  "Similarly, to establish a claim under GBL § 350, which prohibits false advertising, a plaintiff must demonstrate that the advertisement (1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury."  *Id.*  A Section 349 claim based on an omission survives only "where the business alone possesses material information that is relevant to the consumer and fails to provide this information." *Lebowitz v. Dow Jones and Co.*, 847 F. Supp. 2d 599, 605 (S.D.N.Y. 2021), *aff'd*, 508 Fed. App'x. 83, 85 (2d Cir. 2013) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26, 647 N.E.2d 741 (1995)).

"[S]ection 349 is directed at wrongs against the consuming public," and therefore "a threshold matter in § 349 cases is whether or not the act in question was consumer-oriented."

*Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 447 (S.D.N.Y. 2004) (quoting *Oswego*, 85 N.Y.2d at 24–25); *see also Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) ("It is clear that 'the gravamen of the complaint must be consumer injury or harm to the public interest.'"); *Bill's Birds Inc. v. Trademarketing Resources Inc.*, 920 F. Supp. 2d 357, 367–68 (E.D.N.Y. Jan. 31, 2013) (dismissing claim where plaintiffs failed to allege that challenged act or misrepresentation was consumer-oriented).

Here, Plaintiff provides no factual allegations to plead that any wrongful act by Defendants was consumer-oriented.  He does not allege that being a teacher and VIPKid employee made him a consumer, and he does not allege that any wrongful acts by Defendants have a broad impact on consumers at large.  *See Johnson v. JPMorgan Chase Bank, N.A.*, 488 F. Supp. 3d 144, 162 (S.D.N.Y. 2020) ("[T]he test is whether the acts or practices have a broader impact on consumers at large, where a consumer is one who purchases goods and services for personal, family or household use.").  Plaintiff includes just one bare legal conclusion to this point: "VIPKid has engaged in unlawful and deceptive consumer-oriented acts or practices in the conduct of its business."  *See* FAC ¶ 169.  This kind of conclusory allegation is plainly insufficient to state a claim under the GBL.  *Woods v. Maytag Co.*, 2010 WL 4314313, at *15 (E.D.N.Y. Nov. 2, 2010) ("[C]onclusory allegations have been held to be insufficient to state a claim under Section 349.").

This same analysis applies to Section 350, and so Plaintiff fails to meet the requirements of that claim as well.  *See Maurizio v. Goldsmith*, 230 F.3d 518, 522 (2d Cir. 2000); *Galerie Furstenberg v. Coffaro*, 697 F. Supp. 1282, 1291–92 (S.D.N.Y. 1988) (granting motion to dismiss Section 350 claim where plaintiff was not an injured consumer and did not allege injury to public at large).  With Plaintiff's inability to plead this threshold element, Plaintiff's GBL

Section 349 and Section 350 claims fail as a matter of law.

**F.   The FAC Fails to State a Claim for Violation of NYLL**

Meehan alleges that he was "employed by VIPKID, though falsely classified as an independent contractor" (FAC ¶ 14) and that he was "working remotely from various locations, including Nassau County.  (FAC ¶ 13)  The Fifth Cause of Action in the FAC purports to allege a violation of several New York wage laws, but the complaint does not allege when Plaintiff worked in New York and the NYLL does not apply to work performed outside of the New York State. *Jian Ping Lin v. Monda Window & Door Sys. Inc.,* 2018 WL 4403384 at * 4 (E.D.N.Y. Aug. 7, 2018)("Plaintiff cannot recover under NYLL for work performed entirely in another state."); *O'Neill v. Mermaid Touring Inc.*, 968 F. Supp. 572, 578 (S.D.N.Y. 2013) (New York Labor Law does not apply to work performed out of state regardless of plaintiff's domicile); *Rodriguez v. KGA Inc.*, 155 A.D.3d 452, 452-53 (1st Dept. 2017)(NYLL does not apply to work performed outside of New York).

Because the FAC does not: (i) identify any time when Meehan was working remotely from Nassau County, rather than working from other locations; (ii) allege the hours Meehan worked while in Nassau County; or (iii) state how much Meehan was paid for the work he performed while in Nassau County, it cannot plausibly be inferred from the allegations of the FAC that any defendant violated any provision of the NYLL.  Furthermore, even if NYLL was applicable to some or all of Meehan's work, and this Court was the proper forum to address those claims, there are additional deficiencies that require dismissal of the claims.

**1.   Off-the-clock work**

An "off-the-clock" claim is one seeking pay for time work performed for the benefit of the employer that is neither recorded nor compensated.  No off-the-clock claim exists where an

employee is paid for all hours worked either on a salary, commission, piece work, or any other basis that is not based on a unit of time, because the payment encompasses all time incurred. The FAC does not allege how, or how much, Meehan was paid for his services.  But the ICA states that he was to be paid on a per class taught basis, equivalent to a piece rate, which would include all time necessary to complete the task. (ICA ¶ 5(A))  Because Meehan was paid for his production rather than his time, he cannot state a claim for time he allegedly spent "off-the-clock" preparing for work.

