**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

Kevin J. Meehan

                    Plaintiff,

          v.

VIPKID aka BEIJING DAMI TECHNOLOGY
CO., LTD., VIPKID HK LTD. aka VIPKID,
BEIJING DAMI FUTURE TECHNOLOGY CO.
LTD. aka VIPKID, TENCENT HOLDINGS LTD.
aka TENCENT, TENCENT AMERICA L.L.C. aka
TENCENT, TENCENT CLOUD L.L.C.,
SEQUOIA CAPITAL OPERATIONS L.L.C. aka
SEQUOIA CAPITAL, CHINA RENAISSANCE
HOLDINGS LTD. aka CHINA RENAISSANCE,
and VIPKID INTERNATIONAL, INC. aka
VIPKIDS INTERNATIONAL, INC. aka VIPKID,

                    Defendants.

Case No.: 2:20-cv-06370-JS-ARL

**MEMORANDUM OF LAW IN SUPPORT OF
CHINA RENAISSANCE HOLDINGS LTD.'S
MOTION TO DISMISS THE COMPLAINT**

**DLA PIPER LLP (US)**

Richard F. Hans
Neal F. Kronley
Thomas J. Alford
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500
richard.hans@us.dlapiper.com
neal.kronley@us.dlapiper.com
thomas.alford@us.dlapiper.com

*Counsel for Defendant
China Renaissance Holdings Ltd.*

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS .......................................................................................... 3

    A.    The Parties ................................................................................................. 3

    B.    Plaintiff's Allegations .............................................................................. 4

ARGUMENT ............................................................................................................... 5

I.    CHINA RENAISSANCE IS A FOREIGN CORPORATION LACKING "MINIMUM CONTACTS" WITH NEW YORK SUFFICIENT TO ESTABLISH PERONSAL JURISDICTION .................................................................... 5

    A.    Legal Standard .......................................................................................... 5

    B.    Plaintiff Alleges No Basis to Exercise Personal Jurisdiction over China Renaissance Consistent with New York's CPLR and Due Process ............................................... 6

        1.    China Renaissance is Not Subject to General Jurisdiction in New York ......... 6

        2.    Plaintiff Does Not Allege Any Ground for the Exercise of Specific Jurisdiction over China Renaissance under CPLR 302 ..................... 8

        3.    Exercising personal jurisdiction over China Renaissance would not comport with due process ................................................... 111

II.    THE AMENDED COMPLAINT'S NON-SPECIFIC AND CONCLUSORY ALLEGATIONS DO NOT STATE PLAUSIBLE CLAIMS FOR RELIEF ................. 133

    A.    Legal Standard ......................................................................................... 133

    B.    The Plaintiff Fails to Allege a Claim for Common Law Fraud and Fraud in the Inducement ................................................. 144

        1.    Plaintiff's Group-Pled Allegations Fail to Satisfy Rule 9's Specificity Requirement .............................................. 144

        2.    Plaintiff Fails to Plead Claims for Fraud and Fraud in the Inducement ........ 177

    C.    Plaintiff's Conversion Allegation Fails to State a Claim ........................ 20

    D.    Plaintiff Fails to Allege the Requisite Elements for a GBL §§ 349/350 Claim ......................................................................... 23

CONCLUSION ............................................................................................................ 25

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Al Rushaid v. Pictet & Cie*,
   28 N.Y.3d 316, 45 N.Y.S.3d 276 (2016) ...............................................................12

*AlbaniaBEG Ambient Sh.p.k. v. Enel S.p.A.*,
   160 A.D.3d 93, 73 N.Y.S.3d 1 (1st Dep't 2018) .....................................................7

*Alexander v. City of Syracuse*,
   2018 WL 6591426 (N.D.N.Y. Dec. 13, 2018)..........................................................2

*Alnwick v. European Micro Holdings, Inc.*,
   281 F. Supp. 2d 629 (E.D.N.Y. 2003) ...............................................................15, 16

*Aluminal Indus., Inc. v. Newtown Commercial Assocs.*,
   89 F.R.D. 326 (S.D.N.Y. 1980) ...............................................................................9

*Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders
   Ass'n, Inc.*,
   981 F. Supp. 2d 153 (E.D.N.Y. 2013) ...............................................................21, 23

*Am. Med. Distribs., Inc. v. Saturna Grp. Chartered Accountants, LLP*,
   2016 WL 3920224 (E.D.N.Y. July 15, 2016) .....................................................10, 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................7, 13, 14, 18

*Bank of Am., N.A. v. Bear Stearns Asset Mgmt.*,
   969 F. Supp. 2d 339 (S.D.N.Y. 2013)....................................................................19

*BCRS1, LLC, v. Unger*,
   2021 WL 3667094 (E.D.N.Y. Aug. 18, 2021)....................................................21, 22

*Bensusan Rest. Corp. v. King*,
   937 F. Supp. 295 (S.D.N.Y. 1996) .......................................................................12

*Bill's Birds Inc. v. Trademarketing Res. Inc.*,
   920 F. Supp. 2d 357 (E.D.N.Y. 2013) ...................................................................24

*Biondi v. Beekman Hill House Apartment Corp.*,
   257 A.D.2d 76, 692 N.Y.S.2d 304 (1st Dep't 1999),
   *aff'd*, 94 N.Y.2d 659, 709 N.Y.S.2d 861 (2000)........................................................7

*Blount v. Peerless Chemicals (P.R.) Inc.*,
    316 F.2d 695 (2d Cir. 1963)..........................................................12

*Brown v. Showtime Networks, Inc.*,
    394 F. Supp. 3d 418 (S.D.N.Y 2019)..........................................5

*Callahan v. Callahan*,
    127 A.D.2d 298, 514 N.Y.S.2d 819 (3d Dep't 1987) ...................18

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)...............................................................6, 7, 8

*Dish Network L.L.C. v. Kaczmarek*,
    2021 WL 4483470 (E.D.N.Y. Jun. 24, 2021) ...............................8

*DiStefano v. Carozzi North Am., Inc.*,
    286 F.3d 81 (2d Cir. 2001)..........................................................5

*Eaves v. Designs for Finance, Inc.*,
    785 F. Supp. 2d 229 (S.D.N.Y. 2011)........................................16

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*,
    375 F.3d 168 (2d Cir. 2004)..................................................15, 19

*Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*,
    328 F. Supp. 2d 443 (S.D.N.Y. 2004).......................................24

*Fantis Foods, Inc. v. Standard Importing Co.*,
    49 N.Y.2d 317, 425 N.Y.S.2d 783 (1980) ..................................10

*Fernandez v. DaimlerChrysler, A.G.*,
    143 A.D.3d 765, 40 N.Y.S.3d 128 (2d Dep't 2016) .....................6

*Fischkoff v. Iovance Biotherapeutics, Inc.*,
    339 F. Supp. 3d 408 (S.D.N.Y. 2018).......................................22

*Frummer v. Hilton Hotels Int'l, Inc.*,
    19 N.Y.2d 533, 281 N.Y.S.2d 41 (1967) ...................................12

*Galerie Furstenberg v. Coffaro*,
    697 F. Supp. 1282 (S.D.N.Y. 1988)...........................................24

