UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------X

Kevin J. Meehan,

    Plaintiff,

      -against-


VIPKID; VIPKIDS INTERNATIONAL,
INC.,
aka VIPKID, aka VIPKID
INTERNATIONAL, INC;
BEIJING DAMI TECHNOLOGY CO.,
LTD.,
aka BEIJING DA MI TECHNOLOGY CO.,
LTD.,
aka VIPKID;
BEIJING DAMI FUTURE TECHNOLOGY
CO., LTD.,
aka BEIJING DA MI FUTURE
TECHNOLOGY CO., LTD.;
TENCENT HOLDINGS LTD.;
CLOUD & SMART INDUSTRIES,
TENCENT HOLDINGS LTD.,
aka CLOUD & SMART INDUSTRIES AT
TENCENT HOLDING LTD.;
TENCENT AMERICA LLC;
TENCENT CLOUD LLC;
CHINA RENAISSANCE HOLDINGS LTD.,
aka CHINA RENAISSANCE SECURITIES,
aka CHINA RENAISSANCE;
SEQUOIA CAPITAL OPERATIONS LLC;
VIPKID HK LIMITED; VIPKID CLASS
HK LIMITED;
and VIP TEACH INC.,

    Defendants.

--------------------------------X

<u>MEMORANDUM & ORDER</u>
20-CV-6370 (JS)(ARL)

APPEARANCES

| | |
|---|---|
| For Plaintiff<br>Kevin J. Meehan: | Lakshmi Gopal, Esq.<br>Muciri Law PLLC<br>305 Broadway, Floor 7<br>New York, NY 10007 |

For Defendant VIPKids          Kevin R. Vozzo, Esq.
International, INC. a/k/a       Epstein Becker & Green, P.C.
VIPKid a/k/a VIPKid            875 Third Avenue
International, Inc.:            New York, NY 10022

                               Andrew P. Marks, Esq.
                               David S. Warner, Esq.
                               Dorf & Nelson LLP
                               555 Theordore Fremd Avenue
                               Rye, NY 10580


For Defendant Beijing Da       Kevin R. Vozzo, Esq.
Mi Technology Co., Ltd.        Andrew P. Marks, Esq.
a/k/a Beijing Da Mi            David S. Warner, Esq.
Technology Co., Ltd.          [See above for address]
a/k/a VIPKid:


For Defendant Beijing          Andrew P. Marks, Esq.
Dami Future Technology        [See above for address]
Co., Ltd. a/k/a Beijing
Da Mi Future Technology
Co., Ltd.:


For Defendant Tencent          Jay L. Pomerantz, Esq.
Holdings Ltd.:                 Fenwick & West LLP
                               801 California Street
                               Mountain View, CA 94041

                               Katherine A. Marshall, Esq.
                               Fenwick & West LLP
                               555 California Street
                               San Francisco, CA 94104


For Defendant Cloud &          Jay L. Pomerantz, Esq.
Smart Industries, Tencent     Katherine A. Marshall, Esq.
Holdings Ltd. a/k/a Cloud     [See above for addresses]
& Smart Industries at
Tencent Holdings Ltd.:


For Defendant Tencent          Jay L. Pomerantz, Esq.
America LLC:                   Katherine A. Marshall, Esq.
                              [See above for address]

```
For Defendant Tencent        Jay L. Pomerantz, Esq.
Cloud LLC:                   Katherine A. Marshall, Esq.
                             [See above for address]


For Defendant China          Neal F. Kronley, Esq.
Renaissance Holdings Ltd.    Richard F. Hans, Esq.
a/k/a China Renaissance      DLA Piper LLP
Securities a/k/a China       1251 Avenue of the Americas
Renaissance:                 New York, NY 10020


For Defendant Sequoia        Harry A. Olivar, Jr., Esq.
Capital Operations LLC:      Quinn Emmanuel Urquhart & Sullivan, LLP
                             865 South Figueroa Street, 10th Floor
                             Los Angeles, CA 90017


For Defendant VIPKID HK      Kevin R. Vozzo, Esq.
Limited:                     Andrew P. Marks, Esq.
                             David S. Warner, Esq.
                             [See above for addresses]


For Defendant VIPKID         Kevin R. Vozzo, Esq.
Class HK Limited:            Andrew P. Marks, Esq.
                             David S. Warner, Esq.
                             [See above for addresses]


For Defendant VIPTeach       Kevin R. Vozzo, Esq.
Inc.:                        Andrew P. Marks, Esq.
                             David S. Warner, Esq.
                             [See above for addresses]
```

SEYBERT, District Judge:

Plaintiff Kevin J. Meehan (hereafter, "Plaintiff") commenced this putative class and collective action against VIPKid HK Limited ("VIPKid") and a dozen other companies purportedly affiliated with VIPKid, alleging: (1) common law fraud; (2) common

3

law fraud in the inducement; (3) common law conversion; (4) deceptive business practices under N.Y. General Business Law. §§ 349 and 350; and (5) various breaches of N.Y. Labor Law for unpaid straight and overtime wages, unlawful wage deductions, failure to provide sick leave, and retaliation.  (See generally Am. Compl., ECF No. 68.)  On January 20 and 21, 2023, each of the Defendants moved to dismiss the Amended Complaint.  In particular, Defendants Tencent America LLC ("Tencent America"), Tencent Holdings Ltd. ("Tencent Holdings") and Tencent Cloud LLC ("Tencent Cloud"), (collectively, the "Tencent Defendants"), moved to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(2), 12(b)(5), and 12(b)(6).  (See generally Tencent Support Memo, ECF No. 70-1.)  VIPKid, VIPKid International Inc. ("VIPKid Int'l"), Beijing Dami Technology Co., Ltd. ("BDT"), and Beijing Dami Future Technology Co, Ltd. ("BDFT") (collectively, the "Dami Defendants"), moved to dismiss the Amended Complaint pursuant to Rules 12(b)(2) and 12(b)(6), and to compel arbitration pursuant to an Independent Contractor Agreement ("IC Agreement") executed by Plaintiff and VIPKid.  (See generally Dami Support Memo, ECF No. 71-1.)  Finally, China Renaissance Holdings Ltd. ("China Renaissance") and Sequoia Capital Operations, LLC ("Sequoia") separately filed motions to dismiss the Amended Complaint pursuant to Rules 12(b)(2) and 12(b)(6).

(<u>See generally</u> China Renaissance Support Memo, ECF No. 72-1; Sequoia Support Memo, ECF No. 74.)