### 2.  Unlawful Wage Deductions

Meehan alleges that for each class taught he was "required to submit reports" and was subject to a 100% deduction if he failed timely to do so, which he claims violates NYLL § 193. (FAC  ¶ 186)   This claim fails because Meehan did not earn any "wages" until unless and until he completed and submitted the required report.  (ICA Course A Addendum ¶ 1, 2 ('TEACHER shall be paid the following amounts in exchange for full and complete performance of each class"; "full performance also includes … (ii) completion and submission of 'Class Feedback' and/or 'Unit Assessment' materials").  New York wage deduction law does not apply until the wage is deemed earned, here after the submission of the required reports.   See, e.g. *Pachter v. Bernard Hodes Group, Inc.,* 541 F.3d 461, 463 (2d Cir. 2008)("neither section 193 nor any other provision of article 6 of the Labor Law prevented the parties in this case from structuring the compensation formula so that Pachter's commission would be deemed earned only after specific deductions were taken from her percentage of gross billings.")   Moreover, the FAC does not assert facts that plausibly establish any instance where an alleged deduction was made from wages Meehan earned in New York.   For that reason as well, the FAC fails to state a claim for unlawful wage deductions.

### 3. Spread of hours pay

New York's spread of hours requirement is contained in the wage regulations and only applies to "employees" as defined by the regulation.   NYCRR § 142-2.4    The definition of "employee" excludes individuals working in a professional capacity. NYCRR § 142-2.14 (c) (iii) ("Employee also does not include any individual permitted to work … in a bona fide professional capacity.")  Meehan is a teacher.[6]   Teachers are "professionals" within the meaning of the NYLL, and therefore are not "employees" covered by the wage order requiring spread of hours pay.    Furthermore, and in any event, spread of hours pay is only applicable to employees paid at or near the minimum wage.  *Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 474 (E.D.N.Y. 2011)("the explicit reference to the 'minimum wage' in section 142-2.4 indicates that the spread-of-hours provision is properly limited to enhancing the compensation of those receiving only the minimum required by law. … There is no allegation, nor facts from which the Court can infer, that the Plaintiff's rate of pay would entitle him to spread of hours payments under section 142-2.4.  Thus, the Court grants the Defendants motion to dismiss the spread of hours claim.")(internal citation omitted).  Since the FAC does not plausibly allege Meehan's effective hourly rate, the FAC does not assert a plausible claim for spread of hour pay.

### 4. Failure to Provide Paid Sick Leave

The FAC purports to assert a claim for failure to provide the paid sick leave required by New York Labor Law §196-b.   (FAC ¶ 193-94)   However, New York's paid sick leave law took effect in September 2020 and employees (even if Meehan had been one) were not eligible to begin using statutorily required sick leave until January 1, 2021.  Meehan ceased providing his

---

[6] According to his Linkedin page, Meehan has a Master's Degree in Educational/Instructional Technology from Thomas Edison State University.

services through VIPKID in June 2020.  (FAC ¶ 13)   Accordingly, was never entitled to paid sick leave and cannot state a claim for violation of NYLL paid sick leave requirement.

### 5.  Retaliation in Violation of NYLL § 215

"In order to state a claim under New York Labor Law Section 215, a plaintiff must adequately plead that while employed by the defendant, he or she made a complaint about the employer's violation of New York Labor Law and was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action as a result." *Laboy v. Office Equipment & Supply Corp.*, 2016 WL 5462976, *7 (E.D.N.Y. Sept. 29, 2016).   The FAC alleges the Meehan was employed from October 2016 to June 2020 (FAC ¶ 13), but it does not allege that he complained about a violation of the NYLL or that he was subjected to an adverse employment action.   Accordingly, the FAC fails to plead a plausible retaliation claim.

### G.  The FAC Fails to Allege an FLSA Violation

The FAC asserts that Meehan was a teacher contracted by VIPKID to instruct students in the English language.  (FAC ¶¶ 84-89; 123; 125(a))   These factual allegations confirm that Meehan qualifies as a teacher in an educational establishment exempt from the FLSA's minimum wage requirements. *See Fernandez v. Zoni Language Centers, Inc.*, 858 F.3d 45, 54 (2d Cir. 2017)(uncertified teachers paid per class to provide English language instruction to adults are bona fide professionals exempt from FLSA minimum wage requirements and cannot recover ).[7]   Furthermore, and in any event, to state a minimum wage claim under the FLSA, a plaintiff must allege facts about his pay and working hours "such that a simple arithmetical

---

[7]  The definition of "teacher" within the FLSA's professional exemption applies to an employee (1) with a primary duty of teaching, tutoring, instructing or lecturing in the activity of imparting knowledge," (2) "who is employed and engaged in this activity as a teacher in an educational establishment," 29 CFR § 541.303(a).  The regulations definition of "educational establishment" is open-ended and includes private companies in the business of providing English language classes to individuals who speak English as a second language.  *Id.*

calculation can be used to determine the amount owed per pay period." *Casci v. National Fin. Network, LLC*, 2015 WL 94229 at *4 (E.D.N.Y. Jan. 7, 2015) (quoting *Tackie v. Keff Enterprises LLC,* 2014 WL 4626229 (S.D.N.Y. Sept. 16, 2014)).  The FAC does not allege how many hours Meehan worked or much he was paid for that work.  Thus, Plaintiff's minimum wage claim should be dismissed.

## IV.    CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court direct that Plaintiff submit his claims against Defendants to arbitration.

Respectfully Submitted,

Dated: January 21, 2022                /s/ Andrew P. Marks_____
           Rye, New York

**DORF & NELSON LLP**
555 Theodore Fremd Avenue
Rye, New York 10580
914.381.7600
amarks@dorflaw.com
dwarner@dorflaw.com
*Attorneys for VIPKID HK Limited, VIPKid International, Inc., Beijing Dami Technology Co., Ltd.,Beijing Dami Future Technology Co., Ltd.*