*Ins. Co. of N. Am. v. EMCOR Grp., Inc.*,
    9 A.D.3d 319, 781 N.Y.S.2d 4 (1st Dep't 2004) .........................12

*Johnson v. JPMorgan Chase Bank, N.A.*,
    488 F. Supp. 3d 144 (S.D.N.Y. 2020).......................................24

*LaMarca v. Pak-Mor Mfg. Co.*,
    95 N.Y.2d 210, 713 N.Y.S.2d 304 (2000) ........................................................12

*Lebowitz v. Dow Jones & Co.*,
    847 F. Supp. 2d 599 (S.D.N.Y. 2021), *aff'd*, 508 F. App'x. 83 (2d Cir. 2013)......................23

*Lederer v. Newmatic Sound Sys., Inc.*,
    2013 WL 6835171 (E.D.N.Y. Dec. 20, 2013) (Seybert, J.).......................................5

*Levy v. Maggiore*,
    48 F. Supp. 3d 428 (E.D.N.Y. 2014) ..............................................................17

*Madison Capital Markets, LLC v. Starneth Europe B.V.*,
    2016 WL 4484251 (S.D.N.Y. Aug. 23, 2016) ....................................................13

*Mandarin Trading Ltd. v. Wildenstein*,
    16 N.Y.3d 173, 919 N.Y.S.2d 465 (2011) ........................................................18

*Maurizio v. Goldsmith*,
    230 F.3d 518 (2d Cir. 2000).........................................................................24

*Moreau v. RPM, Inc.*,
    20 A.D.3d 456, 799 N.Y.S.2d 113 (2005) ..........................................................9

*Nasso v. Seagal*,
    263 F. Supp. 2d 596 (E.D.N.Y. 2003) ...............................................................9

*O'Keefe v. Blue & Gold Fleet, L.P.*,
    634 F. Supp. 2d 284 (E.D.N.Y. 2009) .............................................................5, 8

*Pappas v. Arfaras*,
    712 F. Supp. 307 (E.D.N.Y. 1989) .................................................................8, 9

*In re Platinum-Beechwood Litig.*,
    427 F. Supp. 3d 395 (S.D.N.Y. 2019)...........................................................14, 19

*Plumbers' Union Local No. 12 Pension Fund v. Swiss Reinsurance Co.*,
    753 F. Supp. 2d 166 (S.D.N.Y. 2010)..............................................................13

*Polar Int'l Brokerage Corp. v. Reeve*,
    108 F. Supp. 2d 225 (S.D.N.Y. 2000)..............................................................16

*Pramer S.C.A. v. Abaplus Int'l Corp.*,
    76 A.D.3d 89, 907 N.Y.S.2d 154....................................................................9

*Reis, Inc. v. Spring11 LLC*,
    2016 WL 5390896 (S.D.N.Y. Sept. 26, 2016).................................................21, 22

iv

*Rivas v. Hershey Co.*,
   2020 WL 4287272 (E.D.N.Y. July 27, 2020) ........................................................................23

*Sandoval v. Abaco Club on Winding Bay*,
   507 F. Supp. 2d 312 (S.D.N.Y. 2007).................................................................................11

*Securitron Magnalock Corp. v. Schnabolk*,
   65 F.3d 256 (2d Cir. 1995)..................................................................................................24

*Skrodzki v. Marcello*,
   801 F. Supp. 2d 501 (E.D.N.Y. 2011) .................................................................................10

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
   750 F.3d 221 (2d Cir. 2014)..................................................................................................6

*SPV Osus Ltd. v. UBS AG*,
   882 F.3d 333 (2d Cir. 2018)...............................................................................................7, 8

*State St. Global Advisors Trust Co. v. Visbal*,
   431 F. Supp. 3d 322 (S.D.N.Y. 2020) .................................................................................17

*Thomas v. Ashcroft*,
   470 F.3d 491 (2d Cir. 2006).................................................................................................6

*Thyroff v. Nationwide Mut. Ins. Co.*,
   460 F.3d 400 (2d Cir. 2006)...............................................................................................20

*Universal Trading & Inv. Co. v. Credit Suisse (Guerney) Ltd.*,
   560 F. App'x 52 (2d Cir. 2014) .........................................................................................9, 10

*Vasile v. Dean Witter Reynolds Inc.*,
   20 F. Supp. 2d 465 (E.D.N.Y. 1998) (Seybert, J.) ..............................................................14

*Walden v. Fiore*,
   571 U.S. 277 (2014)...........................................................................................................12

*Woods v. Maytag Co.*,
   2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010) .......................................................................24

**Statutes**

Fair Labor Standards Act ...............................................................................................................5

GBL § 349................................................................................................................... *passim*

GBL § 350................................................................................................................... *passim*

New York Labor Law ...................................................................................................................5

**Other Authorities**

CPLR 301................................................................................................................6, 7

CPLR 302..................................................................................................6, 8, 9, 10, 11

Fed. R. Civ. P. 8........................................................................................................14

Fed. R. Civ. P. 9(b) ....................................................................................2, 14, 16, 17

Fed. R. Civ. P. 12(b) .......................................................................................1, 5

Defendant China Renaissance Holdings Ltd. ("China Renaissance"), submits this Memorandum of Law in support of its motion to dismiss Plaintiff Kevin J. Meehan's ("Plaintiff") First Amended Complaint ("FAC") for lack of personal jurisdiction, or, in the alternative, failure to state claims upon which relief can be granted, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). China Renaissance also incorporates by reference all applicable arguments raised by the other defendants ("Defendants") in support of their respective motions to dismiss.

## PRELIMINARY STATEMENT

This case must be dismissed. Plaintiff's FAC contains a hodgepodge of conclusory allegations, which are collectively levied against eight separate Defendants. Central to the FAC is what Plaintiff coins, "the VIPKid Scheme"—an elaborate but nebulous plan allegedly orchestrated among Defendant VIPKid and the other Defendants, which is purportedly designed to trick American teachers into working on the VIPKid teaching platform with promises of economic and professional fulfillment, only to have Defendants surreptitiously record and capture the teachers' facial movements and voices. According to Plaintiff, the ultimate purpose of this alleged scheme is to, in time, substitute "virtual humans" for these "natural human teachers" (via artificial intelligence), with the ultimate goal of granting Defendants a limitless supply of human capital.

China Renaissance is only peripherally mentioned in Plaintiff's FAC and in the "VIPKid Scheme"—namely, as VIPKid's "exclusive financial advisor" and "capital markets partner." China Renaissance is a foreign corporation based outside of the United States with no ties to Plaintiff. It has never employed Plaintiff, contracted with him, and is not alleged to have made *any* statement to Plaintiff, much less one that is false or fraudulent. Nonetheless, China Renaissance is lumped into four of Plaintiff's six causes of action, which allege fraud, fraudulent inducement, conversion, and violations of New York General Business Law ("GBL") Sections

1

349 and 350.  Plaintiff's group-pled allegations against China Renaissance fail for two independent reasons.