On August 29, 2023, Magistrate Judge Arlene R. Lindsay ("Judge Lindsay") issued a Report and Recommendation (hereafter, "R&R" or "Report") recommending each of Defendants' dismissal motions be granted in their entirety. (R&R, ECF No. 91.) On October 24, 2023, Plaintiff filed objections (hereafter "Objections" or "Objs.") to Judge Lindsay's R&R, which he amended and supplemented on October 25, 2023. (<u>See</u> ECF Nos. 95, 96.) On November 21 and 22, 2023, Defendants filed their respective oppositions to Plaintiff's objections. (ECF Nos. 99-101.) For the reasons that follow, Plaintiff's Objections are OVERRULED, and the R&R is adopted in its entirety. To the extent Plaintiff has any plausible claims against any of the Defendants, those matters are to be addressed in arbitration. Accordingly, the Clerk of Court is directed to mark this case CLOSED.

[Remainder of page intentionally left blank.]

BACKGROUND[1]

I.   Procedural History

   A.   The Parties

      1. Plaintiff

Plaintiff is a domiciliary of Nassau County, New York, who performed work for VIPKid,[2] an online teaching platform, from approximately October 2016 to June 2020.  (Am. Compl. at 2-3; See Ex. A, ECF No. 71-2; Dami Support Memo at 2.)  As discussed supra, Plaintiff brings the following causes of action against Defendants: (1) common law fraud; (2) common law fraud in the inducement; (3) common law conversion; (4) deceptive business practices under N.Y. General Business Law §§ 349 and 350; and (5) various breaches of N.Y. Labor Law for unpaid straight and overtime wages, unlawful wage deductions, failure to provide sick leave, and retaliation.  Plaintiff's core allegation is that VIPKid, along with the other named Defendants, engaged in a scheme to defraud Plaintiff and others by enticing them to teach students on an internet platform (hereafter, the "VIPKid Platform").  (Am. Compl. at 11.)  According to Plaintiff, unbeknownst to him and others working as teachers for VIPKid, Defendants were harvesting the

_____

[1] The Court presumes familiarity with the record and summarizes the facts only as necessary for resolution of the instant motion.  The facts discussed herein are derived from the Amended Complaint and the parties' submissions relative to the instant motions.

[2] One of the issues in this case is whether Plaintiff was properly classified as an independent contractor.  The Court takes no position on that issue at this time.

teachers' biometric data in order to develop artificial intelligence, artificial general intelligence, and facial recognition technology.  (Id.)

2. The Dami Defendants

VIPKid is a Hong Kong corporation that maintains "an internet platform enabling American teachers to connect remotely with students in China to provide English language instruction." (Dami Support Memo at 2.)  VIPKid's principal place of business is Hong Kong.  (Id.)  From 2016 to 2020, VIPKid contracted with Plaintiff such that Plaintiff provided online teaching instruction to students via the VIPKid Platform.  (Dami Support Memo at 9.) During this time period, VIPKid entered into a series of IC Agreements with Defendant.  (Id.; see also Ex. A.)  The IC Agreements each contained an arbitration provision whereby the parties agreed to arbitrate "any past, existing or future claim, regardless of the date of its accrual" by either party "arising out of or related to" the IC Agreement.[3]  (Dami Support Memo at 9, 11; Ex. A.)

VIPKid Int'l is a wholly-owned subsidiary of VIPKid, and a Delaware corporation with its principal place of business in

---

[3] While Plaintiff and VIPKid executed several IC Agreements, it is undisputed that the IC Agreements each contained an arbitration provision.  (Dami Support Memo at 9.)  In their submissions relative to the instant Motions, the parties refer only to the most recent IC Agreement executed by Plaintiff and VIPKid. (See Ex. A).  For convenience, hereafter, the Court refers to the IC Agreements in the singular.

California.  (Am. Compl. at 8; Dami Support Memo at 8.)  Plaintiff alleges that VIPKid Int'l is an "express beneficiary" of the IC Agreements executed between Plaintiff and VIPKid.  (Amended Compl. at 8.)

BDT is a Chinese corporation with its principal place of business in China.  (Dami Support Memo at 2.)  According to Plaintiff, BDT is a "principal or core VIPKid company and owner of VIPKid trademarks used by [the] Dami Defendants and the VIPKid Platform when it is being used in certain capacities."  (Am. Compl. at 8.)  BDT owns "at least nine VIPKID apps on Apple's app store" and "owns VIPKid's English-language website[,] www.VIPKid.com." (Id.)

BDFT is a Chinese corporation with its principal place of business in China.  (Dami Support Memo at 2.)  Plaintiff alleges BDFT is a wholly-owned subsidiary of VIPKid that owns patents for technology used on the VIPKid Platform "including patents for harvesting VIPKid Teacher biometric data."  (Am. Compl. at 8).

### 3. The Tencent Defendants

Tencent Holdings is incorporated in the Cayman Islands and maintains its principal place of business in China.  (Tencent Support Memo at 11; Byun Decl. ¶2.)  Tencent Holdings does not conduct any business in New York, nor does it have any business operations, offices, or employees in New York.  (Tencent Support Memo at 11; Buyun Decl. ¶3-5.)  According to Plaintiff, Tencent

Holdings is a multinational conglomerate made up of several subsidiaries and affiliates that aims to reach certain "commercial technology development objections." (Am. Compl. at 4.) "Tencent's core pursuits include computer vision, audio recognition, natural language processing, and machine learning" which is used "to edit, create, analyze, and identify images and videos" and "to improve object/face detection and tracking." (Id.) Plaintiff alleges Tencent Holdings provides "significant" facial recognition software to the VIPKid Platform which permits "seamless capture of data and videos, enhancing the use of the [VIPKid] Platform for technological development." (Id.)

Tencent Cloud is a Delaware limited liability company ("LLC") and maintains its principal place of business in Delaware. (Tencent Support Memo at 11; Leong Decl. ¶2.) According to Plaintiff, Tencent Cloud is an online education services provider providing services to assist with enrollment, course scheduling, certification systems, live video recording, video AI, and content delivery acceleration. (Am. Compl. at 6.) Plaintiff alleges he will "show through discovery" that Tencent Cloud "uses VIPKid to develop and enhance its own services." (Id.)

Tencent America is a Delaware LLC that maintains its principal place of business in California. (Tencent Support Memo at 11; Xu Decl. ¶2-3.) Tencent America does not sell products or services in New York; however, it conducts limited activities in

New York.    (Xu Decl. ¶7-8).    These activities include: "(1) reporting and editing articles regarding the financial industry within the United States; (2) developing business for Tencent Holdings within the United States; and (3) working with Tencent Holdings' customers and clients who are based in the United States." (Tencent Support Memo at 12; Xu Decl. ¶ 9.)  According to Plaintiff, Tencent America is a wholly-owned subsidiary of Tencent Holdings that focuses on advertising, artificial intelligence, investments, and security.  (Am. Compl. at 6; Xu Decl. ¶3.)  Plaintiff alleges he will "show through discovery" that Tencent America "supports, contributes to, and/or is a part of the VIPKid Platform." (Am. Compl. at 6.)