First, China Renaissance is not subject to personal jurisdiction in this Court.  The company is organized under the laws of the Cayman Islands, and it maintains its principal place of business in China and Hong Kong.  It has no employees in New York, is not registered to do business in New York, does not transact business in New York, and is not alleged to have any contacts with New York related to Plaintiff's claims.  Nor does China Renaissance have any discernable connection to Plaintiff.  Nowhere in Plaintiff's 201-paragraph FAC is there a single allegation that China Renaissance purposefully directed any activities at Plaintiff or the New York forum. Plaintiff's allegations are thus insufficient to subject China Renaissance to suit in this Court.

Second, even if Plaintiff has somehow established personal jurisdiction over China Renaissance (and it has not), Plaintiff fails to state any plausible claims for relief.  His group-pled claims of fraud, fraud in the inducement, conversion, and violations of New York GBL Sections 349 and 350 fail to allege the necessary elements to sustain those claims, much less meet the heightened pleading standards required by Rule 9(b).

At bottom, Plaintiff's FAC amounts to a "shotgun" pleading that throws several general, conclusory allegations at Defendants in the hope that one of those allegations sticks.[1]  This manner of pleading, perfunctorily directed at a foreign financial services provider with no actual or alleged connection to Plaintiff, cannot be sustained.  Accordingly, all claims against China Renaissance should be dismissed in their entirety, and with prejudice.

---

[1] A "shotgun pleading" is one that makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."  *Alexander v. City of Syracuse*, 2018 WL 6591426, at *3 (N.D.N.Y. Dec. 13, 2018) (quoting *Croons v. N.Y. State Office of Mental Health*, 18 F. Supp. 3d 193, 199 (N.D.N.Y. 2014)).

## STATEMENT OF FACTS

### A.    The Parties.

Plaintiff is "an American citizen, born and raised in Nassau County, New York and has remained a domiciliary of Nassau County and a citizen of New York State for his entire life." (FAC, ¶ 12.)  Plaintiff claims he was "employed by VIPKID from approximately October 2016 to June 2020" as a teacher and was allegedly "falsely classified as an independent contractor."  (*Id.* at ¶¶ 13, 14.)

The primary and first-named Defendant in this action is VIPKid.  (*See, e.g.*, FAC, ¶ 1; Dkt. No. 49 at 6 ("VIPKID is a New York citizen and *the* primary defendant in this action" (emphasis in original)).)    Several other Defendants are named, including VIPKid's affiliated entities ("VIPKid"),[2] Tencent Holdings Ltd. ("Tencent") and its affiliated entities, and Sequoia Capital Operations LLC ("Sequoia").

China Renaissance is also named as a Defendant, though it is only sparingly referenced throughout the 201-paragraph FAC.  (*See* ¶¶ 50-52, 71, 82.)  China Renaissance, founded in 2005, is a corporation organized under the laws of the Cayman Islands with its principal place of business in the People's Republic of China.  (*See* Declaration of Ming Cheung Lawrence Yee, dated January 21, 2022 ("Yee Decl."), ¶ 2.)  China Renaissance is a financial institution that provides private placement and mergers and acquisitions advisory services, equity underwriting, sales and trading, research, and investment management.  (*Id.* at ¶ 3.)  China Renaissance is not registered to do business in the State of New York, nor does the company own any real property in New York.  (*Id.* at ¶¶ 5, 6.)  The company's executive and control functions are based in China, and China Renaissance has no employees in New York.  (*Id.* at ¶ 4.)

---

[2] Plaintiff labels Defendants "that openly do business as VIPKid" as the "Dami Defendants."  (FAC, ¶ 53.)

The FAC alleges that China Renaissance "operates in New York through its New York offices, namely, its wholly owned and controlled subsidiary, China Renaissance US, a domestic corporation headquartered in New York City."  (FAC, ¶ 71.)  However, no subsidiary of China Renaissance is named "China Renaissance US."  (Yee Decl., ¶ 8.)  China Renaissance Securities (US), Inc. ("China Renaissance Securities")—a separate and distinct corporate entity—is a New York corporation with its principal place of business in New York, which is a wholly-owned subsidiary of China Renaissance.  (*Id.* at ¶ 9.)  The FAC does not allege that China Renaissance or China Renaissance Securities ever employed, contracted with, or had any relationship with Plaintiff.  (*See generally* FAC, ¶¶ 1-201.)  Nor does the FAC allege that either company ever made any statement, oral or written, to Plaintiff.  (*Id.*)

### B.    Plaintiff's Allegations.

Plaintiff's FAC alleges a "scheme" among all Defendants to "trick American teachers into working on the VIPKid Platform as VIPKid Teachers," harvest the teachers' biometric data[3] "without their knowledge or consent", and then "eventually substitute, online, natural human teachers with virtual humans, namely [artificial intelligence] that appears, functions, and behaves like natural humans in key respects."  (FAC, ¶¶ 10, 18.)  The ultimate purpose of this purported scheme, according to Plaintiff, is to "grant Defendants a veritably infinite supply of online 'human' capital."  (*Id.* at ¶ 19.)

Plaintiff claims that each "Defendant has played an intentional, deliberate, and self-serving role to advance the VIPKid Scheme."  (FAC, ¶ 82.)  China Renaissance's alleged role in this purported scheme was to "provide[] political and financial support for the VIPKid Scheme."  (*Id.*)

---

[3] The data allegedly harvested includes "indexes of human expressions, voices, facial geometries, and other valuable but hard to obtain biometric data."  (FAC, ¶ 22.)

4

Plaintiff does not explain or allege how China Renaissance went about providing this alleged support, or how its alleged support amounted to participation in any alleged misconduct.[4]

Plaintiff groups China Renaissance into the first four out of his six claims: He alleges China Renaissance's involvement in the alleged fraud, fraud in the inducement, and conversion claims, as well as the purported violations of New York GBL Sections 349 and 350. The FAC's remaining claims—counts five and six, for breach of the New York Labor Law and Fair Labor Standards Act, respectively—are alleged solely against "VIPKid," not China Renaissance.

## ARGUMENT

I. **CHINA RENAISSANCE IS A FOREIGN CORPORATION LACKING "MINIMUM CONTACTS" WITH NEW YORK SUFFICIENT TO ESTABLISH PERSONAL JURISDICTION.**

### A. Legal Standard.[5]

On a motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction, "[a] plaintiff bears the burden of demonstrating personal jurisdiction over the person or entity against whom it seeks to bring suit." *Lederer v. Newmatic Sound Sys., Inc.*, 2013 WL 6835171, at *2 (E.D.N.Y. Dec. 20, 2013) (Seybert, J.) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)); *see also O'Keefe v. Blue & Gold Fleet, L.P.*, 634 F. Supp. 2d 284 (E.D.N.Y. 2009). The Court also "will not draw argumentative inferences in the plaintiff's favor." *Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 429-30 (S.D.N.Y 2019) (citation omitted). "Nor may a plaintiff rely on conclusory statements without any supporting facts, 'as such allegations would lack the factual specificity necessary to confer jurisdiction.'" *Id.* (quoting *Mazloum Int'l*

---

[4] When he omits key details in the FAC, Plaintiff repeatedly states that his sweeping allegations will be demonstrated "through discovery." (*See, e.g.*, FAC, ¶¶ 40, 42, 49, 134.)

[5] In deciding a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), courts may rely upon materials that are outside of the pleadings. *DiStefano v. Carozzi North Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).