### 4. China Renaissance

China Renaissance is an investment banking and investment management firm organized under the laws of the Cayman Islands, which maintains its principal places of business in Hong Kong and China.  (Am. Comp. at 7; China Renaissance Support Memo at 9; Yee Decl. ECF No. 72-2, at ¶2.)  China Renaissance: does not transact business in New York; has no employees in New York; and, owns no real property in New York.  (China Resistance Support Memo at 9; Yee Decl. ¶4-6.)  According to Plaintiff, China Renaissance is VIPKID's "exclusive financial advisor and capital markets partner" and "actively shap[es] VIPKID so that VIPKID's activities

are responsive to the national policies of the Chinese Government."
(Am. Compl. at 7.)

### 5. Sequoia

Sequoia is a venture capital firm that primarily invests in technology companies.  (Chang Decl., ECF No. 75, at ¶2.)  It is an LLC incorporated in Delaware and maintains its headquarters in California.  (Chang Decl. ¶3.)  Sequoia does not own or maintain an office in New York; nor does it own any assets in New York, including bank accounts.  (Chang Decl. ¶4-5.)  According to Plaintiff, "Sequoia is one of VIPKid's earliest and more strategic and financial partners" and has played "an active and key role in developing VIPKid, the VIPKid Platform" and the alleged fraudulent scheme.  (Am. Compl. at 6.)  Sequoia is the "parent of certain funds that were outside investors in VIPKid" but has not itself invested in VIPKid.  (Sequoia Support Memo at 5; Chang Decl. ¶9.)

### B. The Instant Motions

#### 1. Dami Defendants' Motion to Dismiss and Compel Arbitration

On January 21, 2022, the Dami Defendants moved to dismiss the Amended Complaint, arguing: (1) pursuant to Rule 12(b)(1), the Court lacks subject-matter jurisdiction over Plaintiff's claims because the parties agreed arbitrate pursuant to the IC Agreement; (2) pursuant to Rule 12(b)(2), the Court lacks personal jurisdiction over defendants; and (3) pursuant to Rule 12(b)(6),

Plaintiff has failed state a claim. (<u>See generally</u>, Dami Support Memo.) In support of their claims, the Dami Defendants argue the arbitration clause in the IC Agreement unequivocally requires Plaintiff to resolve his claims in this action before an arbitrator. (<u>Id.</u> at 11.) In particular, the Dami Defendants point to the specific provisions of the IC Agreement mandating the resolution of "most every type of dispute" via arbitration. (<u>Id.</u>) The IC Agreement states, in pertinent part:

> <u>ARBITRATION OF CLAIMS</u>: In the event of a dispute between the parties, the parties agree to resolve the dispute as described in this Section (the "Arbitration Provision"). This Arbitration Provision is governed by the Federal Arbitration Act (9 U.S.C. § 1, et seq.) and evidences a transaction involving commerce. The parties expressly agree that this Arbitration Provision shall be governed by the Federal Arbitration Act even in the Event TEACHER and/or VIPKID are otherwise exempted from the Federal Arbitration Act. Any disputes in this regard shall be resolved exclusively by an Arbitrator. In the event, but only in the event, the Arbitrator determines the Federal Arbitration Act does not apply, the state law governing arbitration agreements in the state in which TEACHER performs the majority of services covered by this Agreement shall apply. This Arbitration Provision applies to any past, existing or future claim, regardless of the date of its accrual, brought by either TEACHER or VIPKID, arising out of or related to this Agreement, TEACHER's relationship with VIPKID, including without limitation, TEACHER's classification as an independent contractor or termination of the relationship with VIPKID, and TEACHER's provision of services to Students, whether arising under federal, state, or local law. The terms of this Arbitration Provision will

remain in force after the parties' contractual
relationship ends. **Except as it otherwise
provides, this Arbitration Provision is
intended to apply to the resolution of
disputes that otherwise would be resolved in
a court of law or before any forum other than
arbitration. THIS ARBITRATION PROVISION
REQIRES ALL SUCH DISPUTES TO BE RESOLVED ONLY
BY AN ARBITRATOR THROUGH FINAL AND BINDING
ARBITRATION ON AN INDIVIDUAL BASIS, AND NOT BY
WAY OF COURSE OR JURY TRIAL, OR BY WAY OF
CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION.**

Claims Covered by Arbitration Provision.
Unless carved out below, claims involving the
following disputes shall be subject to
arbitration under this Arbitration Provision
regardless of whether brought by TEACHER,
VIKID or any agent acting on behalf of either:
(1) disputes arising out of or related to this
Agreement; (2) disputes arising out of or
related to TEACHER's relationship with VIPKID,
including without limitation, disputes
concerning TEACHER's classification as an
independent contractor, or termination of the
relationship with VIPKID; (3) TEACHER's
provision of services to Students; and (3)
except as otherwise set forth in section 13.B,
Class Action Waiver, below, disputes arising
out of or relating to the interpretation of
the Arbitration Provision, including the
validity, enforceability, revocability,
conscionability, scope, or breach of the
Arbitration Provision, or any portion of the
Arbitration Provision. . . . Except as it
otherwise provides, this Arbitration
Provision also applies, without limitation, to
all such disputes between TEACHER and VIPKID's
fiduciaries, administrators, affiliates,
subsidiaries, parents, and all successors and
assigns of any of them.

(Id.; Ex A. (bolded emphasis in original.))

The Dami Defendants argue this Court does not have

personal jurisdiction over them because they are not domiciled in

New York and do not conduct any activities in New York relating to the claims at issue. (Dami Support Memo at 16 (noting trademarks, patents, and apps purportedly owned by BDT and BDFT are unrelated to claims at issue and, thus, cannot be utilized to convey personal jurisdiction.)) The Dami Defendants further argue Plaintiff fails to state a claim upon which relief may be granted because: (1) the Amended Complaint is a "shot gun" pleading that makes general allegations against numerous defendants without distinguishing the acts of each defendant; (2) Plaintiff's fraud claims fail to satisfy Rule 9's specificity requirement; (3) even if Plaintiff met Rule 9's specificity requirement, he fails to state viable fraud claims because he has not identified any material misrepresentations of fact or plead Defendants had knowledge of the falsity of their purported representations;(4) Plaintiff fails to assert a viable cause of action for conversion because, even assuming Defendants copied or used Plaintiff's biometric information, "Plaintiff was not prevented from also using that data"; (5) Plaintiff fails to assert a viable cause of action under New York General Business Law because he provides "no factual allegations to plead that any wrongful act by Defendants was consumer-oriented"; and (6) Plaintiff fails to allege facts required to establish viable claims under New York Labor Law and the Fair Labor Standards Act. (Dami Support Memo at 18-33.)