*Commerce Corp.*, 829 F. Supp. 2d 223, 227 (S.D.N.Y. 2011)) (quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)).

**B.    Plaintiff Alleges No Basis to Exercise Personal Jurisdiction over China Renaissance Consistent with New York's CPLR and Due Process.**

"The breadth of a federal court's personal jurisdiction is determined by the law of the state in which the district court is located." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). Accordingly, the exercise of personal jurisdiction in New York is governed by New York CPLR 301 and CPLR 302, as limited by the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.  Plaintiff has not carried his burden to establish personal jurisdiction over China Renaissance under either CPLR provision.

*1.    China Renaissance is Not Subject to General Jurisdiction in New York.*

As an entity organized under the law of the Cayman Islands with its principal place of business in China and Hong Kong (Yee Decl. ¶ 2), China Renaissance is not subject to general jurisdiction in New York under CPLR 301 or the Due Process Clause of the Fourteenth Amendment.  A foreign corporation is amenable to suit in New York under CPLR 301 when it "has engaged in such a continuous and systematic course of 'doing business' [in New York] that a finding of its 'presence' [in New York] is warranted." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014); *see also Fernandez v. DaimlerChrysler, A.G.*, 143 A.D.3d 765, 40 N.Y.S.3d 128 (2d Dep't 2016).

Further, under the Constitution, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). For a corporation such as China Renaissance, its "place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Id*. at 137 (alterations in original)

(citation omitted).   In contrast, permitting the exercise of general jurisdiction wherever a corporation "engages in a substantial, continuous, and systematic course of business" broadens the reach of general jurisdiction to encompass many forums and, therefore, would be "unacceptably grasping." *Id.* at 137-38.   Thus, only an "exceptional" case will allow a court to exercise general jurisdiction over a corporation when it is neither incorporated in the forum State nor has its principal place of business there.   *Id.* at 139 n.19.   Establishing such an "exceptional" case requires a showing that the corporation's "'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'"   *Id.* at 151 (quoting *Goodyear*, 564 U.S. at 919).

New York courts do not find general jurisdiction when a corporate defendant is not incorporated in New York and does not maintain its principal place of business here.   *See, e.g.*, *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343-44 (2d Cir. 2018) (affirming dismissal of case against non-resident corporate defendants for lack of general personal jurisdiction); *AlbaniaBEG Ambient Sh.p.k. v. Enel S.p.A.*, 160 A.D.3d 93, 102, 73 N.Y.S.3d 1, 7 (1st Dep't 2018) (foreign corporations "plainly [were] not subject to general jurisdiction in New York").

Here, there is no general jurisdiction in New York over China Renaissance, which is organized under the laws of the Cayman Islands and has its principal place of business in China and Hong Kong.   (Yee Decl. ¶ 2); *see Daimler*, 517 U.S. at 137.   Plaintiff's conclusory allegations concerning China Renaissance's purported contacts with New York, (*see* FAC, ¶¶ 4 ("All Defendants are subject to personal jurisdiction in New York"), 71 ("CR operates in New York through its New York offices")), are wholly insufficient to meet the standards of CPLR 301 and the Due Process Clause.   *See Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations"); *see also*

*Biondi v. Beekman Hill House Apartment Corp.*, 257 A.D.2d 76, 81, 692 N.Y.S.2d 304, 308 (1st Dep't 1999), *aff'd*, 94 N.Y.2d 659, 709 N.Y.S.2d 861 (2000) ("[A]llegations consisting of bare legal conclusions . . . are not presumed to be true [or] accorded every favorable inference.").

This is also not an "exceptional" case in which China Renaissance's contacts with New York are so "continuous and systematic" that they render the company "essentially at home" here. *Daimler*, 517 U.S. at 138-39; *SPV Osus Ltd.*, 882 F.3d at 344 (foreign corporations that are neither incorporated in New York nor have their principal place of business in New York "lack sufficient contacts with the United States to allow the exercise of general jurisdiction"). In fact, Plaintiff does not allege that China Renaissance itself had any contacts with New York, but, rather, claims that China Renaissance "operates in New York through its New York offices, namely, its wholly owned and controlled subsidiary, China Renaissance US, a domestic corporation headquartered in New York City." (FAC, ¶ 71.) But this single allegation is inadequate to support personal jurisdiction over China Renaissance on a general jurisdiction theory. *See, e.g.*, *Dish Network L.L.C. v. Kaczmarek*, 2021 WL 4483470, at *6 (E.D.N.Y. Jun. 24, 2021) (conclusory allegations insufficient for a plaintiff to establish personal jurisdiction) (citing *Coast to Coast Energy, Inc. v. Gasarch*, 149 A.D.3d 485, 53 N.Y.S.3d 16 (1st Dep't 2017)). Accordingly, the Court has no general jurisdiction over China Renaissance.

> 2.    *Plaintiff Does Not Allege Any Ground for the Exercise of Specific Jurisdiction over China Renaissance under CPLR 302.*

Plaintiff fails to allege *any* conduct by China Renaissance that might bring this case within the relevant provisions of New York's long-arm statute. *See O'Keefe v. Blue & Gold Fleet, L.P.*, 634 F. Supp. 2d 284, 286 (E.D.N.Y. 2009) (applying New York's long-arm statute, CPLR 302(a), to determine whether "a non-domiciliary, is subject to personal jurisdiction in New York"). CPLR 302 requires courts to determine whether a "defendant's activities [in New York] were purposeful

and there is a substantial relationship between the transaction and the claim asserted." *Pappas v. Arfaras*, 712 F. Supp. 307, 311 (E.D.N.Y. 1989) (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 198-99 (1988)).  "Even if a defendant has engaged in purposeful acts in New York, there must also exist a substantial relationship between those particular acts and the transaction giving rise to the plaintiff's cause of action." *Pramer S.C.A. v. Abaplus Int'l Corp.*, 76 A.D.3d 89, 95, 907 N.Y.S.2d 154, 158.  Plaintiff vaguely contends that his pleading "satisf[ies] requirements for jurisdiction" under CPLR 302(a), (FAC, ¶ 65), but he falls far short in demonstrating the applicability of any of the statute's subsections.  Indeed, the only remotely plausible sub-sections applicable here are subsections (a)(1) and (a)(3).[6]

Plaintiff has not alleged a basis for the exercise of specific jurisdiction under CPLR 302(a)(1).  Under that section, a plaintiff must show that the non-domiciliary has purposefully transacted business within the state, and there exists a "substantial relationship between the transaction" and the plaintiff's cause of action.  *Pappas*, 712 F. Supp. at 311.  Here, Plaintiff alleges that China Renaissance "operates in New York through … its wholly owned and controlled subsidiary."  (FAC, ¶ 71.)  As a matter of New York law, "[m]ere ownership by a parent company of a subsidiary that is subject to personal jurisdiction is insufficient to establish jurisdiction over the parent." *Moreau v. RPM, Inc.*, 20 A.D.3d 456, 457, 799 N.Y.S.2d 113, 114 (2005); *see also Universal Trading & Inv. Co. v. Credit Suisse (Guerney) Ltd.*, 560 F. App'x 52, 55 n.1 (2d Cir. 2014) (noting that a parent company's general control over a subsidiary is insufficient to exercise personal jurisdiction over the parent company).  Additionally, Plaintiff does not set forth any