In opposition, Plaintiff argues: (1) the Court should not compel arbitration because Plaintiff raises issues concerning whether the contract itself, including the arbitration provision, was fraudulently entered; (2) the Court has personal jurisdiction over the Dami Defendants pursuant to New York's long arm statute because (a) VIPKid is "present" in New York state by virtue of its New York office and legal department and (b) VIPKID and "related" entities engage in internet activity that is "purposefully directed" towards New York residents; and (3) the Amended Complaint should not be dismissed for failure to state a claim because it provides allegations sufficient for Defendants to discern the allegations against them, and meets all other pleading requirements sufficient to support Plaintiff's claims. (Pl's Opp'n Arb., ECF No. 79, at 16; Pl's Opp'n PJ, ECF No. 78, at 11-12; Pl's Opp'n Claim, ECF No. 80, 8-25.[4])

## 2. Tencent Defendants' Motion to Dismiss

The Tencent Defendants move to dismiss the Amended Complaint, arguing: (1) Plaintiff failed to properly serve Tencent Holdings and Tencent Cloud, warranting dismissal under Rule

---

[4] Plaintiff filed several opposition motions in this matter, each addressing separate issues. Plaintiff's memorandum of law in opposition to Defendants' motions to compel arbitration and dismiss for lack of service is referred to herein as "Pl's Opp'n Arb." Plaintiff's memorandum of law in opposition to Defendants' motions to dismiss for lack of personal jurisdiction is referred to herein as "Pl's Opp'n PJ." Plaintiff's memorandum of law in opposition to Defendants' motions to dismiss for failure to state a claim is referred to herein as "Pl's Opp'n Claim."

12(b)(5); (2) even if service had been proper, this Court does not have personal jurisdiction over any of the Tencent Defendants, warranting dismissal under Rule 12(b)(2); and (3) Plaintiff has failed to state a claim upon which relief can be granted, warranting dismissal under Rule 12(b)(6). (Tencent Support Memo at 2.) Moreover, the Tencent Defendants claim they have no corporate relationship with, and have never invested in, any of the VIPKid Defendants. (Id. at 4.) They further contend none of the Tencent Defendants have ever authorized the VIPKid Defendants to act on their behalf; nor have they had any involvement in the design, development, or maintenance of the VIPKid Platform. (Id. at 5.)[5]

Plaintiff argues in opposition: (1) service upon Tencent Holdings and Tencent Cloud was appropriate as Hague Convention compliance was not necessary; (2) the Court has personal jurisdiction over Tencent Defendants by virtue of their relationship with VIPKID and that their software is integrated in the VIPKID Platform; and (3) the Amended Complaint should not be dismissed for failure to state a claim because it meets all other pleading requirements sufficient to support Plaintiff's claims.

---

[5] The Tencent Defendants assert their business records indicate a subsidiary of Tencent Holdings, Tencent Mobility Limited, invested in a company named VIPKid Limited. (Tencent Support Memo at 4; see also Byun Decl., ECF No. 70-7, at ¶7; Leong Decl., ECF No. 70-5, at ¶9; Xu Decl., ECF No. 11, at ¶11.) Tencent Mobility Limited is not a named Defendant in this action. (See generally, Am. Compl.)

(Pl's Opp'n Arb. at 6; Pl's Opp'n PJ at 21-23; Pl's Opp'n Claim at 12-18.)

### 3. China Renaissance's Motion to Dismiss

China Renaissance moves to dismiss the Amended Complaint, arguing: (1) this Court does not have personal jurisdiction over it because it is a foreign corporation without sufficient "minimum contacts" to establish personal jurisdiction; (2) Plaintiff cannot establish jurisdiction via New York's long-arm statute because he has failed to sufficiently allege that China Renaissance committed tortious conduct in, or caused injury to, Plaintiff in New York; (3) exercising personal jurisdiction over China Renaissance would disturb "traditional notions of fair play and substantial justice"; and (4) Plaintiff fails to state plausible claims for relief against China Renaissance. (See generally China Renaissance Support Memo.)

Plaintiff argues in opposition: (1) this Court has personal jurisdiction over China Renaissance because its wholly-owned subsidiary, China Renaissance Securities US, Inc. (hereafter, "China Renaissance Securities") is a "mere department or agent" of China Renaissance which "triggers vicarious jurisdiction" over China Renaissance; and (2) he has properly substantiated his claims against China Renaissance. (See generally Pl's Opp'n PJ; Pl's Opp'n Claim.)

17

4. <u>Sequoia's Motion to Dismiss</u>

Sequoia moved to dismiss the Amended Complaint, arguing: (1) the Court lacks personal jurisdiction over it as it is a non-domiciliary which has no property or employees in New York and has not directly invested in VIPKID; and (2) the Amended Complaint fails to state a plausible claim against Sequoia. (<u>See generally</u> Sequoia Support Memo.)

Plaintiff argues in opposition: (1) Sequoia representatives have indicated Sequoia is a VIPKid partner and affiliate; and (2) since Sequoia is the parent of certain funds that invested in VIPKid, this suffices to constitute a "joint venture" thereby giving this Court personal jurisdiction over Sequoia. (<u>See</u> Pl's Opp'n PJ. at 23-25.)

C. <u>Judge Lindsay's Report and Recommendation</u>

1. <u>Dami Defendants' Motion to Compel Arbitration</u>

Judge Lindsay recommended the Court dismiss all claims against the Dami Defendants because Plaintiff agreed to arbitrate his claims. (R&R at 16.) In so recommending, Judge Lindsay found: (1) Plaintiff implicitly acknowledged the existence of the IC Agreement containing the arbitration provision mandating arbitration; (2) Plaintiff's claims fell within the broad scope of the arbitration provision; and (3) to the extent Plaintiff argues he was fraudulently induced to sign the IC Agreement containing

18

the arbitration provision, that issue is to be decided by an arbitrator.  (Id. at 17.)

Judge Lindsay further recommended dismissing all claims against the Tencent Defendants, China Renaissance, and Sequoia for lack of personal jurisdiction.  (Id. at 32, 35, 37-38.)  Moreover, the Magistrate Judge recommended the dismissal of claims against certain Tencent Defendants because those Defendnats were not properly served.  (Id. at 25.)

D. Plaintiff's Objections

Plaintiff's objections to Judge Lindsay's Report were submitted after the filing deadline and are rife with typographical and substantive errors.  (Compare Sept. 5, 2023 Electronic Order (granting Plaintiff's motion for an extension of time to file objections and extending objection deadline to October 23, 2023), with ECF No. 95 (affidavit and supporting documents filed on October 24, 2023.))  After submitting late objections, Plaintiff then moved on October 25, 2023, two days after the objection deadline, to amend, correct, and supplement his objections.  (See ECF No. 96.)  Although the Court is empowered to deem Plaintiff's objections waived upon lateness alone, in the interest of justice, the Court nonetheless considers Plaintiff's amended objections. (ECF No. 96-1).  Cf., e.g., Demosthene v. City of N.Y., 831 F. App'x 530, 536 (2d Cir. 2020) (finding party's non-objection to report and recommendation in a timely manner constituted waiver).