---

[6] Other provisions of the long arm statute are inapplicable.  CPLR 302(a)(2) supports jurisdiction over a non-domiciliary who commits a tort in New York.  For a court to exercise jurisdiction under this section, Plaintiff must show China Renaissance was present in New York "at the time of the tort."  *Pramer*, 76 A.D.3d at 97, 907 N.Y.S.2d at 159.  Plaintiff makes no such allegations here.  *See Nasso v. Seagal*, 263 F. Supp. 2d 596 (E.D.N.Y. 2003) (dismissing claim where plaintiff did not allege the torts took place in New York).  CPLR 302(a)(4) also does not apply because none of Plaintiff's claims "aris[e] from the ownership, use or possession of real property" by China Renaissance.  *Aluminal Indus., Inc. v. Newtown Commercial Assocs.*, 89 F.R.D. 326, 329 (S.D.N.Y. 1980).

allegations concerning China Renaissance transacting its own business in New York.   The declaration of Ming Cheung Lawrence Yee, China Renaissance's Company Secretary, conclusively refutes any such contention.  (*See* Yee Decl. ¶¶ 4 - 7.)  "Mere ownership" of interests in subsidiaries is not a basis for exercising long-arm jurisdiction over China Renaissance.  *See Universal Trading*, 560 F. App'x at 50.

Second, Plaintiff has not alleged a basis for personal jurisdiction under CPLR 302(a)(3), which permits personal jurisdiction over an out-of-state defendant if "(1) the Defendant[] committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; (4) the Defendant[] expected or should reasonably have expected the act to have consequences in the state; [and] (5) the Defendant[] derive[s] substantial revenue from interstate or international commerce."  *Skrodzki v. Marcello*, 801 F. Supp. 2d 501, 519 (E.D.N.Y. 2011)."  An injury allegedly caused by tortious conduct, however, is "*not* deemed to cause injury in New York merely because the injured party is a resident of New York."  *Am. Med. Distribs., Inc. v. Saturna Grp. Chartered Accountants, LLP*, 2016 WL 3920224, at *10 (E.D.N.Y. July 15, 2016) (citing cases).  "New York courts consistently have found that mere economic consequential damages [in New York] of an out-of-state tort does not amount to 'injury to person or property within the state' for purposes of [CPLR] 302(a)(3)."  *Id.; see also Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326, 425 N.Y.S.2d 783, 787 (1980) (under CPLR 302(a)(3), "the residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction").

Here, Plaintiff does not adequately allege that China Renaissance met any of the jurisdictional prerequisites under CPLR 302(a)(3).  First, for the reasons set forth in Section II of this memorandum, Plaintiff has not sufficiently alleged that China Renaissance committed an

"outside" tortious act or that any of Plaintiff's causes of action arose from China Renaissance's alleged outside tortious act.  Plaintiff only describes China Renaissance's alleged role in this case as "VIPKid's exclusive financial advisor and its capital markets partner" without providing any additional allegations or details as to China Renaissance's tortious conduct.  (FAC, ¶ 51.) Plaintiff's conclusory and speculative allegation that China Renaissance somehow committed fraud, fraudulent inducement, conversion, or that it violated GBL Sections 349/350 simply because it purportedly "provided political and financial support for the VIPKid Scheme," (FAC, ¶ 82), does not state a tort claim under well-established law.  *See infra* at 13.

Second, Plaintiff does not allege or explain how China Renaissance specifically caused any injury to Plaintiff within New York.  Third, even if Plaintiff had sufficiently alleged a tortious act outside (which he has not), he alleges only consequential economic loss in New York, (*see, e.g.*, FAC, ¶¶ 140 (recoupment of out of pocket expenses), 159-60 (same), 164 (damages equal to fair market value of personal data), 172 (payment for personal data), which cannot by itself justify the exercise of personal jurisdiction under CPLR 302(a)(3).  *See Am. Med. Distribs.*, 2016 WL 3920224, at *10.  And, last, even assuming China Renaissance played a role in financing or providing political support to VIPKid, Plaintiff does not plead or explain how China Renaissance should have expected, or reasonably could have expected, any injury to Plaintiff as a result of its alleged "political and financial support for the VIPKid Scheme."  (FAC ¶ 82.)

In sum, Plaintiff has not satisfied his burden in showing that China Renaissance is subject to jurisdiction in New York.

> 3. *Exercising personal jurisdiction over China Renaissance would not comport with due process.*

Finally, even if Plaintiff was able to establish a statutory basis for personal jurisdiction, which he has not, he has failed to establish that the exercise of jurisdiction would "comport with

federal constitutional due process requirements." *Sandoval v. Abaco Club on Winding Bay*, 507 F. Supp. 2d 312, 315 (S.D.N.Y. 2007); *see also Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 330, 45 N.Y.S.3d 276, 287 (2016).  Under due process analysis, first, a defendant must have "certain minimum contacts" with the forum state such that the defendant should reasonably anticipate being haled into court there; and, second, the maintenance of the suit against the defendant in New York must comport with "traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Plaintiff has not met either part of this test.

A principal inquiry into "minimum contacts" is whether a defendant's conduct and connection with the forum State are such that it should reasonably anticipate being haled into court there.  *See Bensusan Rest. Corp. v. King*, 937 F. Supp. 295, 301 (S.D.N.Y. 1996).  "[A] non-domiciliary tortfeasor has minimum contacts with the forum State—and may thus reasonably foresee the prospect of defending a suit there—if [he] purposefully avails [himself] of the privilege of conducting activities within the forum State." *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 216, 713 N.Y.S.2d 304, 304 (2000) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  This test cannot be satisfied based on "the mere existence of a parent-subsidiary relationship." *Blount v. Peerless Chemicals (P.R.) Inc.*, 316 F.2d 695, 699 (2d Cir. 1963); *accord Ins. Co. of N. Am. v. EMCOR Grp., Inc.*, 9 A.D.3d 319, 320, 781 N.Y.S.2d 4, 5 (1st Dep't 2004) (same); *see also Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 544, 281 N.Y.S.2d 41, 50 (1967) ("[A] foreign parent corporation will not be subjected to the . . . jurisdiction of a State merely because of its ownership of a subsidiary corporation doing business within the State . . . .").

Plaintiff has not alleged such contacts in this case.  China Renaissance's *only* alleged connection to New York is that it is the parent corporation for China Renaissance Securities (US),

(*see* FAC, ¶ 71), but, as already discussed, that allegation alone is insufficient.  In addition, Plaintiff's non-specific, generalized group pleading against multiple defendants is insufficient to allege China Renaissance's minimum contacts with New York.  *See Madison Capital Markets, LLC v. Starneth Europe B.V.*, 2016 WL 4484251, at *3 (S.D.N.Y. Aug. 23, 2016) ("plaintiff may not rely on conclusory non-fact specific jurisdictional allegations to overcome a motion to dismiss.") (internal quotation marks omitted).  With no discernable New York contact, maintaining this suit against China Renaissance would also not comport with traditional notions of fair play and substantial justice.  Nowhere in Plaintiff's 201-paragraph FAC does one find a single allegation that China Renaissance purposefully directed any activities at Plaintiff or the New York forum, much less that China Renaissance created any of those contacts.  Therefore, the FAC should be dismissed for lack of personal jurisdiction.