19

### 1. <u>Dami Defendants' Motion to Compel Arbitration</u>

Plaintiff objects to Judge Lindsay's recommendation that the Court compel arbitration of his claims against the Dami Defendants.  In particular, Plaintiff argues Judge Lindsay: (1) incorrectly claims Plaintiff acknowledges the existence of a valid agreement; (2) fails to consider Plaintiff's argument that the IC Agreement is unenforceable; (3) fails to mention or consider Plaintiff's request for a jury trial and class certification; and (4) errs in recommending dismissal of Plaintiff's claims pursuant to Seventh Circuit law.  (Objs. at 17-19).

### 2. <u>Tencent Defendants' Motion to Dismiss for Lack of Personal Jurisdiction</u>

Plaintiff objects to Judge Lindsay's recommendation that the Amended Complaint be dismissed against Tencent Defendants for lack of personal jurisdiction.  In particular, Plaintiff argues the Report: (1) makes a series of unspecified "errors in its consideration" of "Plaintiff's theories"; (2) errs in analyzing personal jurisdiction against each individual Defendant as opposed to "Defendants acting collectively"; and (3) incorrectly required Defendants to have a physical presence in New York.  (Objs. at 13-15.)

3. <u>China Renaissance's and Sequoia's Motions to
Dismiss for Lack of Personal Jurisdiction</u>

Plaintiff objects to Judge Lindsay's recommendation to dismiss claims against China Renaissance and Sequoia for lack of personal jurisdiction. In particular, Plaintiff argues Judge Lindsay: (1) makes a series of unspecified "errors in its consideration" of "Plaintiff's theories"; (2) errs in analyzing personal jurisdiction against each individual Defendant as opposed to "Defendants acting collectively"; (3) incorrectly required Defendants to have a physical presence in New York; (4) incorrectly relied on irrelevant evidence that China Renaissance and its U.S. subsidiary "maintain [their] own books and records and never contracted with" Plaintiff; and (5) ignores his request for a preliminary hearing on jurisdiction. (Objs. at 13-16.)

DISCUSSION

I.  <u>Legal Standard</u>

A.  <u>Report and Recommendation</u>

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); <u>see also</u> FED. R. CIV. P. 72(b)(3). The district judge must evaluate proper objections <u>de novo</u>; however, where a party "makes only conclusory or general objections, or simply reiterates [the] original arguments, the Court reviews the Report and Recommendation only for clear error."

21

Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting Barratt v. Joie, No. 96-CV-0324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)); Fed. R. Civ. P. 72(b)(3).

The Court need not review the findings and conclusions to which no proper objection has been made. Thomas v. Arn, 474 U.S. 140, 150 (1985). Under Rule 72, "objections to the magistrate judge's report and recommendation . . . must be specific, written, and submitted within 14 days of being served with a copy of the recommended disposition." Ricciardi v. Colvin, No. 15-CV-0715, 2017 WL 4011243, at *1 (E.D.N.Y. Sept. 12, 2017) (citing Fed. R. Civ. P. 72(b)(2)) (internal quotations omitted). When a party makes an objection that "does not even address the basis for [the Magistrate Judge's] recommendation," such objection fails to meet the specificity requirement of Rule 72 and accordingly does not require de novo review. Greene v. WCI Holdings Corp., 956 F. Supp. 509, 517 (S.D.N.Y. 1997), aff'd, 136 F.3d 313 (2d Cir. 1998); see also Chabrier v. Leonardo, No. 90-CV-0173, 1991 WL 44838, at *2 (S.D.N.Y. Mar. 26, 1991) ("It is not part of the role of the district court in reviewing a magistrate judge's report and recommendation under Rule 72(b) to create some theory for the objecting party, hence the Rule's requirement of 'specific' written objections.")

B. Arbitration Agreements

A party's "motion to dismiss based on an arbitration clause may be treated as a motion to compel arbitration." Gilbert v. Indeed, Inc., 513 F. Supp. 3d 374, 390 (S.D.N.Y. 2021); see also Jillian Mech. Corp. v. United Serv. Workers Union Loc. 355, 882 F. Supp. 2d 358, 363 (E.D.N.Y. 2012) (construing respondent's motion to dismiss pursuant to Rule 12(b)(6) as a motion to compel arbitration). In deciding whether to compel arbitration, the court's inquiry is three-fold: first, the moving party has the initial burden of showing an agreement to arbitration exists; second, the court must determine whether the agreement is valid; and third, the court must determine whether the dispute falls within the scope of the arbitration agreement. Jillian Mech. Corp., 882 F. Supp. 2d at 364. If the Court answers each inquiry in the affirmative, "the role of the court ends, and the matter is one for arbitration." Id. (quoting Unique Woodworking, Inc. v. N.Y. City Dist. Council of Carpenters' Pension Fund, No. 07-CV-1951, 2007 WL 4267632, at *10 (S.D.N.Y. Nov. 30, 2007)).

Moreover, courts must evaluate a motion to compel under the Federal Arbitration Act ("FAA") under "a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003). When a motion to compel arbitration is opposed "on the ground that no agreement to arbitrate has been made between the parties, a district court

23

should give the opposing party the benefit of all reasonable doubts and inferences that may arise." Mazza Consulting Grp., Inc. v. Canam Steel Corp., No. 08-CV-0038, 2008 WL 1809313, at *1 (E.D.N.Y. Apr. 21, 2008). If there is an issue of fact as to the making of the agreement for arbitration, a trial is necessary. McCaddin v. Se. Marine Inc., 567 F. Supp. 2d 373, 377 (E.D.N.Y. 2008) (quotations and citations omitted). Further, if a party alleges the contract containing the arbitration agreement is entirely void and provides some evidence supporting his position, the party is entitled to a trial on the arbitrability issue. See id. at 379. If, however, a party merely claims the contract containing the arbitration agreement is voidable, then the party isentitled to a trial only on the issue if he specifically alleges the arbitration clause itself is voidable. Id. Otherwise, the issue of whether the arbitration clause is voidable is for the arbitrator to decide. Id.