## II.  THE AMENDED COMPLAINT'S NON-SPECIFIC AND CONCLUSORY ALLEGATIONS DO NOT STATE PLAUSIBLE CLAIMS FOR RELIEF.

### A.  Legal Standard.

In order to survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Plumbers' Union Local No. 12 Pension Fund v. Swiss Reinsurance Co.*, 753 F. Supp. 2d 166, 171 (S.D.N.Y. 2010) (quoting *Iqbal,* 556 U.S. at 678-79).  A "pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Further, "where the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "shown"—"that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"Although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 438 (S.D.N.Y. 2019) (quoting *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order)).  Where a complaint "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct, [it] fail[s] to satisfy this minimum standard." *Id.*

**B.     The Plaintiff Fails to Allege a Claim for Common Law Fraud and Fraud in the Inducement.**

Plaintiff asserts two causes of action sounding in fraud—fraud in the inducement and common law fraud—against all Defendants based upon their alleged collective involvement in "the VIPKid Fraudulent Scheme."  (*See, e.g.*, FAC, ¶¶ 75-107.)  Plaintiff's duplicative and group-pled fraud allegations should be dismissed because Plaintiff (1) fails to meet the heightened pleading standards required by Rule 9(b), and (2) fails to allege the necessary elements to sustain his claims.

*1.     Plaintiff's Group-Pled Allegations Fail to Satisfy Rule 9's Specificity Requirement.*

"Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting fraud be stated with particularity." *Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 482 (E.D.N.Y. 1998) (Seybert, J.).  The Plaintiff must "'(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'"

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co*., 375 F.3d 168, 186-87 (2d Cir. 2004) (citation omitted).  Neither fraud count meets this exacting standard.

First, Plaintiff fails to identify the exact statements or omissions he purports to be fraudulent.  Rather, Plaintiff offers only several broad and conclusory allegations concerning the "VIPKid Scheme" without providing any details concerning the purported "scheme."  (*See, e.g*., FAC, ¶¶ 123 ("the VIPKid Scheme materially misrepresented the work and lifestyle of VIPKid Teachers"); 124 ("VIPKid Scheme was designed to falsely present VIPKid as a vibrant and active community of teachers building stable economic and professional lives"); 151 ("VIPKid Scheme deliberately and falsely presented becoming a VIPKid Teacher as a highly exclusive, rigorous, and selective process, to make VIPKid Teachers feel uniquely chosen").)  Plaintiff never identifies a particular statement or omission of China Renaissance, or any of the other Non-VIPKid Defendants, that is connected to these generalized allegations of fraud.  While Plaintiff recites a number of purported statements included on "VIPKid's English-language Website" "[b]y means of illustration," (*see* FAC, ¶ 125), he does not say which, or how many, of these statements are supposedly fraudulent or how any of the other defendants are implicated by such statements. *Alnwick v. European Micro Holdings, Inc.*, 281 F. Supp. 2d 629, 640 (E.D.N.Y. 2003) (dismissing fraudulent inducement claim where plaintiff "lumps" several defendants together and "fails to specify what each defendant said").

Second, Plaintiff never identifies a particular speaker or Defendant who perpetrated the alleged fraud.  In so doing, Plaintiff fails to advise each Defendant he has grouped together of the exact misconduct with which it is charged.  Rather, Plaintiff groups all Defendants into the same "VIPKid Scheme" and collectively asserts that each Defendant has played a role in advancing said nefarious scheme, but beyond that does not state how each such Defendant may have contributed

15

to the scheme.  (*See, e.g.*, FAC, ¶ 80 ("Each Defendant has contributed to the design, development, and/or maintenance of the VIPKid Platform and each has centered into one or more agreements related to the Platform"); *see also, e.g.*, FAC, ¶¶ 126-127, 144-145.)  Nowhere in Plaintiff's generalized description of this fraudulent "scheme," however, may one find a specific allegation as to how China Renaissance,[7] or any other Defendant, allegedly carried out, communicated, or directed any of the representations that allegedly give rise to Plaintiff's fraud claims.  Nor does Plaintiff specify what role each Defendant played in establishing the essential elements of fraud.  This type of group pleading, devoid of any specificity, cannot survive in light of Rule 9(b).  *See, e.g.*, *Polar Int'l Brokerage Corp. v. Reeve*, 108 F. Supp. 2d 225, 237 (S.D.N.Y. 2000) (the requirements of Rule 9(b) are "not satisfied by a complaint in which defendants are clumped together in vague allegations." (citation omitted)); *Alnwick*, 281 F. Supp. 2d at 640.

Third, Plaintiff fails to allege the date or dates of any alleged fraudulent statement.  In fact, Plaintiff does not include a single date, time, or instance in either of his fraud allegations.  Thus, Plaintiff cannot tie any alleged misrepresentation or omission to any specific instance.  *See, e.g.*, *Eaves v. Designs for Finance, Inc*., 785 F. Supp. 2d 229, 248 (S.D.N.Y. 2011) (dismissing fraud claim where the plaintiffs failed to state when and where the representations were made).

Finally, Plaintiff fails to allege why any particular statement is fraudulent.  For example, Plaintiff highlights a purported assertion by "VIPKid co-founder Cindy Mi" that "VIPKid Teachers are very supportive of VIPKid and feel happy and proud to work under strictly regulated conditions, driven by spiritual encouragement."  (FAC, ¶¶ 148, 149).  Plaintiff claims that these types of assertions by VIPKid "paint[] a false sense of community to get VIPKid Teachers attached

---

[7] Again, the FAC's discussion of China Renaissance is extremely limited.  Indeed, Plaintiff's *only* allegation is that China Renaissance "supports VIPKid in exploring the boundaries and possibilities of online education and has advanced the VIPKid Scheme by actively shaping VIPKid so that VIPKid's activities are responsive to the national policies of the Chinese Government."  (FAC, ¶ 51.)

to VIPKid."  (*Id.* at ¶ 153.)  But, such puffery, even if it was sufficient to state a claim (and it is not), can hardly be attributed to any other Defendant.

Both of Plaintiff's fraud counts fail to meet the requirements of Rule 9(b) because Plaintiff's allegations do not give notice of the fraudulent statement, the speaker, when the statement was made, or why any given statement (or omission) is fraudulent, making China Renaissance's future defense of such claims impossible.  Thus, both claims should be dismissed.

> 2.      *Plaintiff Fails to Plead Claims for Fraud and Fraud in the Inducement.*

Even if Plaintiff has somehow satisfied Rule 9(b) (which he has not), the FAC fails to state claims for fraud and fraud in the inducement.  To sustain a cause of action for fraud, Plaintiff must plead with specificity "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff."  *Levy v. Maggiore*, 48 F. Supp. 3d 428, 462 (E.D.N.Y. 2014) (citing *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006)).