II. Analysis

    A. Dami Defendants' Motion to Dismiss/Compel Arbitration

        1. Judge Lindsay's Report Should Be Reviewed for Clear Error

        Turning to Plaintiff's objections as to the motion to compel arbitration, the Court finds each of them to be either "mere iterations of the arguments in [the] original papers that were fully considered and rejected by" Judge Lindsay or insufficiently

24

specific such that de novo review is not required.  Out of the
Blue Wholesale, LLC v. Pacific Am. Fish Co., Inc., No. 19-CV-0254,
2020 WL 7488072, at *2 (E.D.N.Y. Dec. 21, 2020); see also Chabrier
v. Leonardo, No. 90-CV-0173, 1991 WL 44838, at *2 (S.D.N.Y. Mar.
26, 1991).  Plaintiff's regurgitation of his original arguments is
well-demonstrated by the record.  In particular, Plaintiff claims
Judge Lindsay (a) incorrectly found he acknowledged the existence
of a valid agreement, and (b) failed to consider Plaintiff's
argument that the IC agreement is unenforceable.  (Objs. at 18).
However, Plaintiff already raised these arguments in his
underlying opposition, which the Magistrate Judge properly
considered.  (See Pl's Opp'n. Arb. at 16 (arguing Plaintiff's fraud
and fraud in the inducement claims make the arbitration provision
unenforceable.))  Moreover, Plaintiff's claim that his requests
for a jury trial and class certification somehow negate the
arbitration clause is entirely unsubstantiated and does not meet
the specificity requirement of Rule 72.  FED. R. CIV. P. 72
(requiring an objecting party to "serve and file specific written
objections" to a magistrate judge's proposed findings); see also
Ricciardi, 2017 WL 4011243, at *1 (same).  Finally, Plaintiff's
assertion Judge Lindsay erred by failing to consider non-binding
authority from the Seventh Circuit is, again, a mere iteration of
the argument made in his underlying opposition brief.  (Pl's Opp'n
Arb. at 15 (arguing "courts in the Seventh Circuit have found that

even where a court has issued an order compelling arbitration, outright dismissal is not an appropriate course of action. Rather, the appropriate step subsequent to granting a motion to compel arbitration is to stay the case, rather than dismiss the case outright for lack of jurisdiction.")) Accordingly, the Court will review Judge Lindsay's recommendations regarding the Dami Defendants' motion to compel for clear error only.

2. Judge Lindsay's Report is Free of Clear Error

The Court finds Judge Lindsay's recommendation to compel arbitration and dismiss all claims against the Dami Defendants to be well-reasoned and free of clear error. Moreover, even if the Court were to review Judge Lindsay's Report de novo, the Court would reach the same conclusion. Here, it is undisputed a contract was executed between Plaintiff and VIPKid whereby both parties agreed to arbitrate any "past, existing or future claim, regardless of the date of its accrual . . . arising out of or related to [the IC Agreement]." (Ex. A § 13(A).) This provision applies to all disputes between Plaintiff, VIPKid, and "VIPKID's fiduciaries, administrators, affiliates, subsidiaries, parents, and all successors and assigns." (Id. § 13(A)(i).) Plaintiff acknowledges the existence of the IC Agreement containing the arbitration provision (see Am. Compl. at 13), but denies it is enforceable given his claim he was fraudulently induced to sign the IC Agreement as a part of the fraudulent "VIPKid Scheme". (Obj. at

26

17-19; Am. Compl. at 13.)  However, the law of this Circuit makes clear that where a party alleges to have been fraudulently induced to sign an agreement, that agreement is <u>voidable</u> not <u>void</u>; accordingly, the decision of whether to enforce the arbitration agreement rests with the arbitrator, not the Court. <u>Adams v. Suozzi</u>, 433 F.3d 220, 227 (2d Cir. 2005) (holding only if a contract is "void," and not "voidable", can a party challenge the enforceability of an arbitration clause without alleging a particular defect with that clause). Moreover, Plaintiff's claims that the contract itself is fraudulent are without merit. Plaintiff has alleged no facts indicating there was fraud in the execution of the IC Agreement; instead, he claims only that the contract is <u>voidable</u>, not <u>void</u>. "[F]raud in the execution occurs where there is a misrepresentation as to the character or essential terms of a proposed contract and the party signs without knowing or having a reasonable opportunity to know of its character or essential terms." <u>McCaddin</u>, 567 F. Supp. 2d at 379 (citing <u>Hetchkop v. Woodlawn at Grassmere, Inc.</u>, 116 F.3d 28, 31-32 (2d Cir. 1997)).  Moreover, Plaintiff does not claim he was fraudulently induced into signing the arbitration provision itself. <u>Cf. id.</u> at 378 (stating a party is entitled to a trial on the issue of arbitrability if he specifically alleges the arbitration provision itself is voidable). Moreover, to the extent Plaintiff has a viable claim he was fraudulently induced into

27

signing the IC Agreement containing the arbitration provision, that decision shall be made by the arbitrator, not the Court. Id. (compelling arbitration of all claims at issue where plaintiff asserted he was fraudulently induced into signing contract containing arbitration provision).

Furthermore, the subject claims are well within the scope of the arbitration provision in the IC Agreement. All of Plaintiff's claims relate to work performed pursuant to the IC Agreement he executed with VIPKid. (See generally Am. Compl.) The IC Agreement mandates arbitration of Plaintiff's claims. (Ex. A § 13(A)(i) (mandating arbitration of all disputes "arising out of or related to th[e] Agreement," Plaintiff's "relationship with VIPKID," the "provision of services to Students," Plaintiff's "classification as an independent contractor," and "disputes arising out of or relating to the interpretation of the Arbitration Provision").)

Moreover, in light of the Court's finding arbitration of Plaintiff's claims is required, the Court adopts Judge Lindsay's recommendation to dismiss Plaintiff's claims against the Dami Defendants. Notwithstanding Plaintiff's objection to the same, which is premised upon non-binding Seventh Circuit law, courts in this Circuit have routinely held that where "none of plaintiff's claims remains to be resolved by this court," there is no reason to stay the action in lieu of dismissal. Mahant v. Lehman Bros.,

28

No. 99-CV-4421, 2000 WL 1738399, at *3 (S.D.N.Y. Nov. 22, 2000); Mazza Consulting, 2008 WL 1809313, at *7 (holding "[b]ecause [plaintiff] and [d]efendants agreed to arbitration, this court has no jurisdiction to adjudicate any of [plaintiff's] claims against [d]efendants, and therefore the claims against [d]efendants are properly dismissed"); Perry v. N.Y. L. Sch., No. 03-CV-9221, 2004 WL 1698622, at *4 (S.D.N.Y. July 28, 2004) (holding "[b]ecause all of plaintiff's claims are subject to arbitration, no useful purpose will be served by granting a stay of plaintiff's claims . . . and thus its action against the defendant is dismissed"). Consequently, because all of Plaintiff's claims against Defendants must be properly brought before an arbitrator, Plaintiff's claims against the Dami Defendant are dismissed.[6]  In turn, since the Court dismisses the claims against Dami Defendants on this basis, it need not address the other bases for dismissal described in the Dami Defendants' Dismissal Motion.

---

[6] The Court notes the unambiguous language of the IC Agreement mandates arbitration of Plaintiff's claims against VIPKid and its "fiduciaries, administrators, affiliates, subsidiaries, parents, and all successors and assigns of any of them." (Ex. A § 13(A)(i).)  To the extent Plaintiff has any viable claims against other parties by virtue of their "affiliation" with VIPKid, those claims ought to be resolved in arbitration as well.