A fraud in the inducement claim "has the same elements as a fraud claim, but allows a plaintiff to bring an action 'when the misrepresentation is collateral to the contract it induced.'" *Id.* (quoting *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006)).  A party alleging a fraudulent inducement claim under New York law must also "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages."  *State St. Global Advisors Trust Co. v. Visbal*, 431 F. Supp. 3d 322, 352 (S.D.N.Y. 2020) (quoting *Bridgestone/Firestone v. Recovery Credit Servs.*, 98 F.3d 13, 20 (2d Cir. 1996)).

Here, Plaintiff does not allege material misrepresentations of fact.  While Plaintiff lists *some* statements allegedly made by unnamed Defendants, Plaintiff does not explain how any of

the Defendants' alleged claims are false or are otherwise material.  *See Iqbal*, 556 U.S. at 678

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice" to sustain a claim).  Plaintiff also lists eleven purported statements from

"VIPKid's English-language Website" and claims that "Defendants knowingly and variously

repeated these and other false misrepresentations [*sic*] in public."  (FAC, ¶¶ 125, 126.)  But, the

supposed "false misrepresentations" proffered benignly state things like, "Become a Teacher",

"Join the Largest Global Teaching Community", "Teachers feel supported before, during and after

class", "'Teach Every Child' and 'Enable Every Teacher'" and "Work When and Where You

Want."[8]  (*Id.* at ¶ 125.)  Other than his conclusory statement that these purported claims are false,

Plaintiff wholly fails to explain *why* they are false.  This goes for other supposed claims made by

"the Defendants," such as Plaintiff's assertion that "VIPKid's English-language Website makes

several claims about the prospects of achieving financial stability through work as a VIPKid

Teacher . . . ."  (FAC, ¶ 147.)  Plaintiff never attempts to refute these purported claims, explain

how they are false, or, for example, demonstrate how VIPKid Teachers have no prospects of

achieving financial stability.

Plaintiff also claims Defendants wrongfully omitted "that VIPKid Teacher personal data

was being harvested and used for technological development," but that assertion equally fails legal

scrutiny. (FAC, ¶ 143.)  Other than a conclusory allegation, however, there is no assertion that the

non-VIPKID Defendants had any relationship with or connection to the Plaintiff such that they

even had an opportunity to omit their involvement in this "data harvesting" scheme.  (*See, e.g.*,

FAC ¶ 82.)  In any event, fraudulent omission is "tantamount to an affirmative representation

where a party to a transaction is duty-bound to disclose certain pertinent information."  *Callahan*

---

[8] Even if these claims were made, they are non-actionable "puffery."  *See Mandarin Trading Ltd. v. Wildenstein*, 16
N.Y.3d 173, 179, 919 N.Y.S.2d 465, 469 (2011).

*v. Callahan*, 127 A.D.2d 298, 514 N.Y.S.2d 819, 821 (3d Dep't 1987).  The theory requires the plaintiff to plead that "one party has superior knowledge of information that is not readily available to the other party and the party possessing the superior knowledge knows that the second party is acting on the basis of mistaken knowledge."  *See Bank of Am., N.A. v. Bear Stearns Asset Mgmt.*, 969 F. Supp. 2d 339, 351 (S.D.N.Y. 2013).  Even if Plaintiff has somehow pled adequate facts demonstrating a data harvesting scheme—and he plainly has not, other than a sweeping claim that this "scheme" was designed to stockpile recordings of teachers' voices and facial movements— Plaintiff does not allege any such knowledge of this purported data collection on the part of China Renaissance or any other non-VIPKid Defendant.  With respect to China Renaissance specifically, Plaintiff does not allege, explain, or discuss its knowledge of, involvement in, or attempts to hide any purported data harvesting scheme.  Other than claiming, without any specificity whatsoever, that China Renaissance "provided political and financial support for the VIPKid Scheme", (FAC, ¶ 82), Plaintiff gives no added details as to China Renaissance's purported involvement in any activity here.

In terms of scienter, "'Plaintiffs must allege facts that give rise to a strong inference of fraudulent intent,' which may be established 'either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Eternity Global*, 375 F.3d at 187.  Plaintiff fails to allege that any of the supposed representations (or omissions) were known by China Renaissance to be false, or that any statement was made by China Renaissance or any other Defendant with an intent to deceive.  In fact, Plaintiff makes no effort to discuss knowledge, scienter, or intent at all.  Neither does he articulate how each Defendant, much less China Renaissance, possessed the necessary intent to deceive.  *See In re Platinum-Beechwood Litig.*, 427

F. Supp. 3d 395, 438 (S.D.N.Y. 2019) ("Group pleading allows plaintiffs only to connect defendants to statements—it does not also transitively convey scienter.").

Finally,[9] Plaintiff does not plead the additional elements necessary to support his fraudulent inducement claim. Plaintiff makes no mention of a legal duty owed by China Renaissance that is separate from any contractual duty. Indeed, Plaintiff does not describe any underlying contract with China Renaissance in the first instance, let alone the terms of the contract, the date of its execution, or the exact contracting parties involved. In addition, Plaintiff does not specify a fraudulent misrepresentation that is collateral to any contract. And, while he indeed mentions "special damages" (FAC, ¶ 121), he does not specify what those special damages are, but only repeats the supposedly out-of-pocket costs that VIPKid teachers paid as a result of their employment. (*Compare* FAC ¶ 140, *with* ¶¶ 159, 160.)

In summary, both of Plaintiff's duplicative, generalized, and group-pled fraud allegations fail to allege the necessary elements to sustain his claims, and, therefore, must be dismissed.

### C.  Plaintiff's Conversion Allegation Fails to State a Claim.

Plaintiff alleges that "Defendants unlawfully interfered with and/or assumed ownership" over the purported class members' biometric and other personal data. (FAC, ¶¶ 162-163.) Based on this limited and conclusory allegation, Plaintiff asserts *all* Defendants are liable for common law conversion. Plaintiff's FAC fails to satisfy the basic elements necessary to sustain this claim.

"According to New York law, '[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006) (citing *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 44 (1995)), *certified question accepted*, 7 N.Y.3d 837 (2006),

---

[9] Plaintiff's conclusory allegations as to reliance and damages fail to provide any factual support for the claims (*see* FAC, ¶¶ 139, 140, 149), and cannot support the substantive fraud claims pled here.

*certified question answered*, 8 N.Y.3d 283 (2007).  To state a conversion claim, "a plaintiff must allege: '(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights.'"  *Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 981 F. Supp. 2d 153, 163 (E.D.N.Y. 2013) (quoting *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004)).

Federal courts in New York have questioned and have indeed reached differing conclusions regarding whether conversion claims can even apply to electronic data.  *See, e.g.*, *BCRS1, LLC, v. Unger*, 2021 WL 3667094, at *8 (E.D.N.Y. Aug. 18, 2021) ("[T]he Court of Appeals did not [answer]—and still has not—answered the broader question: whether other forms of 'electronic data, computer programs, or electronic data saved in computer programs can support a claim for conversion under New York law.'").  Still, "[w]hile New York courts have recognized that conversion can be predicated on the loss of intangible electronic data*, that case law has not 'alter[ed] the traditional rule requiring 'the exercise of unauthorized dominion and control to the complete exclusion of the rightful possessor.'"  *Reis, Inc. v. Spring11 LLC*, 2016 WL 5390896, at *10 (S.D.N.Y. Sept. 26, 2016) (citing *Geo Grp., Inc. v. Cmty. First Servs.*, 2012 WL 1077846, at *9 (E.D.N.Y. Mar. 30, 2012)).