B. <u>Tencent Defendants' Motion to Dismiss for Lack of Personal Jurisdiction</u>

1. <u>Judge Lindsay's Report Should Be Reviewed for Clear Error</u>

Plaintiff objects to Judge Lindsay's recommendation that the Amended Complaint be dismissed against the Tencent Defendants for lack of personal jurisdiction.  In particular, Plaintiff argues the Report: (1) makes a series of unspecified "errors in its consideration" of "Plaintiff's theories"; (2) errs in analyzing personal jurisdiction against each individual Defendant as opposed to "Defendants acting collectively"; (3) incorrectly required Defendants to have a physical presence in New York; and (4) ignores his request for a preliminary hearing on jurisdiction.  (Objs. at 13-16.)  Again, Plaintiff regurgitates arguments already made in his underlying papers; and, to the extent he raises any new arguments, those arguments are non-specific and entirely unsupported by law.  (See Pl's Opp'n PJ at 8, 26-29 (arguing, since this Court has personal jurisdiction over Tencent defendants under agency and co-conspirator theories, Plaintiff is entitled to an evidentiary hearing on jurisdiction; asserting physical presence in the state is not required to confer personal jurisdiction); Objs. at 13-15 (failing to cite case law for any propositions.))  Accordingly, Plaintiff's objections need only be analyzed under the clear error standard; however, even under de novo review, the Court finds no reason to stray from Judge Lindsay's

30

recommendations.  <u>Out of the Blue Wholesale</u>, 2020 WL 7488072, at *2.

### 2. <u>Judge Lindsay's Report Is Free of Clear Error</u>

Judge Lindsay correctly concluded this Court does not have general or specific personal jurisdiction over any of the Tencent Defendants.  A court has general jurisdiction over a defendant where the defendant has "continuous and systematic" contacts with the forum state such that it is "essentially 'at home' in the forum State." <u>Daimler AG v. Bauman</u>, 571 U.S. 117, n.11 (2014).  A court has specific jurisdiction over a defendant where the "nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." <u>In re Sterling Foster & Co., Inc. Sec. Litig.</u>, 222 F. Supp. 2d 289, 300-01 (E.D.N.Y. 2002).  Specific jurisdiction is governed by the forum states' long-arm statute, which, in this instance, is N.Y. C.P.L.R. § 302(a).  Section 302(a) "empowers New York courts to exercise jurisdiction over non-domiciliaries when the causes of action in the case 'arise from' one of four specific kinds of contact with New York." <u>Thackurdeen v. Duke Univ.</u>, 130 F. Supp. 3d 792, 801 (S.D.N.Y. 2015), <u>aff'd</u>, 660 F. App'x 43 (2d Cir. 2016) (citing N.Y. C.P.L.R. § 302(a)).  This contact includes:

> (1) the transaction of any business within the state or contracts anywhere to supply goods or services in New York;
> (2) the commission of a tortious act within this state;

31

> (3) the commission of a tortious act without
> the state causing injury within the state so
> long as the tortfeasor either (i) regularly
> does or solicits business, or engages in any
> other persistent course of conduct, or derives
> substantial revenue from goods used or
> consumed or services render, in New York or
> (ii) expects or should reasonably expect the
> act to have consequences in the state and
> derives substantial revenue from interstate or
> international commerce; or
> (4) the ownership, use, or possession of any
> real property within New York.

Id.

Here, Tencent Holdings is incorporated in the Cayman Islands and maintains its principal place of business in China. (Tencent Support Memo at 11; Byun Decl. ¶2.)  Tencent Holdings does not conduct any business in New York; nor does it have any business operations, offices, or employees in New York.  (Tencent Support Memo at 11; Buyun Decl. ¶3-5.)  Tencent Cloud is a Delaware LLC and maintains its principal place of business in Delaware. (Tencent Support Memo at 11; Leong Decl. ¶2.)  Tencent America is a Delaware LLC that maintains its principal place of business in California.  (Tencent Support Memo at 11; Xu Decl. ¶2-3.)  While Tencent America does not sell products or services in New York, it does conduct limited activities in New York.  (Xu Decl. ¶7-8).  Those activities include: "(1) reporting and editing articles regarding the financial industry within the United States; (2) developing business for Tencent Holdings within the United States; and (3) working with Tencent Holdings' customers and clients who

are based in the United States." (Tencent Support Memo at 12; Xu Decl. ¶ 9.)  In this instance, that is not enough.

      The Court does not have general jurisdiction over any Tencent Defendants.  Plaintiff's reliance upon New York's long-arm statute to establish personal jurisdiction over Tencent Defendants is unavailing.  Plaintiff alleges the Tencent Defendants transact business in New York, and have committed torts in New York by virtue of their software being integrated into the VIPKid Platform, which may be accessed in New York.  (Pl. Support Memo PJ at 12.)  Plaintiff further alleges this Court has specific personal jurisdiction over Tencent America because it is a "mere department" or "agent" of Tencent Holdings.  (Id. at 21.) Magistrate Judge Lindsay properly rejected these arguments. First, with respect to Tencent Holdings and Tencent Cloud, Plaintiff fails to allege these entities engaged in any business transactions in New York state, and has failed to identify any law suggesting the purportedly tortious acts of VIPKid can be imputed upon these Defendants for the purposes of conveying jurisdiction. Cf. N.Y. C.P.L.R. § 302(a) (requiring the non-domiciliary itself, or its agent, to have committed certain acts in order to convey personal jurisdiction.)  Indeed, Judge Lindsay correctly rejected Plaintiff's claims that Audiovox Corporation v. South China Enterprise, Incorporated, and "similar line[s] of cases" stand for the proposition that personal jurisdiction may be conferred upon

33

Tencent Defendants merely because its software is purportedly used by third-parties who transact business in the state.  (R&R at 28-29 (discussing Audiovox, No. 11-CV-5142 JS GRB, 2012 WL 3061518, at *3 (E.D.N.Y. July 26, 2012))).

Moreover, Plaintiff's claims that Tencent America is the "agent" of the other Tencent entities is unavailing.  In order to establish personal jurisdiction over an entity through an agency theory, the agent must be a "mere department" of the corporation as opposed to a "independent entity." Jazini v. Nissan Motor Co., 148 F.3d 181, 184 (2d Cir. 1998) ("[T]he presence of the subsidiary alone does not establish the parent's presence in the state. . . . For New York Courts to have personal jurisdiction . . . the subsidiary must be either an agent or a mere department of the foreign parent.").  To establish that an entity is a mere department or agent of another, "the plaintiff must show that the subsidiary does all business which the parent corporation would do were it here by its own officials." Id. (emphasis added). Plaintiff has failed to make such showing.  In fact, Plaintiff is unable to refute the sworn declaration of an officer of Tencent America which states Tencent America is an "indirect" wholly-owned subsidiary of Tencent Holdings, that "assists" with certain operations for Tencent Holdings such as advertising, business development, and research.  (Xu Decl. ¶3-4.)  Accordingly,

Plaintiff has not established Tencent America is an "agent" or "mere department" of the other Tencent Entities.