Plaintiff's FAC continues to fail to include facts sufficient to meet any element of a claim—here, that China Renaissance converted Plaintiff's personal data to their own use.  First, the FAC does not point to a "specific, identifiable thing" that China Renaissance is alleged to have taken, but, rather, contains generic references to "personal data, especially biometric data" that "Defendants," (apparently) including China Renaissance, allegedly possess.  *See Alzheimer's*

*Disease Res. Ctr., Inc.*, 981 F. Supp. 2d at 164 (granting dismissal where the property at issue "cannot be distinguished as specific chattel").  Vague and general allegations like those in the FAC are not enough to show "that defendant converted 'a specific identifiable thing' [specific personal data in Defendants' possession] . . . actionable under New York law," and thus the general assertion that all Defendants have personal data without any supporting facts is wholly deficient.  *BCRS1, LLC*, 2021 WL 3667094, at *9 (granting dismissal of conversion claim where plaintiff did not specify what the electronic data encompassed).

Second, to the extent one or more Defendants ever possessed any of Plaintiff's personal data, Plaintiff has failed to allege facts showing that he actually had ownership, possession, or control of the data before China Renaissance allegedly converted it for its own use.  Based on the FAC's vague allegations, the alleged data that is the subject of the claim almost certainly would have been a copy, which is not subject to conversion claims.  Courts have found that "cases of pure copying support[] the conclusion" that the requirements for conversion are not met.  *Fischkoff v. Iovance Biotherapeutics, Inc.*, 339 F. Supp. 3d 408, 415 (S.D.N.Y. 2018) (denying leave to amend to add conversion for copying electronic files that "cannot survive a motion to dismiss"); *see also Reis, Inc.*, 2016 WL 5390896, at *1 (granting motion to dismiss for conversion claims involving the "pure copying of electronic files").  In his FAC, Plaintiff alleges his personal data was "merg[ed]…into audio, video, images, algorithms, computer programs, databases, reports, and other documents," suggesting that Plaintiff himself believes his information was copied repeatedly, and thus not an original set of data in his possession, taken by Defendants, that could be the subject of a proper conversion claim, (FAC, ¶ 163).  Courts in this circuit have found similar allegations insufficient as a matter of law in granting motions to dismiss.  *See Fischkoff*, 339 F. Supp. 3d at 415.

Last, Plaintiff has failed to allege facts showing that China Renaissance, or any of the other Defendants, exercised unauthorized dominion over the "thing in question." *See Alzheimer's Disease Res. Ctr., Inc.*, 981 F. Supp. 2d at 163. Any claim that Defendants each now exercises unauthorized dominion and control over Plaintiff's personal data, to the extent that Defendants can be alleged to have *any* of his personal data, is implausible; obviously, Plaintiff still has possession of his name, visage, voice, likeness, DNA, Social Security number, and other biometric and personal data. Accordingly, his vague conversion claim, like his other claims, must be dismissed.

### D. Plaintiff Fails to Allege the Requisite Elements for a GBL §§ 349/350 Claim.

Consistent with his other allegations against China Renaissance, Plaintiff also fails to allege the essential elements for violations of New York GBL Sections 349 and 350. "A plaintiff is entitled to relief for a violation of GBL § 349, which prohibits deceptive business practices, if: (1) the act, practice, or advertisement was consumer-oriented; (2) the act, practice or advertisement was misleading in a material respect, and (3) the plaintiff was thereby injured." *Rivas v. Hershey Co.*, 2020 WL 4287272, at *3 (E.D.N.Y. July 27, 2020) (internal citations omitted) (dismissing complaint with prejudice where plaintiff could not plausibly allege defendant's marketing was misleading to a reasonable consumer). "Similarly, to establish a claim under GBL § 350, which prohibits false advertising, a plaintiff must demonstrate that the advertisement (1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury." *Id.* A Section 349 claim based on an omission survives only "where the business alone possesses material information that is relevant to the consumer and fails to provide this information." *Lebowitz v. Dow Jones & Co.*, 847 F. Supp. 2d 599, 605 (S.D.N.Y. 2021), *aff'd*, 508 F. App'x. 83, 85 (2d Cir. 2013) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995)).

23

"[S]ection 349 is directed at wrongs against the consuming public," and therefore "a threshold matter in § 349 cases is whether or not the act in question was consumer-oriented." *Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 447 (S.D.N.Y. 2004) (quoting *Oswego*, 85 N.Y.2d at 24–25); *see also Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) ("It is clear that 'the gravamen of the complaint must be consumer injury or harm to the public interest.'"); *Bill's Birds Inc. v. Trademarketing Res. Inc.*, 920 F. Supp. 2d 357, 367–68 (E.D.N.Y. 2013) (dismissing claim where plaintiffs failed to allege that challenged act or misrepresentation was consumer-oriented).

Here, Plaintiff provides no factual allegations to support any wrongful act by China Renaissance, or any of the other Defendants, that was consumer-oriented. Plaintiff does not allege that being a teacher and VIPKid employee (or independent contractor) made him a consumer, and he does not allege that any wrongful acts by Defendants have a broad impact on consumers at large. *See Johnson v. JPMorgan Chase Bank, N.A.*, 488 F. Supp. 3d 144, 162 (S.D.N.Y. 2020) ("[T]he test is whether the acts or practices have a broader impact on consumers at large, where a consumer is one who purchases goods and services for personal, family or household use."). Plaintiff includes just one bare legal conclusion to this point: "VIPKid has engaged in unlawful and deceptive consumer-oriented acts or practices in the conduct of its business . . . ." (*See* FAC ¶ 169). But, this kind of conclusory allegation is plainly inadequate to state a claim under the GBL. *Woods v. Maytag Co.*, 2010 WL 4314313, at *15 (E.D.N.Y. Nov. 2, 2010) ("[C]onclusory allegations have been held to be insufficient to state a claim under Section 349.").

This same analysis applies to Section 350, and so Plaintiff fails to meet the requirements of that claim as well. *See Maurizio v. Goldsmith*, 230 F.3d 518, 522 (2d Cir. 2000); *Galerie Furstenberg v. Coffaro*, 697 F. Supp. 1282, 1291-92 (S.D.N.Y. 1988) (granting motion to dismiss

Section 350 claim where plaintiff was not an injured consumer and did not allege injury to public at large).  With Plaintiff's inability to plead this threshold element, Plaintiff's GBL Section 349 and Section 350 claim fails as a matter of law and should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendant China Renaissance respectfully requests that this Court dismiss the FAC with prejudice, and the Court grant such other and further relief as it deems just and proper in the circumstances.

Dated:  January 21, 2022                              Respectfully submitted,

**DLA PIPER LLP (US)**

By: /s/ *Richard F. Hans*

Richard F. Hans
Neal F. Kronley
Thomas J. Alford
1251 Avenue of the Americas
New York, New York 10020
212-335-4500
richard.hans@us.dlapiper.com
neal.kronley@us.dlapiper.com
thomas.alford@us.dlapiper.com

*Counsel for Defendant*
*China Renaissance Holdings Ltd.*

25