Finally, Plaintiff is not entitled to a hearing on jurisdiction.

> In deciding a pretrial motion to dismiss for lack of personal jurisdiction[,] a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.

Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981). Here, the Court finds Plaintiff has failed to make a prima facie showing of personal jurisdiction over the Tencent Defendants. In light of the evidence before it, including sworn affidavits from Tencent Defendant representatives making clear this Court does not have personal jurisdiction over these entities, this Court declines Plaintiff's request for a hearing on personal jurisdiction.

For the reasons articulated supra, the Court adopts the Magistrate Judge's recommendation that Tencent Defendants' Motion to Dismiss be granted; therefore, the claims against Tencent Defendants are dismissed. Because the Court dismisses the claims against Tencent Defendants for lack of personal jurisdiction, it need not address the other bases for dismissal described in Tencent Defendants' Dismissal Motion.

C. <u>China Renaissance's and Sequoia's Motions to Dismiss</u>
   <u>for Lack of Personal Jurisdiction</u>

    1. <u>Judge Lindsay's Report Should Be Reviewed for</u>
   <u>Clear Error</u>

Plaintiff objects to Judge Lindsay's recommendation to dismiss claims against China Renaissance and Sequoia for lack of personal jurisdiction. In particular, Plaintiff argues Judge Lindsay: (1) makes a series of unspecified "errors in its consideration" of "Plaintiff's theories"; (2) errs in analyzing personal jurisdiction against each individual Defendant as opposed to "Defendants acting collectively"; (3) incorrectly required Defendants to have a physical presence in New York; (4) incorrectly relied upon irrelevant evidence that China Renaissance and its U.S. subsidiary "maintain [their] own books and records and never contracted with" Plaintiff; and (5) ignores his request for a preliminary hearing on jurisdiction. (Objs. at 13-16.) Once more, Plaintiff's arguments are "mere iterations" of previously articulated arguments Plaintiff made in his underlying papers; thus, clear error review applies. (<u>See</u> Pl's Opp'n PJ at 12, 19-21, 23-24.) Under this standard, the Court finds Judge Lindsay's Report to be well-reasoned and free of clear error. Moreover, even if the Court were to review Judge Lindsay's Report <u>de novo</u>, the Court would reach the same conclusion.

2. <u>Judge Lindsay's Report Is Free of Clear Error</u>

Plaintiff utterly fails to establish China Renaissance and Sequoia are subject to this Court's jurisdiction. First, China Renaissance is organized under the laws of the Cayman Islands and maintains its principal places of business in Hong Kong and China. (Am. Compl. at 7; China Renaissance Support Memo at 9; Yee Decl., at ¶2.)  China Renaissance does not transact business in New York, has no employees in New York, and owns no real property in New York.   (China Resistance Support Memo at 9; Yee Decl. ¶4-6.) According to Plaintiff, China Renaissance is VIPKID's "exclusive financial advisor and capital markets partner" and "actively shap[es] VIPKID so that VIPKID's activities are responsive to the national policies of the Chinese Government." (Am. Compl. at 7.) The Court agrees with Judge Lindsay that these facts fail to establish a connection between China Renaissance and New York, or between China Renaissance and the instant case, sufficient to confer personal jurisdiction. (R&R at 34.); <u>see also</u> N.Y. C.P.L.R. § 302(a).

Plaintiff's claims that because China Renaissance Securities, a U.S. subsidiary of China Renaissance, receives funding from China Renaissance, it must be an "agent" or "department" of China Renaissance such that China Renaissance is subject to personal jurisdiction in New York. (Objs. at 15-17). As discussed previously, in order to establish personal

jurisdiction on a "mere agent" or "department" theory, Plaintiff "must show that the subsidiary does <u>all the business</u> which the parent corporation would do were it here by its own officials." <u>Jazini v. Nissan Motor Co.</u>, 148 F.3d 181, 184 (2d Cir. 1998) (citations and quotation marks omitted) (emphasis added). Plaintiff has failed to allege any facts supporting such a finding. Further, Plaintiff asserts no plausible alternative basis for conferring personal jurisdiction over China Renaissance.

Second, Plaintiff has failed to establish Sequoia has any relationship to the state of New York, or that Sequoia has committed or is responsible for a tortious act in New York, such that personal jurisdiction may be conferred under N.Y. C.P.L.R. § 302(a). Sequoia is an LLC incorporated in Delaware that maintains its headquarters in California. (Chang Decl. ¶3.) Sequoia does not own or maintain an office in New York; nor does it own any assets in New York, such as bank accounts. (Chang Decl. ¶4-5.) Sequoia is the "parent of certain funds that were outside investors in VIPKid" but has not itself invested in VIPKid. (Sequoia Support Memo at 5; Chang Decl. ¶9.) Even if the Court were to accept as true Plaintiff's claim that Sequoia is one of VIPKid's "most strategic investors," Judge Lindsay correctly points out Plaintiff fails to establish such investment was made in New York or Sequoia engaged in any related tortious conduct in New York such that personal jurisdiction may be conferred. (R&R

at 37.)  Given these deficiencies, the Court cannot exercise personal jurisdiction over Sequoia.

For the reasons articulated <u>supra</u>, over Plaintiff's objections, the Court finds Judge Lindsay's Report and Recommendation to be well-reasoned and free of clear error and adopts said Report and Recommendation in its entirety. Consequently, the Court grants China Renaissance's and Sequoia's respective Motions to Dismiss.  The Court declines Plaintiff's request for a hearing on jurisdiction.  Moreover, because the Court dismisses the claims against China Renaissance and Sequoia for lack of personal jurisdiction, it need not address the other bases for dismissal raised in their respective Dismissal Motions.

To the extent not fully addressed herein, the Court has considered each of Plaintiff's remaining objections and finds them to be without merit.

<u>CONCLUSION</u>

Accordingly, for the aforementioned reasons, **IT IS HEREBY ORDERED:**

Plaintiff's Objections are OVERRULED, and the R&R (ECF No. 91) is adopted in its entirety.  Accordingly:

The Dami Defendants' Motion to Dismiss and Compel Arbitration (ECF No. 71) is GRANTED;

The Tencent Defendants' Motion to Dismiss (ECF No. 70) is GRANTED;

China Renaissance's Motion to Dismiss (ECF No. 72) is GRANTED; and

Sequoia's Motion to Dismiss (ECF No. 73) is GRANTED.

Notwithstanding the foregoing, if Plaintiff has any plausible claims against any of the Defendants, those claims are to be brought properly before an arbitrator. The Clerk of Court is directed to mark this case CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: January 25, 2024
      Central Islip, New York